In The United States District Court
For The District Of Delaware.

Shane K. Hopkins
  Plaintiff,

V.

C/o John Pusey, et al.,
  Defendants.

Civ. No. 05-870-SLR

Plaintiff Shane K. Hopkins Response To Defendants First Set Of Interrogatories Directed To Plaintiff

FILED
DEC 20 2006
BD scanned
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Interrogatory #1

Answer: A) My full name is Shane Kenneth Hopkins.
B) I have never used any other name.
C) My Social Security Number is; 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
D) My Date Of Birth Is October 5th 1973
E) I have never used any other birth date.
F) I was born in Chester Pennsylvania.
G) I completed and recieved my G.E.D. in 1991

Interrogatory #2.

Answer: Objection. The Plaintiffs address prior to incarceration is not relevant. Without waiving said objection the Plaintiff responds as follows.

Plaintiff Hopkins: Other then Correctional

Institutions I have only held residence at (1) place since the age of 18. The address is:

> 321 B-44 Rd #2
> Brook Cr.
> Glenmore P.A.   19335

I lived at the above address from July 22nd 1994 to Febuary 28th 1995.
The addresses and dates for my movement from one correctional institution to the next are not available to me.

INTERROGATORY #3

ANSWER: Since I have been incarcerated from Febuary 28th 1995 the only job that I have held in the past (10) years has been as an institutional kitchen worker.

   A) The November 26th 2004 incident between myself and C/O John Pusey for which I have filed this civil action caused me to be moved to a higher security level building.
   As a result I lost my job.
   B) I was never investigated for acts of misconduct. And I was never reprimanded while employed.
   C) N/A

INTERROGATORY #4

ANSWER: Objection. Any conviction prior to the sentence that I am currently serving in the State of Delaware is not relevant and holds no bearing on this case. Without waiving said objection the Plaintiff responds as fallows.

    Plaintiff Hopkins: I am currently serving a 16 year sentence for (8) counts of burglary in the 2nd degree in the State of Delaware. I was sentenced at the Superior Court in Wilmington Delaware. The exact address is not available to me at present.

    I do not have access to my complete criminal history for the past (15) years. I believe that as the Deputy Attorney General this information is readily available if needed.

    As to my current sentence in the State of Delaware see attachments "K". A copy of the Plaintiffs Institutional Status Sheet has been provided.

INTERROGATORY #5

ANSWER: A) I am unaware of any direct knowledge that I possess that would refute my contentions. All known facts at this time are imbedded within my complaint in the form of affidavits, grievances and letters along with the documents production.

B) C/O John Pusey, et al., Defendants physically attacked me without justification. When I was not resisting. Prior to, and continuing after I had been restrained. These correctional officers sadistically beat me. Prior to, and after being handcuffed and pepper sprayed by punching, choking and ramming my head into walls.

C/O John Pusey placed me in a choke hold and held me while C/O J. Smith punched me in the head erea.

After being fully restrained and pepper sprayed C/O John Pusey, et al., Defendants stood me up facing Building #22 A tier wall where I was hit in the back of my head repeatedly, causing my face to impact against the wall. I can not accurately identify the exact assailant because of pepper spray and the direction I was facing. This person will be identified when I have the opportunity to depose witnesses. It was done in plain view.

C/O J. Smith placed his hand around my throat choking me and lead me down the tier stairs and past (10) cells in plain view.

C/O John Pusey and Joe Smith rammed my head into (2) door jambs with sadistic comments on the sound the impact made.

C/O John Pusey and Joe Smith rammed my head into Building #24 wall. In plain view of any I/M who may have been looking out thier cell windows on A-and-D tiers Building #22.

C) Since I have not been provided with a list of who was housed in Building #22 "A" Tier on the date of November 26th 2004 I am unable to identify "All" Persons with knowledge of the incident. However I am aware of several inmates who where housed on "A" Tier at this time.

I am unable to know for certain if they where witnesses or not. I have not been able to depose them or obtain statements.

The known names are: 
A) Allen Jolly
B) Curits Demby
C) Chris Kraig
D) Brian O'Neal
E) Martin Roberts
F) Willard Chemwood
G) Curtis Brown.

D) At this time I believe that the defense has all the same documents that are in my posession relating to this case. What I have, I recieved through discovery from the defence with the exception of Medical Grievance #14510 Section "C", PG #34 and 35. Grievance #40703 Section "H" PG #61 and 62 and letters within Section "F" PG #56 and 57.

INTERROGATORY #6

ANSWER: Since you did not describe where in my complaint the defense is referring to I will take this question to

mean what specifically was said to me through out the incident starting from the moment C/O Pusey brought my property to cell A-U#12.

When I told C/O Pusey that I was allowed to own (2) personal books he told me he "Don't Care".

The next words where spoken to me after been taken to the floor by C/O Pusey. C/O Pusey was kneeling on my back while placing me in a choke hold. C/O Smith said "I hate this faggot mother fucker" and began to hit me in the head erea.

The next words that I remember being spoken to me was to "stand up and face the wall", and someone directed me towards a spot to stand. I am not positive who gave this order or if anything else was said to me because I was dizzy from being choked and pepper sprayed so that I could not see.

The next words where not spoken to me untill after I had been removed from the tier. Officer Smith said "That sounded like it hurt", after forcefully banging my head into a door jamb.

The next words spoken to me was "Sit Down".

The next words spoken to me was to "Shut up", as I tried to explain what these officers had done to me. I believe that I was told to "Shut up", by officer Smith several times.

The next words spoken to me by C/O Smith where "Stand up", as I was bent over a table while where C/O Smith bent my finger as if to break it.

✻ This is a complete discription of what was "said" to me by C/O Pusey and C/O Smith. I have placed thier

words in context to when they where spoken. This is not an accurate portrayal of the intire incident.

At no time before I was taken to the floor was I told to "turn around", to place handcuffs on, or to "lock in my cell".

INTERROGATORY #7

ANSWER: The threat was made when I tried to disclose what C/O Pusey and C/O Smith had done to me. I was told to "shut up", atleast twice as I tried to describe how C/O Smith and C/O Pusey had physically beaten me. The threat was implied by the tone of voice, and the fact that I had just been beaten by C/O Pusey and C/O Smith made the threat tangible.
  B) The threat was made by C/O Smith.
  C) November 26th 2004 Approx: 3:00 P.M.
  D) I am not aware of exactly who was present in the room other then Lt. Yoder because I could not see from the effects of pepper spray. From the sound of movement around me others where present.

INTERROGATORY #8

ANSWER: Objection. Any injuries, ailments or accidents that I sustained in the past (15) years is not relevant. The question is vague and overbroad. Without waiving said objection the plaintiff responds as fallows.

Plaintiff Hopkins: Prior to my incarceration I had no accidents, injuries or ailments for which I needed medical attention.

If needed I will consent to having my institutional medical file made available to the defense.

Interrogatory #9

Answer: I can not begin to describe my every bruise and scratch that I recieved as a result of this incident. The pictures taken by Lt. Yoder show most of the injuries that I recieved. However the pictures can not show the large bumps that where on my head or the purple bruise discoleration that marred my skin (2) days after the incident. The most prominent visable injury that I recieved was a black eye that was still discolered more then (30) days later.

The only medical treatment that I recieved is described in the medical report given by Nurse Betty. Inmates who are taken to isolation status do not have pens or sick call slips. When the nurse delivers medication you can request medical treatment but more often then not the nurse will ignore any calls from isolation cells. If you are ignored when you ask for treatment you get none.

The poor quality of medical care has been a subject with public exposure through the news media.

INTERROGATORY #10

ANSWER: The only medical treatment that I recieved is described in the nurses medical report.
   I wrote a medical sick call slip stating problems that I was having with my health on 5-18-05 *(see Grievance #14510 Attachment). I filed this grievance and I was told at the grievance hearing that I was suffering from panic attacks. I was told that someone from mental health would be sent to see me. No one came to see me.
   Please note that I refused to sign this grievance until I was seen by mental health as stated on the grievance.
   I do not know exactly who was present at this grievance hearing. There should be a record of the hearing somewhere in institutional files.
   A) I recieved no dental care.
   B) I sent several sick call slips. However I did not retain copies or dates. I did not expect that I would need them.

INTERROGATORY #11

ANSWER: I have not as of the present been afforded the opportunity to depose witnesses. I am sure that I will be able to produce statements, declorations, petitions, or sworn affidavits if I am allowed to depose witnesses.
   A) N/A
   B) N/A

INTERROGATORY #12

ANSWER: Objection. Vague and overbroad. Without waiving said objection Plaintiff responds as follows.

Plaintiff Hopkins: I have sustained several injuries to my face erea prior to the incident on November 26th 2004, (2) of which required stitches or medical attention.

A) I have a 1½ inch scar under my right eye that required stitches in 1993. The exact date, hospital, or doctor who treated me is unknown to me.

I have a 1 inch scar over my left eye that required medical treatment in 2002 or 2001. The exact date and institutional nurse who treated me is unavailable to me but records of this injury will be made available with my institutional medical record if needed.

I can not begin to name every injury that I sustained prior to November 26th, 2004. I have named the most prominent of them.

I have not claimed to have recieved any scarring as a resault of this. Not outward, noticeable, scarring.

INTERROGATORY #13

ANSWER: As the defense has refused to provide me with the names of the inmates who where housed in Building #22 "A"-tier on November 26th 2004 I am unable to disclose

At this time a complete list of all witnesses to this incident. I have not been afforded the opportunity to depose possible witnesses to discover what they may have seen.

However I will provide a list of people who I know where housed on "A" tier at the time. Along with *correctional officers who may have witnessed the incident.

- A) Allen Jolly, I/M
- B) Curtis Demby, I/M
- C) Cris Kraig, I/M
- D) Brian O'Neal, I/M
- E) Martin Roberts, I/M
- F) Willard Chemwood, I/M
- G) Curtis Brown, I/M
- *H) C/O Glenise Baker
- *I) Luisa Skinner

INTERROGATORY # 14

ANSWER: Since I have not as of yet been afforded the opportunity to depose witnesses I am unable to disclose all persons who may have knowledge of this incident.
*See answers to Interrogatory # 13

INTERROGATORY # 15

ANSWER: At this time I am unaware of any physical evidence other then documents which relates to the facts alleged in the complaint

INTERROGATORY #16

ANSWER:  1) Ronald Proctor, I/M Jail House Lawyer.
2) James Riley, I/M Jail House Lawyer.
3) Carol Hopkins, Mother
4) Richard Hopkins, Father.

I/M Ronald Proctor and I/M James Riley are both Jail House Lawyers who assisted in helping me file this complaint and first set of interrogatories directed to the defendants. These inmates made me seem infinitely more capable to pursue this litigation without court appointed council then I am.

These communications between myself and the above named inmates is strictly against D.O.C. institutional rules. If you are ignorant of the law and unable to pursue justice for civil rights violations because of lack of knowlege then you are expected to stay that way. Not everyone is knowledgable of the law.

INTERROGATORY #17

ANSWER:  A) The only communication that I have had was with C/O John Pusey at my institutional disciplinary hearing.
B) At this disciplinary hearing I became the subject of ridicule by C/O Loyd for wich I filed a grievance. However I do not have a copy of this grievance. And Staff Lt. Savage institutional hearing officer. was present.

C) The only documents that I have concerning these communications are the Institutional Disciplinary Report and the Hearing Officers Findings.

INTERROGATORY # 18

ANSWER: A) I have been told by Institutional Psychologists that I suffered with Panic Attacks and possible Post Traumatic Stress Disorder.

B) I had not thought to keep record of when such diagnoses where made. I had never thought I would be asked these questions. For this reason I will consent to having all of my Institutional Medical Files made available apon request to the Defense.

C) Please see above answer to "B".
D) Please see above answer to "B".
E) Please see above answer to "B".

* Please note that the Medical Records are not in my possesion or I would have made them available to the Defense. The Medical Records can be obtained by request by the Defense for which I will sign a release form. This is the only way the Defense can obtain an accurate record of the information they requested.

INTERROGATORY #19

ANSWER: As stated in the complaint I am asking for $400,000 in compensatory damages.

I am not a jailhouse lawyer. I am not knowledgeable of case law or how such computations are made.

The Department of Corrections now prevents me from from having any communications with I/M Ronald Proctor who helped me file this complaint and arrived at the sum stated above.

*Shane Hopkins*
Shane Hopkins
#253918
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE.
19977

Dated: December 11th, 2006

## Certificate of Service

I, SHANE K. Hopkins, hereby certify that I have served a true and correct cop(ies) of the attached: INTERROGATORIES AND Production Of Documents upon the following parties/person (s):

TO: LISA BARCHI
DEPUTY ATTORNEY GENERAL
DEPARTMENT OF JUSTICE
820 N. FRENCH STREET. 6th Floor
Wilmington Delaware 19801

TO: _____

TO: JOHN W. SHAW
The Brandywine Building
1000 West Street 17th Floor
Wilmington Delaware 19801

TO: _____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

On this 18th day of December, 2006

Shane Hopkins

IM Shane Hopkins
SBI# 253918   UNIT #21
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



Office of The Clerk
United States District Court
844 N. King Street, Lockbox #18
Wilmington, Delaware
    19801-3570



Legal Mail
Sent 12-18-06