ATTACHMENTS
SECTION "A"

11/02/2006  11:57    13026596687                     LEGAL SERVICES                        PAGE  05/25

sciplinary#          DCC |Delaware Correctional Center              Date: 11/27/2004
1014567                   Smyrna Landing Road
                         SMYRNA DE, 19977          i 8 C L 8
                         Phone No. 302-653-9261

# DISCIPLINARY REPORT

isciplinary Type: Class1          Housing Unit: Bldg 18          IR#: 1017887

| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|------|-------------|------------|----------------------|------|------|
| 00253918 | Hopkins, Shane K | DCC | Bldg.22 A Tier | 11/26/2004 | 15:00 |

iolations: 1.02/200.201 Assault, 1.06/200.203 Disorderly or Threatening Behavior, 2.06/200.108 Failing to Obey an Order, 2.13/200.111 Possession of Non-Dangerous Contraband

Witnesses:1 Smith, Joe          2. N/A          3. N/A

### Description of Alleged Violation(s)

On November 26, 2004 I C\O Pusey, John And C\O Smith, Joe Were Transferring Inmate Hopkins, Shane Sbi #00253918 From AI10- To Au12 Because Of A Clogged Toilet. I C\O Pusey Noticed That I\M Hopkins Had In Excess Of Books In His Possession An Started To Shakedown His Cell AI10 While I/M Hopkins Was Transferred To Au12. I C\O Pusey Then Confiscated And Bagged Up A Of I\M Hopkins Belongings And Took Them To Him In 22au12. I C\O Pusey Had Au12 Cell Door Opened To Hand The Property Ove To I\M Hopkins. I Then Told Him That The Allowable Items Were In His Bag, At This Time I\M Hopkins Became Agitated And Starte To Come Out Of His Cell. I Placed My Hand Up To Stop Him And He Pushed My Hand Out Of The Way And Shoved Past Me B Pushing Me In The Chest Area. I Then Grabbed Him To Secure Him And Then He Began To Resist. I Then Notified C\O Smith Wh Was On The Tier To Help Secure Him, We Then Placed I/M Hopkins On The Ground And Called For Backup. I\M Hopkins Continue To Resist And Sgt. Outen, Clifton Sprayed I\M Hopkins To Help Secure Him. I/M Hopkins Was Handcuffed And Secured, The Removed From The Tier And Transported To Mhu 24 Classroom #2 And Was Seen By Medical Nurse Betty And Refused Medica Treatment. I/M Hopkins Excessive Books Were Confiscated And Inventoried As Evidence. I/M Hopkins Was Advised That He Woul Be Receiving A Mab Write-Up For His Actions And Transferred To Bldg #18 Isolation.

Reporting Officer: Pusey, John E Jr(Correctional Officer)

|                                                  | Immediate Action Taken |

Immediate action taken by: Pusey, John E Jr-Correctional Officer

I/M Capfoamed, I/M Secured, I/M Seen By Medical, I/M Advised Of Mab Write-Up, Accomplished 404, 122 And 537

### Offender Disposition Details

Disposition: N/A                     Date: N/A        Time: N/A        Cell secured? No

Reason: N/A

Disposition Of Evidence: All Evidence Secured And Forwarded To Shift Commander

### Approval Information

Approved: ☒    Disapproved: ☐    Approved By: Mccreanor, Michael (Shift Commander - Large Inst.)

Comments: N/A

### Shift Supervisor Details

Date Received:            Time:          Received From: __

Shift Supervisor Determination:

[ ]  Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]  Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearin:

_(signature)_

Mccreanor, Michael (Shift Commander - Large Inst.)

11/02/2006  11:57   13026596687                LEGAL SERVICES                    PAGE  05/25

DR #
1014367

                                                                        Date: 11-26-04

                            DCC Delaware Correctional Center
                                   1181 Paddock Road
                                   Smyrna, DE 19977

### NOTICE OF DISCIPLINARY HEARING – FOR MINOR/MAJOR OFFENSE

To: Inmate: HOPKINS, SHANE K.        SBI#: 00 253918    Housing Unit: 22

1.  You will be scheduled to appear before the Hearing Office to answer charges pending against you.
    (Staff are to explain the charges as listed on the 122).

2.  At that time, a hearing will be held to determine whether you violated Institutional Rule(s) as
    alleged in the attached Disciplinary Report.

            How do you plead?  ☐ Guilty   ☒ Not Guilty

3.  A "Minor Offense" is a rule violation in which the extent of the sanction to be imposed shall be
    restricted to:
        a.  Written Reprimand.
        b.  Loss of one or more privileges for a period of time **of more than 24 hours but less than
            15 days.**

4.  A "Major Offense" is a rule violation in which the extent of the sanction to be imposed shall be
    restricted to:
        a.  Loss of one or more privileges for a period **of more than 15 days but less than 60 days.**
        b.  Confinement to assigned quarters for a period of time not to exceed 30 days.
        c.  Isolation confinement for a period of time not to exceed 15 days.
        d.  Loss of good time for a period of time not to exceed 30 days.  (Forfeiture of accumulated
            good time shall be subject to the approval of the Commissioner or his designee.)

5.  You have the rights in the disciplinary process as stated on the lower and back of this page.  These
    have been fully explained to you at the time of this notification.

6.  Counsel requested?   ☒ Yes    ☐ No   Name of Counsel:  CHRIS DESMOND

7.  Confront accuser?    ☒ Yes    ☐ No

8.  Witness requested?   ☒ Yes    ☐ No   Name of Witness:  MARTIN ROBERTS
                                                           WILLARD CHERRYWOOD
                                                           CURTIS BROWN

I certify that on 11-26-04  at 1705
                (Date)        (Time)

I served upon the above inmate this notice of            I have received copies of 122 & 127 and
Disciplinary Hearing for Minor/Major Offense             understand my rights as Form #127 has
and the Disciplinary Report is attached hereto.          been read to me.

_____                          _____
(Employee's Signature & Title)                           (Inmate's Signature)

                                        Page 1

Form 127: May 30, 2003   DACS

cident# 017887

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone#: 302-653-9261**

**Date:** 04/27/2006

# INCIDENT REPORT

| 3roup#: 1280 | **Type:** Inmate Involved | **Incident Date:** 11/26/2004 | **Time:** 15:00 | **Confidential:** No |

**acility:** DCC  Delaware Correctional Center                                      **Followup Required :** No

**.ssociated Disciplinary Report #(s)** 1014567

**ncident Location:** Bldg.22 A Tier

**.ocation Description:** MHU22 AU12

**"iolated Conditions:** 1.02/200.201 Assault

　　　　　　　　　1.06/200.203 Disorderly or Threatening Behavior

　　　　　　　　　2.06/200.108 Failing to Obey an Order

　　　　　　　　　2.13/200.111 Possession of Non-Dangerous Contraband

**Description of Incident:**

On November 26, 2004 I C\O Pusey, John and C\O Smith, Joseph were transferring I/M Hopkins, Shane SBI #00253918 from AL10 to AU12 due to the toilet being clogged in cell AL10. I C\O Pusey noticed that I/M Hopkins had an excessive amount of books in his possession and began to shake down his cell AL10 while I/M Hopkins was transferred to AU12. I confiscated and bagged up all of I\M Hopkins belongings and took them to him in 22AU12. I had AU12 cell door opened to hand the property over to I\M Hopkins and told him that the allowable items were in his bag and that two books were being confiscated cause he was in excess. I\M Hopkins became agitated and started to come out of his cell; I placed my hand up to stop him and he pushed my hand out of the way, shoving past me by pushing me in the chest area. I then grabbed him to secure him and he began to resist. I then notified C\O Smith who was on the tier to help secure him, we then placed him to the ground and called for backup. I\M Hopkins was still continuing to resist and Sgt. Outen, Clifton sprayed I\M Hopkins to help secure him. I/M Hopkins was handcuffed and secured, I/M Hopkins was removed from the tier and transported to MHU Bldg #24 classroom #2 and was seen by medical nurse Betty Bryant and refused medical treatment. I/M Hopkins excessive books were confiscated and inventoried as evidence. I/M Hopkins was advised that he would be receiving a MAB write-up for his actions and transferred to Bldg #18 Isolation.

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| 3hane, Hopkins  I\M | No | Superficial Abrasions |

**Evidence Type:** 2 Extra books                                      **Date Collected:** 11/26/2004

**Discovered By :** John, Pusey  C\O                            **Secured By:** John, Pusey  C\O

**"ype of Force Used** [X] PHYSICAL  [] CHEMICAL [] STUN [] OTHER [X] CAPSTUN []  NONE

**Restraints Used**    : handcuffs  and shackles

**mmediate Action Taken:**

/M secured, I/M seen by medical, I/M advised of MAB write-up, evidence secured, accomplished 122, 404, and 537

| Individuals Involved | | | |
|---|---|---|---|
| **Person Code** | **Name** | **SBI#** | **Title** |
| 3taff | Clifton, Outen S | N/A | CO Corporal/Sgt. - Large Inst. |
| 3taff | Joseph, Smith E III | N/A | Correctional Officer |
| 3taff | John, Pusey E Jr | N/A | Correctional Officer |
| nmate | Shane, Hopkins K | 00253918 | N/A |

**Reporting Officer:** Pusey, John E Jr(Correctional Officer)       **Entered By:** Pusey, John E Jr(Correctional Officer)

**Approval Information**

| [X] Approved [ ] Disapproved  **Date:** 11/26/2004 | **Approved by:** Mccreanor, Michael  (Shift Commander - Large Inst.) |

**Comments:** N/A

PL #2

cident#
017890

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone#: 302-653-9261**

**Date:** 04/27/2006

# INCIDENT REPORT

| Group#: 1280 | Type: Inmate Involved | Incident Date: 11/26/2004 | Time: 15:00 | Confidential: No |
|---|---|---|---|---|

**acility:** DCC  Delaware Correctional Center                                    **Followup Required :** No

**Incident Location:** Bldg.22 A Tier

**Location Description:** A Upper 12

**Violated Conditions:** 1.02/200.201 Assault

1.06/200.203 Disorderly or Threatening Behavior

2.06/200.108 Failing to Obey an Order

2.13/200.111 Possession of Non-Dangerous Contraband

**Description of Incident:**

On Friday November 26, 2004 @ approx 1500 hrs after a routine shakedown of I/M Hopkins, Shane (00253918), I/M Hopkins allowable property was being taken to him by C/O John Pusey. I (Smith) witnessed I/M Hopkins push C/O Pusey in his chest trying to get by him. C/O Pusey then grabbed I/M Hopkins and began to wrestle him to the ground. I (Smith) came to the aid of C/O Pusey and helped secure I/M Hopkins on the ground. I/M Hopkins continued to resist and was cap foamed by Sgt Clifton Outen. I/M then became less combative and allowed staff to hand cuff him. I/M was taken to bldg 24 classroom and seen by medical ( Nurse Betty Bryant). I/M Hopkins refused treatment.**end of report**

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| Shane, Hopkins K | No | See Medical Report |

**Evidence Type:** N/A                                    **Date Collected:** N/A

**Discovered By :** N/A                                    **Secured By:** N/A

**Type of Force Used**  [X]  PHYSICAL  [] CHEMICAL []  STUN []  OTHER []  CAPSTUN []  NONE

**Restraints Used**  : Handcuffs

**Immediate Action Taken:**

I/M pepper foamed, I/M secured, I/M seen by medical, Back up 404 report accomplished

**Individuals Involved**

| Person Code | Name | SBI# | Title |
|---|---|---|---|
| Staff | Clifton, Outen S | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | John, Pusey E Jr | N/A | Correctional Officer |
| Staff | Joseph, Smith E III | N/A | Correctional Officer |
| Inmate | Shane, Hopkins K | 00253918 | N/A |

**Reporting Officer:** Smith, Joseph E III(Correctional Officer)     **Entered By:** Smith, Joseph E III(Correctional Officer)

**Approval Information**

[X]  Approved [] Disapproved  **Date:** 11/26/2004  **Approved by:** Mccreanor, Michael  (Shift Commander - Large Inst.)

**Comments:** N/A

Appendix K1

## DELAWARE CORRECTIONAL CENTER

TO:        Inmate: **Hopkins, Shane K.**                                SBI: #00253918

FROM:      Shift Commander: **Capt. Michael McCreanor**

DATE:      **November 26, 2004**

SUBJECT:   Administrative Transfer

The undersigned believes that you warrant confinement to a more restrictive setting based upon Information presented. Consequently, pending review, you are hereby temporarily, administratively Transferred to:

☐        Protective Custody

|            |       |
| 200.108    | Failing to Obey an Order |
| 200.111    | Poss. Of Non-Dangerous Contraband |
| 200.203    | Disorderly and Threatening Behavior |

■        Pre-Hearing Detention          200.201      Assault

Offense No.                    Offense Title

☐        Higher Security

Signature of Shift Commander

Attach Supporting Documents/Forms i.e.: 404, 537, I/M statement, etc.

Copy to:   Security Superintendent (original)
           Institutional Investigator
           Classification
           MDT Chairperson
           Transfer Office
           Temporary Housing Counselor
           Classified Housing Counselor
           File

Form #: 228-B (Rev 11/97)

DEPARTMENT OF CORRECTION                                              FORM # : 138
Burea of Adult Correction                                            (F. and B.)
Delaware Correctional Center

REPORT OF USE OF FORCE. CHEMICAL AGENTS AND/OR APPLICATION OF RESTRAINTS ON INMATES.
( Note: Do not complete this report for the general use of restraints in the routine movement
or transfer of an inmate ).

---

| 1. To: | 2. From: (Title, Name) | 3. Date: |
|---|---|---|
| Warden Thomas Carroll | Capt. Michael McCreanor | 11/26/04 |

---

4.  Inmate Name                                    5.  Institutional Number
    Shane K. Hopkins                                   00253918

---

6.  Use of force, chemical agents and / or application of restraints was ordered by : Sgt Clifton
Outen(Capstun)/Officer John Pusey (Physical Force)

---

8.  Reason (s) for use of force, chemical agents and / or application of restraints:

    a. _X_ Displaying signs of imminent violence    e. ___ Administer Medication
    b. ___ Attempting suicide / suicide precaution   f. ___ Destroying state property
    c. ___ Admit / return to Isolation               g. _X_ Prevent injury to self / other
    d. _X_ Assaultive                                h. ___ Other _____

---

9.  The inmate was placed in (X) hard,  ( ) soft restraints.

---

10. An Incident Report    (X) is,          ( ) is not being submitted.

---

11. The inmate ( ) was,    (X ) was not medicated. If was, specify medication.

---

12. Chemical agent  (X) was,   ( ) was not used. If used, by whose authority?
    Type of chemical agent used: CapFoam

---

13. Inmate  ( X ) was,    ( ) was not examined. If examined, who examined the inmate?
    Nurse : Nurse Betty Bryant

---

14. Staff members involved were : Sgt Clifton Outen, Officer Joseph Smith, Officer John Pusey

---

15. Explanation of incident and your participation: (Be specific and detailed. How was force used, by
    whom, ect. Use reverse side of form to fully document events).  See Section 17

---

16. Injury to Inmate: (X) yes,  () no,  type of injury / treatment given: See attached medical report

    Injury to Staff:   ( ) yes,  (X) no,  type of injury / treatment given:

    Medical Staff performing treatment: Nurse Betty Bryant

17. Continuation of any item. List by number and then continue narrative.

On 11-26-04 at approx. 1500 hrs. Officer Pusey and Officer Smith, Joseph were transferring Inmate Hopkins, Shane SBI 00253918 from Bldg #22 AL10 to AU12 because of a clogged toilet. Officer Pusey noticed that Inmate Hopkins had an excessive amount of books in his possession. Officer Pusey conducted a shakedown on Inmate Hopkins property while he was transferred to AU12. Officer Pusey then confiscated and bagged up his property and took it to him in cell AU12. Officer Pusey had AU12 cell door opened to hand the property over to I/M Hopkins. Officer Pusey informed I/M Hopkins that the allowable items were in his bag; at this time I/M Hopkins became agitated and started to come out of his cell. Officer Pusey placed his hand up to stop I/M Hopkins from departing the cell; I/M Hopkins then pushed Officer Pusey's hand out of the way and shoved past him by pushing him in the chest area. Officer Pusey then grabbed I/M Hopkins to secure him; I/M Hopkins became resistive at this time. Officer Pusey then advised Officer Smith who was on the tier that his assistance was needed; Officer Smith then called for back up. Officer Pusey and Smith then placed I/M Hopkins on the floor and back up arrived. I/M Hopkins was still resisting and Sgt Outen, Clifton used pepper foam, I/M Hopkins then became cooperative and he was handcuffed. I/M Hopkins was then removed from the tier and transported to Bldg #24 classroom #2 were contact was made with Lt. Yoder. Lt. Yoder flushed I/M Hopkins eyes and I/M Hopkins was seen by Nurse Betty Bryant for his minor injuries and refused other medical treatment. I/M Hopkins excessive property was inventoried and I/M Hopkins was advised that he would be receiving a MAB write-up.

(Signature of shift commander)

PG #7

Appendix 'G'

Incident Report Number: _____

## GAS USE REPORT

Time: 1515 _____    Date: 11-26-04 _____    Day: Friday _____

Officers using gas: Sgt. Clifton Outen _____

Type of gas used:   Name: Capstun (Pepper Foam) _____   Time used: 1515 _____

Point of Contact: Face _____

Did gas assist in controlling the inmate?    Yes_____    No___X____

Was more than one blast used at one time?   Yes_____    No___X____

Officer injuries?                            Yes_____    No___X____

Name of injured officer (s) : _____

Name of inmate (s)
Gas activated upon:    Shane K. Hopkins _____  /  00253918 _____
                                                      SBI Number

                                                      / _____
                                                      SBI Number

Inmate injuries?                          Yes___X___     No_____

Was inmate seen by medical personnel?     Yes___X___     No_____

Signature of
Medical personnel: Nurse Betty Bryant _____

Date: 11-26-04 _____    Time: 1545

Signatures:

Reporting Officer: _____    Date: 11/26/04

Shift Commander: _____    Date: 11-26-04

Security Superintendent: _____    Date: _____

ATTACHMENTS
1. Use of Force          Yes__X__    No_____
2. Incident Reports      Yes__X__    No_____
3. Disciplinary Report   Yes__X__    No_____

# INTERDISCIPLINARY PROGRESS NOTES

| DATE | TIME | DISCIPLINE | NOTES SHOULD BE SIGNED WITH NAME AND TITLE |
|------|------|------------|--------------------------------------------|
| 11/20/0_ | | | Called by security to assess _____ being involved c a code. Noted to have been sprayed & encounter. Noted superficial abrasions @ _____ back and @ shoulder about 10 cm. Also noted bruising to top of _____ superficial scratches also noted to neck. Open area to bridge of nose, edema, c bruising scratches to forehead and abrasions hair line @ side. No dizziness present. Won't open eyes. Eyes flushed c _____ by building _____ Noted no numbness _____ digit @ hand. Noted capillary refill <3 sec. VS - 131/92 P-112 RC-16 O2 sat _____% via pulse ox. All areas cleaned c NSS. Refused to have triple antibiotic ointment placed to areas. Attempts made X2. Continued refusal witnessed by _____ _____. Given note to Lt. Yoder. Continued refusal to open eyes. _____ |

| NAME—Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|-----------|-------|--------|---------------------|------------|----------|
| Hopkins | Shane | | | | |

FCM-002

I'm SHANE HOPKINS #253918    11-26-04    1600 Hrs

PHOTOS BY Lt. YODER

 

 

PG #10

DR #
10/4567

Date: 12/9/04

DCC Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

## DISCIPLINARY HEARING DECISION

☑ Class I (Major)   ☐ Class II (Minor)   ☐ Summary (24 Hour LOAP)

Inmate: _Hopkins, Shane_   SBI#: 00 _253910_
Institution: Delaware Correctional Center   Hearing Date: _12/9/04_   Time: _0950_

Inmate Present: ☑ Yes   ☐ No

Reason (If No): _____

Violation: 2.91, 201 Assault 210, 203 DTB 200.108 PTO 200.111 *und*
Inmate Plea: _not guilty_
Inmate Statement: _Didn't threaten or assault anyone. I had the library books they don't count, Pusey assaulted me and put me in choke holds & Smith hit me repeatedly._

Witness Name: _____
Testimony: _____

Witness Name: _____
Testimony: _____

Witness Name: _____
Testimony: _____

Decision: ☑ Guilty   ☐ Not Guilty   ☐ Further Investigation
Rational: _During confrontation w/ Pusey, scuffle ensuing preserves happened as he reported. Persorent due confrontation inmate claim guilty._

Sanctions: _15 days isolation currently being kept_
Hearing Officer's Signature

I understand that I may appeal the decision of the Hearing Officer (or Shift Supervisor in the case of a Summary Sanction) to the Commissioner of Correction or his designee. I must complete a Disciplinary Appeal Form within 72 hours immediately following the hearing and mail it to the DCC Hearing Office.

☑ I do intend to appeal.
☐ I do not intend to appeal.

_inmate would to sign upper_
Inmate's Signature

## ORDER TO IMPLEMENT SANCTIONS

☐ Inmate does not wish to appeal      ☐ Appeal has been denied by Commissioner or Designee
☐ Sanctions have been modified         ☐ Time Limit (72 hours since hearing) for appeal has expired

Modifications: _____
It is hereby ordered to implement the sanctions or modified sanctions on Date: _____ Time: _____
Form 121 – May 30, 2003 – 2 pt. NCR DACS

PG # 11

DR# 1014567

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE. 19977**
Phone No. 302-653-9261

Date: 12/14/2004

## DISCIPLINARY HEARING DECISION

| Inmate : Hopkins, Shane K | | SBI#:00253918 | Type:Class 1 |
|---|---|---|---|

| Institution:DCC Delaware Correctional Center | Hearing Date: 12/09/2004 | Time: 09:50 |
|---|---|---|

**Inmate Present:** Yes       **Reason(If No):** N/A

**Violation:** 1.02/200.201 Assault, 1.06/200.203 Disorderly or Threatening Behavior, 2.06/200.108 Failing to Obey an Order, 2.13/200.111 Possession of Non-Dangerous Contraband

**Inmate PLEA:** Not Guilty

**Inmate Statement:** Didn't threaten or assault anyone. I had two library books they don't count. Pusey grabbed me and put me in choke hold. Sith hit me repeatedly.

**Witness Name:** Smith, Joe, C\O

**Testimony :** N/A

**Decision :** Guilty

**Rational :** During confrontation c/o Pusey said writeup happened as he reported. Per report and confrontation inmate found guilty. 15 days isolation currently being done.

**Sanctions:** N/A

### HEARING OFFICER'S SIGNATURE _____

Savage, Larry

I understand that I may appeal the decision of a Class II Hearing to the Class I Hearing Officer. I may appeal the decision of a Class I Hearing to the facility administrator. I also understand that I have 72 hours to submit my notice of appeal in writing to the Class I Hearing Officer if I am appealing a Class II Hearing decision or the Warden if I am appealing a Class I Hearing decision.

I [X]   DO   [ ]   **DO NOT INTEND TO APPEAL**

**INMATE's SIGNATURE** _____

### ORDER TO IMPLEMENT SANCTIONS

[X]   Inmate does not wish to appeal          [ ]   Appeal has been denied by Commissioner or Designate

[ ]   Sanctions have been modified          [ ]   Time Limit(72 Hours since hearing) for appeal has expired

It is here by ordered to Implement the sanctions:

| Sanctions | Start Date | Days | End Date |
|---|---|---|---|
| 1. Isolated Confinement | | 15 | |

Page 1 of 1

ATTACHMENTS
SECTION "B"

Appendix K2
Page 2

## ADMINISTRATIVE TRANSFER

### INMATE STATEMENT

S.H. × While conducting a search of my property officer
Pusey found more then the institutional allowance of
2 Books. The extra books where from the institutiona
library. I had 2 personal books that where sent into
the prison by a family member. These personal books
where clearly labled as personal property, the books
titled "The Davinci Code and "Angles and demons t
John Brown had Stickers with my name and SBI num
on the cover. Officer Pusey took these Books along
with a personal Websters Colegiate Dictionary and
Websters Thesaurus in order to be malicious. Becaus
he could. Officer Pusey then brought my property
to my cell. When I asked Officer pusey about my × SH
(Cont.)

ATTEST

Inmate Signature _Shane Hopkins_

Date _11-26-04_

Staff Signature _____ Date _11-26-04_

Inmate refused to make a statement ☐

## DO NOT DUPLICATE. FORWARD ORIGINAL TO SECURITY SUPERINTENDENT'S OFFICE ONLY.

Form# 228-B (Rev 11/97)

Officer Pusey Physically grabed me by my shirt telling me to get into the cell. I tripped backwards over my bag of property and banged my head onto the cell door handle and befor I could stand back up straigh Officer Pusey Placed me in a choke hold and took me down to the ground. Officer Smith came up the stairs and punched me in the face repeatedly while I was on the ground shouting how he hated me and had been waiting for a chance to "wip my fagot ass."

S.H Officer Pusey placed me in hand cuffs and kneeled on my back. Officer Pusey told Officer Smith to "spray this motherfucker" despite the fact that I was already restrained and not resisting. After I was pepper sprayed I was lifted off of the ground and grabed by the hair, my face was then repeatedly banged into the wall wall while my hands that where cuffed behind my back where held up causing me to stand on my tippy toes. x S.H

S.H x Officers Pusey and Smith led me down the steps and out to Building 22's sliding doors. They "I don't know who because I couldn't see" perpasfully banged my head and face into the sliding doors door Jamb. x S.H

PG # 14

ny face was rammed into the inside Sliders door Jamb, the outside Sliders door Jamb and building #24's door Jamb, along with Comments like "How did that feel" and "That Sounded like it hurt". x S. H

S. H x This abuse was done because of Officer Smith and Officer Puseys personal Feelings towards me, not because of any rule infraction at the time of the incident. x S. H

S. H x The opportunity presented itself for officers Smith and Officers Pusey to have some Fun at my expense Knowing that thier actions Could be justified

S. H x I hold no long time personal grudges about Past Confrintations like officers Smith and officer Pusey did. Thier abuse of Power is unjustified, x S. H

Shaw Hopkis

11-26-04

DATE

STAFF SIGNATURE        11-26-04

DATE

Major Holman Assign a supervisor to investigate C:11-2
11/30/04

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C : Smyrna          DATE: Nov 26th 2004

GRIEVANT'S NAME: Shane Hopkins    SBI#: 253918

CASE#: 9907                       TIME OF INCIDENT: Approx 3:00 P.M

HOUSING UNIT: S.H.U #18-C-U#6

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

This grievance is being Filed as Soon as I was able
to. I have been in Isolation and was not able to obtain
a pen and grievance form.

On 11-26-04 I was assaulted by C/o's Joe Smith
and John Pusey.
C/o's Smith and Pusey Confiscated personal property
that was sent into the Institution by family members
R.e. ① Thesaurus and ① Fiction novel "Angles And
Demons", by Dan Brown. ————→ Cont. Pg #2

ACTION REQUESTED BY GRIEVANT: This incident was malicious and
it needs to be addressed.

GRIEVANT'S SIGNATURE: Shane Hopkins    DATE: 12-17-04

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)    _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

Exhibit A

April '97 REV

**RECEIVED**

DEC 2 0 2004

Inmate Grievance Office
Pg. # 16

C/o's Smith and Pusey placed me in Cell A upper #12 Building #22 while they Conducted a Search of my property that was in Cell Lower #10. During the Shakedown I was able to hear and See as Several Library Books along with Verious other Items where thrown into the hallway From my old Cell.

When Officer Pusey brought me the property that was deemed allowable to Cell upper #12 he placed a trash bag Containing my property on the Floor and Signaled For the Cell door to be opened. When the door opened Officer Pusey began to hand me ② Library Books which where Clearly labled as Such.

I Stepped out of the Cell and pointed down to the Floor at my Thesaurus and Dan Brown novel and asked why they where being Confiscated. Officer Pusey Stated that the books where being taken because I had more then the allowable number of books.

I told Officer Pusey that the Thesaurus and Dan Brown novel where Personal books and that they where Clearly labled as Such with a piece of tape with the words Personal property", written on it.

I began to explain that I was allowed to have ② personal Books along with ② Library Books. Officer Pusey then Stated "I don't Care", and grabed me by my Shirt telling me to get back in my Cell. I Fell backwards over the trash bag Containing my property and hit my head on the cell door handle.
over ⟶
P.#17

Before I could get back to my feet Officer Pusey dropped the Library Books he was holding and placed me in a headlock and called downstairs for officer Smith.

From the headlock I asked Officer ~~pos~~ Pusey what his fucking problem was and reached my hands under Pusey's arm to relieve the pressure from around my neck.

Now at this point I am not sure who started to punch me in the Chest and Stomach, but Someone hit me repeatedly before Officer Smith pulled my feet out from underneath of me and I fell to the floor.

Everything that happened untill now except for how this incident began could possably be justified by Officers Smith and Pusey by Saying that I resisted. But that would be a lie.

As soon as I hit the floor I turned onto my Stomach volintarily and placed my hands behind my back. Officer Pusey Knelt on my back and began twisting my arm behind my back as if to Cuff me.

Officer Smith bent over me and Said " I hate this faygot Motherfucker", and began to punch me in the face, he hit me like ⑤ times before standing up.

When I moved my free arm to protect my Face Officer Pusey released my other arm and placed me in a Choke hold, he applied So much pressure that I was <u>Scared for my life</u>. And when I managed to mumble that I couldn't breath officer Pusey Squeezed harder.

Cont. PG #4 ⟶

At this point in time Some other Officers arrived and C/o Smith told Someone to "Spray this Motherfucker," and I was Capfoamed and handcuffed.

I was then to Stand up and Face the wall where C/o Smith Smashed my Face into the wall and every Couple of Seconds he would Slap me in the back of the head So that my Face hit the wall.

Officers Smith and Pusey then escorted me down the back tier Stairs and when we reached the bottom officer Smith grabed me by the throught and held me like that as he led me past all of the down stairs Cells as if desplaying what had been done to me like I was Some Kind of trophy.

After we left the tier Officers Smith and Pusey held my arms up in the air Causing me to Stoop forward So that the top of my head was out infront of me.

When building # 22s inside Slider was opened my arms where pushed So that my head was banged into the door Jam. Officers Smith and Pusey thought that this was extreamly Funny and they repeated the head into the door Jam Scinerio when building 22s outside Slider opened with Comments like "that Sounded like it hurt",.

They then led me up the walkway and Forced my head into building # 24s wall. I Couldn't See because of the Capfoam in my eyes So I was unable to avoid these blatant attempts to inflict Pain.

I was then placed in one of building # 24's Classrooms and left alone for a couple of minutes before Nurse Betty examined my wounds. I started to tell her and everyone in the room how officers Smith and Pusey treated me. Officer Smith who was in the room repeatedly told me to "Shut up Hopkins", as if I shouldn't tell anyone about the things that where done to me.

Nurse Betty directed L.T. Garrety to take me to be cleaned up in order to remove the Capfoam from my eyes. As I leaned over the sink I heard many people around me so I told the whole room about the things that had been done to me and again officer Smith told me repeatedly to "Shut up" from some distance away.

I was led back to a classroom where my feet where shackled to a table leg and left alone for a couple of minutes before the classroom door opened and officers Smith and Pusey came in and ordered me to ~~stand up~~ stand up. I stood up and I was bent over the table that I was shackled to. Officer Smith then grabed the middle finger of my right hand and started to bend it backwards, he then let go of my middle finger and switched to my Index finger of my right hand Officer Pusey then asked officer Smith "do you have the one you want?" and Smith began to bend my finger backwards as if to break it. When my finger started to hurt I called officer's Smith and Pusey a couple of real bitches loudly and they both got off of me and left the room

Cont. PG # ⟶

PG# 6 of 7

A Couple of minutes passed and nurse Betty Came back into the room and Cleaned my wands, She then took my blood presure and Checked my blood oxygen Content before telling me to "Calm down", before leaving.

During this incident I Felt like a small Child in the hands of two Sadistic adults. These two officers Seemed to get a perverse pleasure From Causing me pain.

I did not resist because I have a release date and I want to keep it. I Knew what the Consiquences would be if I threw a punch at these guards.

Because of the extensive injuries I recieved at the hands of these officers I requested that pictures be taken of my body and L.T. Garrety took Several photo's But he could not take pictures of the abraisions on my Scalp.

These officers Claim that I recieved the injuries because I resisted. But if I resisted enough to justify the injuries I recieved then why is there not one Single Scratch or mark on officers Smith and Pusey.

Thank You For Your Time.

Shane Hopkins

Pc #19

STATE OF DELAWARE
COUNTY OF NEW CASTLE ‖ SS.

AFFIDAVIT/STATEMENT
Shane Hopkins #00253918

## STATEMENT

I Shane Hopkins being First duly Sworn deposes And Says That On 11-26-04 The Foregoing Incident Took Place In M.H.U Buld #22 Between Myself And Correctional Officers. I would Therefore State The Following Events Took Place Against My Person.

On 11-26-04 My Cell mate Brian O'neal Purposefully Clogged Our Cells Toilet A-L-#10. Brian O'neal Then Complained To The Guards About The broken Toilet And demanded To Be Moved To Another Cell. Correctional Officer Baker Then Ordered Me To Pack My Property And Move To Cell A-U-#12. I Told C/O Baker That I Did Not Get Along With The Inmate In Cell A-U-#12 And That I Would Not Move Because We Might Get Into A Physical Altercation. C/O Baker Then Left The Tier In Order To Call For Backup.

STATE OF DELAWARE SS:
COUNTY OF NEW CASTLE

CONT PAGE 2 OF 9
AFFIDAVIT STATEMENT

AFTER SEVERAL MINUTES LT. YODER AND C/O's JOE SMITH AND JOHN PUSEY CAME TO TALK TO ME. I TOLD LT. YODER OF MY FEARS CONCERNING THE MOVE TO CELL A-U-#12.

LT. YODER ASSURED ME THAT THE MOVE WOULD ONLY BE TEMPORARY AND THAT I WOULD BE MOVED BACK TO CELL A-L#10 AS SOON AS THE TOILET WAS FIXED. SO I AGREED TO MOVE.

WHILE I WAS PACKING MY PROPERTY FOR THE MOVE C/O JOE SMITH NOTICED THAT I HAD SEVERAL BOOKS. INSTITUTIONAL POLICY FOR THE M.H.U STATES THAT INMATES ARE ONLY ALLOWED TO HAVE TWO BOOKS. C/O SMITH ORDERD ME TO GO TO CELL A-U#12 WHILE HE CONDUCTED A INVENTORY SHAKEDOWN OF MY PROPERTY.

DURRING THE INVENTORY/SHAKEDOWN I WAS ABLE TO HEAR AND SEE AS SEVERAL BOOKS ALONG WITH VERIOUS OTHER ITEMS WHERE THROWN INTO THE HALLWAY BY OFFICERS SMITH AND PUSEY.

STATE OF DELAWARE    §§.    CONT PAGE 3 of 9
COUNTY OF NEW CASTLE          AFFIDAVIT STATEMENT

AFTER C/O⁵ SMITH AND PUSEY COMPLETED THE
INVENTORY/SHAKEDOWN C/O PUSEY BROUGHT THE
PROPERTY THAT WAS DEEMED ALLOWABLE TO ME IN CELL
A-U-#12 IN A TRASH BAG AND ORDERED THE CELL DOOR
BE OPENED.
        C/O PUSEY BEGAN TO HAND ME TWO LIBRARY
BOOKS. I STEPPED OUT OF THE CELL AND POINTED
DOWN TO MY PERSONAL BOOKS ON THE TIER FLOOR
AND ASKED WHY THEY WHERE BEING CONFISCATED.
C/O PUSEY TOLD ME THE BOOKS WHERE BEING
TAKEN BECAUSE I HAD MORE THEN THE ALLOWABLE
NUMBER OF BOOKS.
        I TOLD C/O PUSEY THAT I WAS ALLOWED TO
HAVE TWO INSTITUTIONAL LIBRARY BOOKS ALONG WITH
TWO PERSONAL BOOKS.
        C/O PUSEY TOLD ME THAT HE DID NOT CARE
AND HE GRABBED MY SHIRT AND STARTED TO PUSH
ME BACKWARDS INTO THE CELL. I TRIPPED OVER THE
BAG CONTAINING MY PROPERTY AND HIT MY HEAD ON THE
CELL DOOR.

STATE OF DELAWARE    SS.    CONT PAGE 4 OF 9
COUNTY OF NEW CASTLE    AFFIDAVIT STATEMENT

BEFOR I Could REGAIN MY FOOTING C/O PUSEY Placed Me In A HEADlock/Chokehold And Called DownSTAirs To C/o Smith.

From The HEADlock/Chokehold I AskEd C/o PUSEY WHAT His FuckiNg Problem WAS And REAchEd My HANds Up UNdER His ChokiNy ARM To REliEVE ThE PRESSURE FROM ARound MY NECK.

AT This PoiNT EithER C/o PUSEY OR C/o Smith BEgAN To PuNch ME REpEATEdly IN ThE CHEST ANd STOMACH. I Could NoT SEE Who BECAUSE My HEAD WAS BEINg HEld FACiNg AwAy FROM ThE OFFicERS.

C/o Smith Pulled My FEET OuT FROM UNdER ME ANd I FEll To ThE FlooR. WHERE I VolINTARily TuRNEd ONTo My STOMACH And PlacEd My HANds BEhiNd BEhiNd My BACK So ThAT ThE C/oˢ Could PuT ThE HANdCuFFS oN.

OFFicER PUSEY KNElT ON My BACK AS IF To CuFF ME.

State of Delaware 𝔰𝔰
County of New Castle

C/o Smith Bent Over Me And Said. "I Hate This Faggot Mother Fucker" And Punched Me Repeatedly In The Face.

When I Tried To Shield My Face From This Attack Officer Pusey Placed Me In A Chokehold/ Headlock And Applied So Much Pressure On My Neck That My Vision Began To Blur And I Became Scared For My Life. I Managed To Tell C/o Pusey That I Couldn't Breath. Instead Of Lessening The Pressure C/o Pusey Squeezed Harder.

I Heard Some Other Officers Arriving But I Do Not Know Who They Where Because My Head Was Turned Away From Them. One Of The Officers Hollered "Spray This Mother Fucker" And I was Capfoamed And Handcuffed.

I Was Then Lifted To My Feet And Told To Face The Wall Where C/o Smith Slapped Me In The Back Of The Head Repeatedly Making My Face Hit The Wall.

Pg.# 24

STATE OF DELAWARE
COUNTY OF NEW CASTLE    SS.

CONT PAGE 6 of 9
AFFIDAVIT STATEMENT

I WAS THEN ESCORTED DOWNSTAIRS AND WHEN WE REACHED THE BOTTOM C/O SMITH GRABBED ME BY THE THROAT AND LIFTED MY HEAD UP AS HE LED ME PAST All OF THE DOWNSTAIRS CELLS DISPLAYING MY INJURIES TO THE OTHER INMATES.

AFTER WE LEFT THE TIER OFFICER SMITH HELD MY ARMS UP IN THE AIR CAUSING ME TO STOOP FORWARD SO THAT THE TOP OF MY HEAD WAS INFRONT OF ME. WHEN BUILDING #22 INSIDE SLIDING DOOR OPENED MY ARMS WHERE PUSHED SO THAT MY HEAD BANGED INTO THE DOOR JAM.

OFFICERS SMITH AND PUSEY BEGAN TO LAUGH AND WHEN BUILDING #22 OUTSIDE SLIDING DOOR OPENED OFFICER SMITH PUSHED MY HANDCUFFED ARMS AND MY HEAD WAS FORCED INTO THE DOOR JAM AGAIN. C/O SMITH SAID "THAT SOUNDED LIKE IT HURT", ALONG WITH VERIOUS OTHER COMMENTS ABOUT THE INCIDENT.

I WAS THEN LED UP THE WALKWAY TO BUILDING #24 WHERE C/O SMITH FORCED MY HEAD INTO THE WALL.

STATE OF DELAWARE    §§    CONT PAGE 7 of 9
COUNTY OF NEW CASTLE     AFFiDAViT STATEMENT

   I Could Not SEE Because of The CapFoam
In My Eye's And I Was Unable To Move To Ovoid
These Blatant Attempts To Inflict Pain.

   I Was Then Taken To A Classroom And Left Alone
For Several Minutes Befor Nurse Betty Examined Me.
I Told Her And Everyone Else In The Room How C/o's
Smith And Pusey Had Beaten Me Without Justification.

   Officer Smith Kept Screaming For Me To "Shut
Up Hopkins", In order To Prevent My From Telling
Other People What They Had Done To Me.

   Nurse Betty Then Told L.T.    To Clean
The CapFoam From My Eye's And I Was Led From The
Classroom To A Sink Where I Had My Face Cleaned.

   I Could Hear That There Where Many People
Around Me So I Began To Tell Everyone What C/o's
Smith And Pusey Had Done To Me.

   Once Again C/o Smith Was Nearby And He
Ordered Me To "Shut Up".

STATE OF DELAWARE
COUNTY OF NEW CASTLE

SS.

CONT PAGE 8 of 9
AFFiDAViT STATEMENT

AFTER THE CAPFOAM WAS CLEANED FROM MY FACE I WAS TAKEN BACK TO THE CLASSROOM WHERE MY LEGS WHERE SHACKLED TO A TABLE.

EVERYONE LEFT THE ROOM AND AFTER SEVERAL MINUTES C/Oˢ SMITH AND PUSEY CAME INTO THE ROOM AND ORDERED ME TO STAND UP. I STOOD UP AND THEY BENT ME OVER A TABLE I WAS SHACKLED TO. C/O SMITH GRABBED MY RIGHT HAND MIDDLE FINGER AND STARTED TO BEND IT BACKWARDS. C/O SMITH THEN LET GO OF MY MIDDLE FINGER AND SWITCHED TO MY INDEX FINGER. C/O PUSEY ASKED C/O SMITH IF HE "HAD THE ONE HE WANTED", AND OFFICER SMITH BEGAN TO BEND MY FINGER AS IF TO BREAK IT. WHEN I BEGAN TO FEEL PAIN I CALLED C/Oˢ SMITH AND PUSEY "A COUPLE OF REAL BITCHES" LOUDLY AND THEY BOTH GOT OFF OF ME AND LEFT THE ROOM.

APPROX. 5 MINUTES PASSED AND NURSE BETTY CAME AND CLEANED MY WOUNDS AND CHECKED MY FINGER.

STATE OF DELAWARE

COUNTY OF NEW CASTLE

$$ SS. $$

CONT PAGE 9 OF 9

AFFIDAVIT STATEMENT

She Also Checked My Blood Oxygen Content And Blood Pressure Befor Telling Me To Calm Down.

These Correctional Officers Seemed To Derive Pleasure By Causing Me Pain.

I Did Not Resist Thier Attack At Any Time Because I Knew The Consequences If I Punched, Kicked or Scratched These Guards.

Because Of The Extensive Injuries I Recieved I Requested Pictures Be Taken Of My Body. LT.        Took Several Photo's But He Could Not Take Pictures Of The Bumps And Abraisions On My Scalp.

I Did Not Resist These Officers Enough To Justify My Injuries.

No Officers Recieved Any Injuries Durring This Altercation.

Worn To And Subscribed Before Me This 20th day of May 2005

Shawn Hopkins

Brian D Engrem

NOTARY Public

ATTACHMENTS
SECTION "C"

SHUT AL4

To: Assistant Deputy Warden D.R. Pierce
Major Dave Holman
Section Supervisor
D.C.C. Smyrna - SHU - MHU Units

RECEIVED

MAY 0 9 2005

DEPUTY WARDEN I

Re: Grievance #9907   Assault of Inmate

I am requesting that you notify me of the
outcome of my request-Grievance asto the assault upon
my person as stated in Grievance #9907 and Deputy Warden
D.R. Pierce's request at top of Grievance for you to assign
Supervisor (other then LT. Boone) to investigate the allegations
therein.

Please Notify me Accordingly.

Sincerely Yours,
Shane Hopkins

Shane Hopkins # 00253415
SHU 17-A-L#4

xc: file
cc: Colm F. Connolly Esq.

Exhibit "C"



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE DEPUTY WARDEN I**
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6668

## MEMORANDUM

TO:     IM Shane Hopkins SBI# 253918 SHU 17 AL4

FROM:   David Pierce, Deputy Warden I

DATE:   May 18, 2005

RE:     Grievance

I received your letter May 9, 2005, regarding your grievance outcome.
When a decision is reached you will be notified.

DP/dc
Attachment
cc:     File

17 ALY

MAY 30, 2005

**RECEIVED**

MAY 3 1 2005

**DEPUTY WARDEN I**

D.W  DE. PIERCE
RE: Reply To Your Memorandum OF 5-18-05

DEAR SIR.

THANK YOU FOR RESPONDING TO MY WRITTEN REQUEST RECIEVED ON 5-9-05 AS TO GRIEVANCE # 9907 DISPOSITION. I WOULD LIKE YOU TO KNOW THAT NO ONE HAS SPOKEN TO ME ABOUT THIS GRIEVANCE OR ANOTHER ADDENDUM GRIEVANCE # 9908 SINCE THEY WHERE FILED. I WOULD ALSO NOTE THAT I WAS DENIED ACCESS TO ANYTHING DURING THE TIME PERIOD I WAS HELD IN ISOLATION STATUS, THUS I FILED AS SOON AS I OBTAINED MY PROPERTY BACK. I SAY THIS BECAUSE IT IS A COMMON CUSTOM OR PRACTICE TO DENY ANYONE IN ISOLATION STATUS A PEN OR GRIEVANCES.

I WOULD ALSO NOTE THAT B.O.P AND C.F.R ON GRIEVANCE PROCEDURE WILL SHOW THAT NO PROCESS NOW COULD BE TIMELY AS THE GRIEVANCES ARE MORE THEN 180 days OLD.

PLEASE NOTIFY ME AS TO WHO IS INVESTIGATING THESE.

SINCERELY YOURS,
Shane Hopkins
SHANE HOPKINS #253918
S.H.U. 17 A-L#4



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE DEPUTY WARDEN I**
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6668

#### MEMORANDUM

| TO: | IM Shane Hopkins SBI# 253918 SHU 17 AL4 |
|-----|------------------------------------------|
| FROM: | David Pierce, Deputy Warden I |
| DATE: | June 2, 2005 |
| RE: | Grievance |

I received your letter dated May 30, 2005, regarding grievances you filed. Grievance #9907 and #9908 were rendered non-grievable issues. Therefore this matter is closed.

DP/dc
Attachment
cc:     File

June 12th, 2005

Deputy Warden
David E. Pierce

Re: Reply To Your June 2nd, 2005    Ref: Grievance #9907
     And #9908

Sir,
    Presumptively, When you ordered an investigation on
12-30-04, by the notation at the top of Grievance #9907
you instituted a seprate and distinguishing inquiry out-side
of and including the rejection reasons stated on the back
of the original grievance dated 12-20-04 by C.P.L. L.M.
Merson. My inquiry specifically asked of you who was
assigned to investigate the matter upon the aforesaid.
    Since I have not spoken to anyone about this at
any point thus-far I would request or Major David
Holman to notify me accordingly.
    I am requesting an investigation and criminal
charges henceforth.

                                        Sincerely Yours,
                                    x  Shane Hopkins
xc: File                               #253918
                                       Shane Hopkins.

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

**Date:** 06/13/2005

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

**Offender Name :** HOPKINS, SHANE K | **SBI#** : 00253918 | **Institution** : DCC
**Grievance #** : 14510 | **Grievance Date** : 06/08/2005 | **Category** : Individual
**Status** : Unresolved | **Resolution Status :** | **Resol. Date** :
**Grievance Type:** Medical Staff | **Incident Date** : 06/08/2005 | **Incident Time :**
**IGC** : Vargas, Rosalie | **Housing Location :** Bldg 17, Lower, Tier A, Cell 4, Single

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** On 5-18-05 I sumbitted a sick call slip outlining what I consider a serious problem. This person who did not see fit to sign her response is treaing this continuing problem like a joke that did not even deserve her attention. This is a frightening experiance. And I want to know why it is happening. I have since had this same kind of experiance while I am fully awake. I cant know if this is a medical problem or a mental health issue

**Remedy Requested** :

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|------|-------|------|

## ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** YES | **Date Received by Medical Unit :** 06/13/2005

**Investigation Sent** : 06/13/2005 | **Investigation Sent To** : Wolken, Gina

**Grievance Amount :**

**DCC Delaware Correctional Center**
Date: 06/13/2005
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|

**Offender Name :** HOPKINS, SHANE K

**SBI#** : 00253918

**Institution** : DCC

**Grievance #** : 14510

**Grievance Date** : 06/08/2005

**Category** : Individual

**Status** : Unresolved

**Resolution Status:**

**Inmate Status :**

**Grievance Type:** Medical Staff

**Incident Date** : 06/08/2005

**Incident Time :**

**IGC** : Vargas, Rosalie

**Housing Location :** Bldg 17, Lower, Tier A, Cell 4, Single

| INFORMAL RESOLUTION | |
|---|---|

**Investigator Name** : Wolken, Gina

**Date of Report** 06/13/2005

**Investigation Report :**

**Reason for Referring:**

Discussed c̅ I/m his S/s. Appears that it may be related to anxiety. Encouraged
to put sickcall into Mental Health.

**Offender's Signature:** *Refused to sign until seen by mental health*

**Date** : 6/14/05

**Witness (Officer)** : *Kim Offundar*

**✳ REGISTERED RETURN RECIEPT REQUESTED. ✳**

Date: July 5th 2005

Pay-To: DELAWARE CORRECTIONAL CENTER          Amount: $10.31

The Sum of: _____ ten _____ and Cents 31

REGISTER MAIL PLEASE

Address to whom sent:
M. JANE BRADY
DELAWARE ATTORNEY GENERAL
820 N. FRENCH ST. 12th Floor
Wilmington Delaware 19801

Form #34 (rev 5/03)

SBI# 253918

Log # _____

Check # _____

Date of Ck _____

Shane Hopkins

---

**✳ REGISTERED RETURN RECIEPT REQUESTED ✳**

Date: July 5th 2005

Pay-To: DELAWARE CORRECTIONAL CENTER          Amount: $10.31

The Sum of: _____ Ten _____ and Cents 31

REGISTERED MAIL PLEASE

Address to whom sent:
DREWRY NASH FENNELL ESQ
A.C.L.U of DELAWARE
100 W. TENTH ST
SUITE 309
Wilmington De. 19801

SBI# 253918

Log # _____

Check # _____

Date of Ck _____

Shane Hopkins
Inmate Signature

REC - 8-13-05

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fennell ESQ
100 W 14th St
Suite 309
Wilmington, De

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _Arnold Wright_  ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

_IC Wright   7/1/05_

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   RR U86 941 205 US

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

PL # 27

June 13, 2005

Director,
Drewry Nash Fennell Esq. ✓
ACLU of Delaware
100 W. 10th St.
Suite 309
Wilmington, De 19801

Re: Submissions To File # 02-22 And Status

Dear Director,

   I Submitted An Incident In 2002, Asto Diane Winters Direction To Do So.

   I Would Like To Know The Status Of My (CRIPA *) Submission And If You Are Going To Refer The Submission To The U.S Attorneys Office For Investigative Authority Aforesaid.

   Please Advise And Provide Me With A Copy Of My Submission And Any Relative Letters, Memo's, Ect, Done As A Result Of The Assault Upon My Person.

* 42 U.S.C. § 1997 ET. SEQ.

Xc: File
CC: Marie A. O'Rourke Esq.
  Patricia C. Hannigan Esq.
  Colm Connolly Esq.

Sincerely Yours,
x Shane Hopkins
Shane Hopkins # 00253918
1181 Paddock Rd.
Smyrna De.
   19977-9679

July 2, 2005

Rec'd
7/4/05
KW

DiR. A.C.L.U. of Del.
DREWRY NAsh FENNELL Esq.

RE: ATTAched

I would Like To Address The REASON Why These MATERIALS/LETTERS HAVE TAKEN So Long To GET To You. IT's VERY Simple BRIAN ENGREM LAW LIBRARIAN D.C.C S.H.U. TRies To STOP, PREVENT, HAMPER And Delay Filings By Witholding of Legal Filings FOR WEEKS AT A Time.
PLEASE NOTE The AFORESAID ANd ASSIGN ME AN ATTORNEY FROM YOUR Delaware OR WAShiNgTON D.C. Division To HANdle These MATTERS HENCEFORTH. ANd I NEEd The CURRENT Address of The FORMER Delaware A.C.L.U. DiR. JudiTh Mullen Esq. OR WhERE She CAN BE REAched.
I Would ASk Of YOUR PoSiTioN The FOREgoing ISSUES PRESENT FOR U.S. ATTNy's C.R.I.P.A. ViolaTion/ INVESTigaTion INTo My ASSAULT.

ThAnk You FOR YOUR ASSiSTANCE IN The AFORESAID.

SINCEREly YOURS,
Shane Hopkins
SHANE K. HoPkiNS

XC: File
ATTAchMENTS (4)

PG# 39

REC 7-19-05

# aclu delaware

July 13, 2005

Mr. Shane Hopkins
Delaware Correctional Center
SBI#00253918
1181 Paddock Road
Smyrna, DE 19977

Dear Mr. Hopkins:

I am in receipt of your letter dated July 2, 2005.

You must understand that our past assistance to you in dealing with your
rights at the prison in no way suggests that we legally represent you.
Therefore, your request for an appointed attorney can not be met. I suggest
that you continue to file grievances at the prison which is a procedure
required by the prison to obtain any action regarding your complaints.

Thank you for keeping us informed of your situation.

Sincerely,

Diane Winters
Intake Representative

**american civil liberties union delaware**
100 West 10th Street • Suite 309 • Wilmington, Delaware 19801
(302) 654-3966

August 12, 2. 05    Mailed 8-29-05 ___

Drewry Nash Fennell Esq.
Executive Director
A.C.L.U of Delaware
100 West 10ᵗʰ Street Suite 309
Wilmington Delaware 19801


Re: Submissions And Non-Replies To Specific Questions.


Dear Counsel,
            On 6-13-05 I wrote you Concerning 02-22
File Submissions, You did not Respond To my Request Of The
Current Status Thereof And you did not provide me With Copies
of previous Submissions Or What Fallow-ups Where done
in Relation Thereto.
            On 7-2-05 I wrote Concerning The Current
Address of Judith Mullen Esq. Whom you Replaced in
2004, You did not Respond To my Request, But in A Variance
Subordinates letter/Reply On 7-13-05 Wich Was Totally
Non-Responsive To Any of my 7-2-05 Questions presented
Therein under.
            Within 10 days of Reciept Of This letter I
Would Request You Reply To my Issues presented in My
Past Submissions Aforesaid. Your Failure To do so Will
Result in A Complaint Against You With The O.D.C.
You Are playing games With peoples lives and have
Incurred Numerious Del. Rule Professional Responsibility
Code of Conduct Violations That Will be presented

F0101

PG#41

ACCORDINGLY AND VIGOROUSLY PROSECUTED BOTH STATE AND FEDERAL R.I.C.O. VIOLATIONS.

THANK YOU FOR YOUR PROMPT ATTENTION IN THE MATTER HEREIN.

SINCERELY YOURS,

Shane Hopkins

SHANE HOPKINS

#253918

1181 PADDOCK RD

SMYRNA DE 19977

XC: FILE

CC: Colm F. Connolly Esq U.S. ATTNY

MAILED:                    REGISTERED MAIL

F0102    PG#42

# aclu delaware

September 20, 2005

Mr. Shane Hopkins
Delaware Correctional Center
SBI#253918, Unit 17
1181 Paddock Road
Smyrna, DE 19977

Dear Mr. Hopkins:

I am in receipt of your letter dated August 12, 2005.

I would be more than happy to respond to your request to forward information to
Judith Mellen. Although we have information from you in our possession, please
provide us with a detailed list of what you would like us to forward on your
behalf. If you would like to correspond with her, you can send communications
in care of our office and I will be happy to forward them.

As you know, the ACLU is not a general legal services clinic. We are a private,
non-profit organization with limited resources and, therefore, must be very
selective in choosing cases. We generally handle cases that deal with issues of
constitutional law, seeking to advance and preserve basic rights and principles
spelled out in the state and federal constitutions. Even among those types of
cases, we can take only a small percentage of the many meritorious complaints
that we receive.

Please understand that our ability to represent you is not a judgment on the merits
of your case. We simply do not have the resources to assist you. And,
unfortunately, our attempts to resolve the issues concerning prison conditions did
not receive the attention that we anticipated. We continue to work to bring
attention to the many difficulties faced by those in the prison system.

We urge you to again be sure to exhaust all administrative remedies (grievances
and appeals) before attempting a judicial resolution to your situation. New
legislation requires absolute exhaustion of administrative remedies before state
prisoners may file a civil action. Should you fail to take this step, it will, in all
likelihood, result in your civil action being dismissed.

We are sorry that we cannot be of assistance to you at this time and we hope that you will be able to resolve this matter satisfactorily. Thank you for contacting my office.

Sincerely,

Drewry Nash Fennell, Esquire
Executive Director
ACLU of Delaware

December 22, 2005

Drewry Nash Fennell Esq.
Executive Director
A.C.L.U. of Delaware
100 West 10th Street
Suite #309
Wilmington Delaware 19801

Re: 2nd Request For Reply To Your 9-20-05 Letter.

A.C.L.U. Directors Fennell And Mellen,

Per Your 9-20-05
Letter in Which I've Recieved No Reply As of The Above
date To My 9-30-05 Letter Addressing The Following
Questions:

A) What has The A.C.L.U. done With My 2
Submissions of Excessive Use of Force That I have
Submitted To You Under File No: 02-22

B) What Steps Can I Take To Report These On
going Conditions of Illegal Use of Force Incidents. That I
And Now As I've Read In The News Papers Numerious Other
Inmates Are Now Reporting.

C) In Your 9-20-05 Letter You Expound Upon
"Our Attempts To Resolve The Issues Concerning Prison Conditions
did Not Recieve The Attention That We Anticipated". Who did
You Speak With And Can I Bolster or Advance Your Claims
To Them And/or Contact The News Papers* Ect.

D) ARE THERE ANY PRO bONO ATTORNEYS OR ORGANIZATIONS INVOLVED AND/OR CAN YOUR NATIONAL DIVISION INTERVENE OR ALLOW YOUR DIVISION TO BRING ALL OF THIS TO LIGHT?

IT WOULD SEEM, THE PROBLEMS ARE INHERENT. WITHIN THE CORRUPTION AND COVER-UPS OF YEARS OF INSUBORDANT ACTS, DONE SOLEY TO REPRESS THIER JOB PREFORMANCE REQUIREMENTS AND "NOT" DO ANYTHING BUT COME UP WITH MORE REASONS AFORESAID, THAT THEY ARE DOING THIER JOBS.

WHATS MORE, THERE IS "NO" SUCH THING AS REHABILITATION ITS UNDERLINE WAREHOUSING. I HAVE BEEN HELD IN THE S.H.U. (MAX) SINCE THE INCIDENT OF ASSAULT OF 11-26-04.

SINCERELY YOURS,

Shane Hopkins

SHANE HOPKINS
#253918  17-A-L#4
1181 PADDOCK Rd.
SMYRNA DELAWARE
19977

* THE SAME TYPE OF CONDITIONS ENUMERATED by NEWS JOURNAL REPORTERS ESTADON PARRA AND LEE WILIAMS MIRROR THE SAME WAY bOTH OF MY INCIDENTS WHERE REPORTED.

# aclu delaware

March 6, 2006


Mr. Shane Hopkins
Delaware Correctional Center
SBI#253918, 17-A-L-4
1181 Paddock Road
Smyrna, DE 19977

Dear Mr. Hopkins:

In your letter of December 22, 2005, you indicate that you continue to have problems with excessive force at the prison. You have not indicated with which officers you are experiencing these problems.

Our letter to you dated September 20, 2005, clearly stated that we are not in a position to represent you legally and we suggested that you continue to file the grievances. I am uncertain if this is what you have been doing. If you would like us to investigate this matter further or to contact the warden or department of corrections on your behalf, I will need your permission to use your name. Please write back to us giving us the authorization to do so on your behalf and include the names of the particular officers with whom you are having problems. It is my understanding that if there are other prisoners who are experiencing the same problems with the same officers, then perhaps the Delaware Center for Justice can intervene as well. Once again, this is not an offer to represent you legally, but a means of trying to help you in your present situation.

I will await your response.

Sincerely,

Diane Winters
Intake Representative

**american civil liberties union delaware**
100 West 10th Street • Suite 309 • Wilmington, Delaware 19801
(302) 654-3966

Pg # 47

ATTACHMENTS
SECTION "E"

✻ REGISTERED RETURN RECIEPT REQUESTED. ✻

Form #14 (rev 7/03)

Pay-To: DELAWARE CORRECTIONAL CENTER                    Date: July 5th, 2005

The Sum of: _____                    Amount: $ 10.31
                                                      and Cents 31        REGISTERED
                                                                          MAIL
Address to whom sent:                                                     PLEASE
M. JANE BRADY
DELAWARE ATTORNEY GENERAL
820 N. FRENCH ST. 13th FLOOR
WILMINGTON DELAWARE 19801

SBI# 253916         Log # _____    Check # _____    Date of Ck _____

                                              Shane Hopkins


✻ REGISTERED RETURN RECIEPT REQUESTED ✻ ✻

Pay-To: DELAWARE CORRECTIONAL CENTER                   Date: July 5th, 2005

The Sum of: _____                    Amount: $ 10.31
                                                      and Cents 31        Registered
                                                                          MAIL
Address to whom sent:                                                     PLEASE
DREWRY NASH FENNELL ESQ
A.C.L.U. of Delaware
100 W. TENTH ST.
SUITE 309
WILMINGTON DE. 19801

SBI# 253916         Log # _____    Check # _____    Date of Ck _____

                                              Shane Hopkins

Unit Commander Signature (if Over $100.00)

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JANE BRADY
820 N French St.
Wilmington De
19977

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

July 2nd, 2005

HON. M. JANE BRADY
DELAWARE ATTORNEY GENERAL
820. N. FRENCH ST. 12TH FLOOR
WILMINGTON DELAWARE 19801

RE: ATTACHED AND REQUEST FOR INTERNAL INVESTIGATION (CRIMINAL)

DEAR ATTNY GEN BRADY,
THE DEPUTY WARDEN* HAS MEMO's
GRIEVANCES ETC. RELATIVE TO THE ATTACHED INCIDENT OF
CRIMINAL CONDUCT AGAINST MY PERSON AND ON-going C.R.I.P.A.
VIOLATIONS AT S.H.U. — M.H.U. AT D.C.C. SMYRNA.
I AM REQUESTING THAT SOMEONE FROM DEL.
STATE POLICE CONTACT ME HENCE-FORTH AND THAT AN
INDEPENDENT INVESTIGATION is** CONDUCTED.
I hope TO hear from you WITHIN 30 dAys
henceforth.

XC: File
ATTACHMENTS (4)

* D.E. PIERCE JR.

** 10 Del.C. § 4001 TO 4010

SINCERELY YOURS
x Shane Hopkins
SHANE HOPKINS
# 253918   S.H.U #17
1181 PAddock Rd.
SMYRNA DELAWARE
19977-9679

Exhibit "E"

TO: Colm F. Connolly Esq.            5-16-05
   U.S. Attorney
   1007 Orange Tree St.
   P.O. Box 2046
   Wilmington Delaware
        19899-2046


   Re: Request For Criminal C.R.I.P.A Investigation
        And 5 USC § 552 F.O.I.A *


   Dear Counsel:
              Attached herein is an incident that I
   am requesting your office conduct an investigation
   of under C.R.I.P.A. U.S.C § 1997 provisions, in that
   the incident is an on-going pattern of conduct that
   is related to File #02-22 of the Delaware A.C.L.U
   based on the same illegal conduct of State officials
   upon inmates. I would request that criminal charges
   be instituted henceforth.
              I would also request under *Freedom OF
   Information Act that you disclose the number of
   Assault Cases your department has investigated in
   the past 5 years. This would be an request for the
   names of victims and correctional officers involved.

   CC: Attorney General              Sincerely Yours
       Jane M. Brady
       Aclu. DNFBVNellesq/          Shane Hopkins #00253918

F0085

Colm F. Connolly Esq.                    May, 20, 2005
United States Attorney
1007 Orange Street
Ste 700
PO Box 2046
Wilmington Delaware 19899-2046

Re: 2nd Attempt And Interference Of Access
     To Assert A C.R.I.P.A. Violation

Dear U.S. Attny Connolly:
                    On|Before 5-16-05 I
Submitted The Attached Letter To The Law
Librarian, State Personnel Brian Engrem For Copy
Service. Attached To It Was Grievance #9907 And
#9908 And A 5-5-05 Letter To Deputy Warden
D.E. Pierce Jr. Brian Engrem Refused To Copy
Aforesaid. On 5-10-05 I Recieved All Material Back
With A Memo Saying:
          "Letters To Staff And Grievances
Are Not Considered Legal PhotoCopies".
          On 5-10-05 I Resubmitted The Grievances
And Letter To Brian Engrem Asking Him What Policy,
Procedure Or Custom He is Applying In Denying Me
                                        Cont.

(1)

From Documenting Legal Attachments To Support My Claim To You Under C.R.I.P.A. On 5-13-05 I Again Recieved "No" Reply And The Same Aforesaid Sub-Missions Back Uncopied.

I Have Thus Instituted A Grievance As to The Aforesaid And I Have Advanced The Enclosed Affidavit Out-Lining The Intire Incident And Up To Date Pattern Of Retaliatory Acts, Gestures And Now The Aforesaid Attempt To Assert And Notify Your Office.

I Would Request Now, To Addendum My 5-16-05 Letter To Include Denial Of Access To The Courts Based On My Underlining C.R.I.P.A. Violations And Now Hindering My Access To The Courts Via Your Office. In Which, I Wish For An Investigation Into The Pattern Of Incidents Documented In Case No. 02-22 With The AcLu Of D.E. Since 2002, I Demand That Your Office Conduct A C.R.I.P.A Investigation And I Authorize You To Obtain My And Other Inmates Submissions To D.E. A.C.L.U Under Case No. 02-22. The Amount Of Submissions Contained Therein "Would" Warrant A Federal Investigation.

Cont.

②

I would Also Question, As to Federal Civil R.I.C.O violations Attached To These Incidents By Private And State Entities Over The Past 4. YRS.

Upon Notification From Your Office I Will Advance My Grievances And Other Documentations To Support My Claims Aforesaid.

Thank You For Your Prompt Attention To The Aforesaid.

Sincerely Yours,

Shane Hopkins
Shane Hopkins #00253918

xc: File
cc: M. Jane Brady
    Drewry Nash Fennell ✓
    Janet Leban D.C.J.S

Attachments: (9) Page Affidavit of CRIPA Violations And 5-16-05 Letter

(3)

PG# 54

November 15, 2005

Colm F. Connolly Esq
U.S. Attorney for Delaware
1007 Orange Street Ste 700
P.O. Box 2046
Wilmington Delaware
                19899-2046


Re: 2nd Request

Dear Counsel,
              Since I had a visit on 10-4-05 by
F.B.I Agent B. Wise I've written you to request
a copy of the agents report. Submitted to you as to
the investigatory process under C.R.I.P.A. Enclosed
I would addendum the report findings with the
attached (2) affidavits I've done therefrom.
              Please forward this to the agent
and/or send me a copy of the report submitted to
your office.


XC: File
CC: Agent Brenda Wise F.B.= office Wilm De.
Attachment(s): 2 Affidavits

                              Sincerely Yours,
                              Shane Hopkins
                              Shane K. Hopkins
                              253915  17-A-L#4
                              1181 Paddock Rd
                              Smyrna Delaware  19977

Exhibit 5

ATTACHMENTS
SECTION "F"

January 24, 2006

Stephen A. Hampton Esq.
Grady + Hampton L.L.C.
6 North Bradford Street
Dover Delaware 19904

Re: Attached And Request For Representation.

Dear Counsel,

Please Review The Attached Complaint And Notify Of Your Intent To Except My Case For Representation. I Have Also Enclosed Follow-Ups Filed Beyond The 12-15-05 Docketing Of The Complaint.

Thank You For Your Time And Consideration Herein.

Sincerely Yours
Shane Hopkins
Shane Hopkins
#253914  17-A-L#4
1181 Paddock Rd.
Smyrna Delaware
19977

XC: File
Attachments: Copy Complaint 05-870
(1) 10-20-05 Affidavit
(1) 11-18-05 Follow Up.
(1) 12-27-05 3rd Request
(1) 1-24-06 A.C.L.U. Letter

Exhibit
"A"

# PERRY & SENSOR

ATTORNEYS AT LAW

SUITE 560, FIRST FEDERAL PLAZA
POST OFFICE BOX 1568
WILMINGTON, DELAWARE 19899

JAMES T. PERRY*
MICHAEL L. SENSOR*

(302) 655-4482

FACSIMILE (302) 655-4043

*ALSO ADMITTED IN NEW JERSEY

WRITER'S ELECTRONIC MAIL:
msensor@perry-sensor.com

March 16, 2006

Shane Hopkins
SBI# 00253918
Delaware Correction Center
1181 Paddock Road
Smyrna, DE 19977

RE:   Request for Representation

Dear Mr. Hopkins:

This will acknowledge my receipt of several papers from you and Ronald Proctor concerning a possible claim against the Department of Corrections and other individuals. Please be advised that after reviewing these documents, I have concluded I will be unable to assist you. Accordingly, I am withdrawing entirely from this matter and will take no action on your behalf.

Thank you for thinking of me in connection with this matter.

Very truly yours,

PERRY & SENSOR

By: Michael L. Sensor

MLS/cms

PGS57

ATTACHMENTS
SECTION "G"

STATE OF DELAWARE          )
                           ) SS
COUNTY OF NEW CASTLE   )

AFFIDAVIT OF: Shane L Hopkins
DATED: October 20th 2005

## AFFIDAVIT

I, Shane K. Hopkins, being first duly sworn deposes and says that the foregoing statement is a true and correct observation of what occurred on the above date herein at/in Secure Housing Unit # 17 located in the Delaware Correctional Center, Smyrna, Delaware, in that I was a part of or witnessed the incident described herein. I would clearly state under penalty of perjury of the laws of the State of Delaware.

ON 10-4-05 BRENDA WISE OF THE FEDERAL BUREAU OF INVESTIGATIONS WILMINGTON DELAWARE DIVISION CAME TO INTERVIEW ME CONCERNING AN ASSAULT APON ME BY CORRECTIONAL OFFICERS

AFTER RELATING TO MRS. WISE THE EXACT NATURE OF THIS ASSAULT AGENT WISE INFORMED ME THAT SHE WAS UNABLE TO CONDUCT A FORMAL INVESTIGATION BECAUSE OF A LACK OF RECORCES. AGENT WISE STATED THAT I HAD OULY RECIEVED WHAT SHE CONSIDERED TO BE MINOR INJURIES, RE: BLACK EYES AND CUTS AND BRUISES. AND THAT IN ORDER FOR HER TO CONDUCT A FORMAL INVESTIGATION I WOULD HAVE TO RECIEVE BROKEN BONES OR PERMANENT PHYSICAL SCARRING

Affiant: Shane Hopkins Shane Hopkin
Signature

Shane K Hopkins
Print Name
Delaware Correctional Center
Smyrna, DE. 19977

SWORN TO AND SUBSCRIBED before me this 4th day of November 2005.

My Commission Expires: 6/14/06

Notary Public

STATE OF DELAWARE  SS
COUNTY OF NEW CASTLE  SS

<u>AFFIDANT OF Shawn K. Hopkins</u>
<u>October 20th 2005</u>

I TOLD Agent Wise That The ATTACK WAS UNPROVOKED
And UNjustified Because I did Not Resist The Correctional
At Any Time. I Told Agent Wise That IT WAS UNjust And
FRIGHTENING TO Be Physically Abused By These Correctional
Officers After I had been Completely Restrained By
Handcuffs And Pepper Spray. I Told MRS. Wise That IT
WAS UNFORTUNATE That A Person had To have Broken
Bones or Stitches in Order for Someone To Take
Notice And Respond To Such A Highly disproportionate
Response.

I informed Agent Wise That Pictures had been
Taken of My injuries And That if She Saw Them it Would
Be obvious That An Assault had Taken place Against Me
Because of my Numerous injuries Compared To The
Correctional Officers Who Recieved No injuries of Any
Kind.

I Told Agent Wise of how FRIGHTENED I Would Be
IF I Where Ever To Come Under Their direct Supervision
Again Because I had Tried Every Avenue of having
This Issue Addressed Within The Institution Re: Writing
Deputy WARDEN PIERCE And Institutional Internal
Affairs Without Any Meaningful Response To My
Concerns.

: CONT. PG. 3 OF 3

STATE OF DELAWARE    § §        AFFIDAVIT OF SHANE K. HOPKIN
COUNTY OF NEW CASTLE                OCTOBER 20TH 2005

I TOLD AGENT WISE THAT IT IS PROVEN THAT NOONE WITHIN THE INSTITUTION WILL TAKE ACTION AGAINST CORRECTIONAL OFFICERS WHO ABUSE THIER POWER AND CONDUCT THEMSELVES IN AN UNPROFESSIONAL MANNER.

I RELATED TO AGENT WISE THAT HAD I MADE ANY PHYSICAL ATTEMPT TO DEFEND MYSELF AGAINST THIS ATTACK THAT I WOULD BE FACING CHARGES IN A COURT OF LAW AND THAT I FEARED THE CONSEQUENCES OF MY ACTIONS.

AGENT WISE ASKED ME IF THIS KIND OF INCIDENT TOOK PLACE OFTEN AND I ASSURED HER THAT I HAD PERSONALLY WITNESSED UNJUSTIFIED ATTACKS ON FULLY RESTRAINED AND DEFENSELESS INMATES.

AGENT WISE TOLD ME THAT SHE WAS NOTING MY COMPLAINT AND WOULD KEEP IT ON FILE.

SWORN TO AND SUBSCRIBED        x Shane Hopkin
BEFORE ME THIS 4th DAY OF
NOVEMBER 2005

                x Brian W. Ingram
                    Notary

ATTACHMENTS
SECTION "H"

**FORM #584**

PG #1 OF 2

**GRIEVANCE FORM**

FACILITY: D.C.C. Smyrna          DATE: May 2nd 2006

GRIEVANT'S NAME: Shane K. Hopkins     SBI#: #253918

CASE#: 40703                TIME OF INCIDENT: 7:30 P.M.

HOUSING UNIT: M.H.U #21-BL #7

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

On 4-29-06 I was escorted to Building #24 for a preliminary
hearing involving a disciplinary write-up. After I signed my
copy of the disciplinary report I was asked by Lt. B. Reynolds
to step out into the hallway where Sgt. Trader was waiting.
Sgt. Trader asked me if my name was Shane Hopkins and when
I told him it was Sgt. Trader stepped close to me and said "I know
exactly who you are. Your the inmate who has filed a lawsuit
against C/o Smith and C/o Pusey. I have read the whole complaint.
We all know who you are".
Sgt. Trader is not a party named in the civil action that →
                                                          CONTINUED PG#2

ACTION REQUESTED BY GRIEVANT: Because the threat to my
personal safety comes from prison institutional staff
and correctional officers I request an administrative
transfer to another institution.

GRIEVANT'S SIGNATURE:_____     DATE:_____

WAS AN INFORMAL RESOLUTION ACCEPTED?      _____(YES)   _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____     DATE:_____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

RECEIVED

MAY 05 2006

Inmate Grievance Office

GRIEVANCE                    PG#2 of 2

Cont:

    I Filed With The Courts Concerning An Assault Apon My Person By Several Correctional Officers.

    Sgt Trader And His Co-Workers Knowledge Of This Civil Action Has Created An Enviroment That is Biased Against Me Affecting How I am To Be Treated As Evidenced By The Frivilous Write-Up I Recieved At The Hands of C/o Glick. C/o Glick Took A Completely Inane Object And Made it Appear Sinister. C/o Glick Then Confronted Me In An Inappropriate Manner Blatantly Attempting To Get Me To React in A "Threatening And Disorderly" Manner By Making Repeated Antagonistic Comments About How He "Got Me" With A Disciplinary Report.

    Because Of These Retaliatory Actions By Correctional Officers I Fear For My Phisical Safety. The Antagonistic Comments From C/o Glick Where Made With The Intention Of Provoking A Response From Me in Order To Justify An Attack And Assault Apon My Person.

Shane K. Hopkins
#253918
M.H.U.#21-B-L#7

XC: File

ATTACHMENTS
SECTION "I"

HG-1

Case # 02-22

TO: Diane Winters
From: Shane Hopkins # 253918
D.C.C.
1181 Paddock Rd.
Smyrna. De. 19977

Date
10-10-02

Mrs. Winters.

Inclosed you will find all of
the information you requested from me concerning my
treatment at the hands of the officials at D.C.C.
This includes a drawn up Civil
Action Law Suit that was never filed by me because of my
ignorance in how to file properly. This packet also includes
a drawn up law suit from Melvin Pusey who also believes
he was mistreated at the hands of prison officials. Mr. Pusey
is currently trying to persue his complaint in Court. Thier
are also Copies of Grievances Filed by me Soon after
the incidents and the Grievance Boards responses. Thier
are 2 additional Statements given to me by inmates
who where also mistreated. These Statements where taken
over 1 year ago and the only reason I Still have them
is because I appear to be a paperwork packrat. One
statement from Lawrance rambles on about many
Subjects that you are not concerned with. However he
tells of how he got Pneumonia from being placed
in an air conditioned Cell without any cloathing, blanket,
matress or anything at all for a prolonged period of time.
→ over

F0001

And that he had to be given a penicillin shot from medical.

Another statement is from Louis Dickerson. Please forgive him, he is not exactly the sharpest crayon in the box and is obviously boarderline retarted. But that is exactly why these Correctional Officers get away with treating him the way they do. The incident he speaks about was witnessed by roughly 50 inmates. Louis was hogtied and his whole head was Duck Taped over his mouth and around his head. And the result of the Duck Tape being removed from around his head was disgusting, large patches of hair was ripped from his head quite possably scarring him for life. I could go on and on about the messed up things done to him.

My Complaint is Simple. I was assaulted by a Correctional Officer while handcuffed and my legs shackled. A Nurse and 2 Doctors watched this incident and then refused to provide medical attention to me even though I asked repeatedly. They refused at the request of Lt. Fetzer who did this in order to cover up the incident. I requested that pictures be taken of myself and the room that I was beaten in. If I had been in a fight with another inmate pictures would have been taken of both of us but no pictures where taken because a Correctional Officer was involved.

And do you Know whats Crazy? I can live with being beaten while defenseless. Even though it was wrong I have gotten over it. But I can't get over being placed in an airConditioned, Freezing Cold, Concreet room. <u>Completely</u> Naked, Not even underware.

Over 1 year later and I can still remember Crouching in the Cell Corner Naked and Shivering uncontrolably for 15 days a Correction Officers male and female looked in on my naked Shivering self and laughed at me. The Airconditioning was turned up Full blast, Cold was part of the punishment and it drove me quite literally Crazy. No mattress or blanket of Course. Nothing but a Stainless Steel Toilette and the Cold Concreete Floor From 5:00 AM to 10:00 PM. Then I was given a mattress and a paper sheet that was nothing more than a large paper towel.

Needless to say I got out of that room after 15 days. But I ended up in trouble again after prison Officials Confiscated all of my legal work that was being done Concerning the way I was treated. I Complained long and loud and they took me back to one of those "Strip Cells" and When I refused to give them my Claothing I was held against the Cell wall while Security Chief Cunningham Cut my Cloathes off of my body with a pocket Knife.

→ over

PG # 4

PG. # 4

I think I lasted about 3 hours in that cold room completely naked befor I went crazy and bit my hands, ~~and wrists~~ and wrists untill blood pured from my body. Thats right even the most sanest man can be driven to extreams if put under insane conditions. But at the time I felt that the pain and consiquences would be only momentary while the suffering of that cold cell would last. Luckily a guard came to check on me and I was given medical treatment and placed in a heated room in the infirmery. Pictures where taken of me in this condition and I can think of at least 20 others who where placed in these strip cells.

Everything I've told you is true and plenty of others have been in the same situation. No one was allowed to use the phone to inform family members of the way they where being treated. No letters where written to family because no one could write, No pen.

Plenty of inmates have plenty of petty gripes about the institutions in wich they are serving time. This is not a petty gripe. This is an obvious and flagrant violation of my rights weather I'm a prisoner or not and it definitely is ~~cruoued~~ cruel punishment ment to demean and humiliate.

F0004

PG #5

You've asked for any information I could provide and I've given what I can think of at the moment. My question to you is do you think being placed in a cold cell naked is right? And if not is it your intention to help put a stop to this form of punishment.

I don't know much about the law and my family was at a loss as to what to do about it. So time has passed and they say wounds heal with time. But when I think about it the humiliation back along with the anger.

Please let me know once you have recieved this letter. And if you need anything else jst ask.

P.S. I'm sorry it took so long to get this packet to you. I have been temporarily transfered to Deleware County Prison in P.A. I will be back in Smyrna soon. If you need to send me anything in the mean time sent it to my mother at:

Carol Hopkins
355 Zynn Rd
Downingtown P.A
19335

**FORM  #584**

**GRIEVANCE FORM**

FACILITY: D.C.C. Smyrna          DATE: July 16th 2001

GRIEVANT'S NAME: Shane Hopkins     SBI#: 253918

CASE#:_____          TIME OF INCIDENT: Appox. 11:30 A.M.

HOUSING UNIT: #18-SHU C-tier

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

On July 16th at approx. 11:30 Am I was escorted off
of A tier Building #17 ~~and~~ by Officers - Anthony Fuentes - Richard
Pratt - And Newt. I was taken to the observation room where
Officer Newt placed leg Shackles on. Officer Fuentes then
entered the room and threatened me concerning a Verbal
altercation we had approx. 3 weeks previously.
    Officer Fuentes struck me with a closed Fist in the
mouth and nose area and placed both his hands around
my throught and began to squeeze untill my airway was
closed and I was rendered nearly uncontious.

ACTION REQUESTED BY GRIEVANT:  I want to file formal charges for
assault against officer Fuentes.
    Officer Fuentes should be suspended or Fired
for this unjustified attack.

GRIEVANT'S SIGNATURE: Shane Hopkins     DATE: 7/28/01

**RECEIVED**

**JUL 0 3 2001**

WAS AN INFORMAL RESOLUTION ACCEPTED?  _____(YES)  _____(NO)

**Inmate Grievance Office**

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____     DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

F0028

## Instructions for Submitting a Regular Grievance

Inmates are required, per DOC Procedure 4.4 [Inmate Grievance Procedure] to attempt to resolve complaints prior to filing a regular grievance. Grievances are to be submitted within seven(7) days from the date of the occurance or incident or within seven days after the inmate became aware of the incident. The grievance is to be placed in the grievance box located in each housing unit.

Only one issue per grievance form will be addressed. If the grievance is submitted on a weekend or a holiday, it will be recieved during the next working day.

## Return of Unprocessed Grievance

Intake Action: This Grievance Form is being returned to the inmate under the provisions outlined in DOC Procedure 4.4 "Inmate Grievance Procedure" for the following reason(s):

_____ **Vulgar/Abusive or Threatening Language.** The language that is unacceptable has been highlighted. The grievance may be resubmitted omitting this language.

_____ **Non-Grievable.** This issue has been defined as non-grievable in accordance with DOC Policy 4.4. These procedures have their own appeal process that must be followed. _____ Disciplinary Action _____ Parole Decision _____ Classification Action

_____ **Request.** Requests are not processed through the grievance procedure. Please correspond with the appropriate office to secure the information that is requested.

_____ **Duplicate Grievance(s).** This issue has been addressed previously in Grievance # _____.

_____ **Original Grievances must be submitted to the Inmate Grievance Chairperson.** Photocopies are not accepted.

_____ **Inquiry on behalf of other inmates.** Inmates cannot submit grievances for other inmates.

_____ **Expired filing period.** Grievance exceeds seven(7) days from date of occurrence.

_____          _____
Inmate Grievance Chairperson                                    Date

Form#: 584 (F&B)
(Reverse Revised July '99)

# DELAWARE CORRECTIONAL CENTER
# INMATE GRIEVANCE OFFICE

**To:**    Hopkins, Shane

**From:**  Officer L.M. Merson, Inmate Grievance Chairperson

**Date:**  Tuesday, August 14, 2001

**Re:**    GRIEVANCE (S)

---

## I HAVE RECEIVED YOUR GRIEVANCE (S) DATED 07/16/01, THE GRIEVANCE (S) ARE
## REJECTED FOR THE FOLLOWING REASON (S):

__ SECURITY ISSUE (INVOLVES THE SECURITY & STAFFING OF THE INSTITUTION ANDTHE SAFETY, HEALTH AND/OR WELFARE OF INMATES, STAFF AND THE PUBLIC)

__ CLASSIFICATION ISSUES (JOBS, TRANSFERS, PROGRAMS, ETC. IT HAS IT'S OWN APPEAL PROCESS. I.B.C.C.: MS. E. STEVENSON, C.I.C.B.: MS. F. LEWIS AND I.R.C.B.: MR. H. YOUNG)

_X_ DISCIPLINARY ISSUE (M. A. B. WRITE-UP"S HAVE THEIR OWN APPEAL PROCESS. THE HEARING OFFICERS ARE LT. K. REYNOLDS, S/LT. B. WILLIAMS AND LT. SCOTT.)

_X_ AN INMATE DOES NOT HAVE THE POWER TO REQUEST OR DEMAND DISCIPLINARY ACTION ON STAFF. THE IGC DOES NOT HAVE THE POWER TO HOLD HEARINGS ON STAFF. IF YOU HAVE A COMPLAINT REGARDING STAFF, WRITE A LETTER TO THAT PERSONS SUPERVISOR. IN YOUR CASE THAT IS: Capt. Belanger

__ PAROLE BOARD ISSUE.

__ IT IS AN ISSUE THAT HAS ALREADY BEEN GRIEVED BY YOU OR ANOTHER INMATE (IF GRIEVED BY ANOTHER, YOU MAY REQUEST, IN WRITING, TO BE ADDED TO THE FIRST GRIEVANCE MAKING IT A GROUP ISSUE.)

__ IT IS UNACCEPTED BECAUSE IT HAS PASSED THE SEVEN (7) DAY TIME FRAME ALLOTTED TO FILE A GRIEVANCE.

__ IT IS A PHOTO COPY, CARBON COPY, WRITTEN IN PENCIL OR RED INK (SUBMIT ORIGINAL FORMS ONLY, WRITE IN BLACK OR DARK BLUE INK ONLY.)

_X_ OTHER: You will have to write to the Institutional Investigator. The IGC does not have the power to press charges.

cc: File

**FORM  #584**

**GRIEVANCE FORM**

FACILITY: D.C.C.  Smyrna          DATE: July 16th – 30th 2001

GRIEVANT'S NAME: Shane Hopkins          SBI#: 253918

CASE#:                                   TIME OF INCIDENT: Begining approx. 2:35 PM.

HOUSING UNIT: #18 - SHU C-tier

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

I have been placed in an Air Conditioned Building
Cell for 15 days without any Under Clothes (sox, Shirt and udderware)
I have not been provided with Sheets, Blanket and
for all but 6 hours a night Mattress.
I have been repeatedly denied Toothbrush and Toothpaste.
I Am being held in Cold and inhumane Conditions
despite numerious pleas to be given basic amenities.
This is in Violation of My 8th Amendment Constitutional
Rites By Subjecting me to Cruel And Unusual punishment.

ACTION REQUESTED BY GRIEVANT: To be provided with the basic
needs of a person unable to obtain them for himself.
Stop Subjecting myself and others with treatment
Unconstitutional and Mentaly / Physicaly demeaning.

GRIEVANT'S SIGNATURE: Shane Hopkins          DATE: 7/30/01

WAS AN INFORMAL RESOLUTION ACCEPTED?          ____(YES)     ____(NO)

**RECEIVED**

**JUL 0 3 2001**

**Inmate Grievance Office**

(COMPLETE  ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____          DATE:_____

IF UNRESOLVED, YOU ARE  ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

F0031

Pg# 71

Instructions for Submitting a Regular Grievance

Inmates are required, per DOC Procedure 4.4 [Inmate Grievance Procedure] to attempt to resolve complaints prior to filing a regular grievance. Grievances are to be submitted within seven(7) days from the date of the occurance or incident or within seven days after the inmate became aware of the incident. The grievance is to be placed in the grievance box located in each housing unit.

Only one issue per grievance form will be addressed. If the grievance is submitted on a weekend or a holiday, it will be recieved during the next working day.

Return of Unprocessed Grievance

Intake Action: This Grievance Form is being returned to the inmate under the provisions outlined in DOC Procedure 4.4 "Inmate Grievance Procedure" for the following reason(s):

_____ **Vulgar/Abusive or Threatening Language.** The language that is unacceptable has been highlighted. The grievance may be resubmitted omitting this language.

_____ **Non-Grievable.** This issue has been defined as non-grievable in accordance with DOC Policy 4.4. These procedures have their own appeal process that must be followed.    _____Disciplinary Action        _____Parole Decision
_____Classification Action

_____ **Request.** Requests are not processed through the grievance procedure. Please correspond with the appropriate office to secure the information that is requested.

_____ **Duplicate Grievance(s).** This issue has been addressed previously in Grievance # _____ _____.

_____ **Original Grievances must be submitted to the Inmate Grievance Chairperson.** Photocopies are not accepted.

_____ **Inquiry on behalf of other inmates.** Inmates cannot submit grievances for other inmates.

_____ **Expired filing period.** Grievance exceeds seven(7) days from date of occurrence.

```
0.3.2 .5
 .5 .2 8 th.
@F.2 .cne. ..s)e13nan
```

_____                    _____
Inmate Grievance Chairperson                                Date

Form#: 584 (F&B)
(Reverse Revised July '99)

F0032

## DELAWARE CORRECTIONAL CENTER
## INMATE GRIEVANCE OFFICE

**To:**     I/M  Hopkins, Shane   SH18

**From:**  Officer L.M. Merson, Inmate Grievance Chairperson

**Date:**  Monday, August 06, 2001

**Re:**     GRIEVANCE (S)

*received*
*EBurto*
*8/12/01*

### I HAVE RECEIVED YOUR GRIEVANCE (S) DATED 07/16/01, THE GRIEVANCE (S) ARE REJECTED FOR THE FOLLOWING REASON (S):

__ SECURITY ISSUE (INVOLVES THE SECURITY & STAFFING OF THE INSTITUTION ANDTHE SAFETY, HEALTH AND/OR WELFARE OF INMATES, STAFF AND THE PUBLIC)

__ CLASSIFICATION ISSUES (JOBS, TRANSFERS, PROGRAMS, ETC. IT HAS IT'S OWN APPEAL PROCESS. I.B.C.C.: MR. L. BOYLE, C.I.C.B.: MS. F. LEWIS AND I.R.C.B.: MR. H. YOUNG)

_X_ DISCIPLINARY ISSUE (M. A. B. WRITE-UP"S HAVE THEIR OWN APPEAL PROCESS. THE HEARING OFFICERS ARE LT. K. REYNOLDS, S/LT. B. WILLIAMS AND LT. SCOTT.)

__ AN INMATE DOES NOT HAVE THE POWER TO REQUEST OR DEMAND DISCIPLINARY ACTION ON STAFF. THE IGC DOES NOT HAVE THE POWER TO HOLD HEARINGS ON STAFF. IF YOU HAVE A COMPLAINT REGARDING STAFF, WRITE A LETTER TO THAT PERSONS SUPERVISOR. IN YOUR CASE THAT IS:

__ PAROLE BOARD ISSUE.

__ IT IS AN ISSUE THAT HAS ALREADY BEEN GRIEVED BY YOU OR ANOTHER INMATE (IF GRIEVED BY ANOTHER, YOU MAY REQUEST, IN WRITING, TO BE ADDED TO THE FIRST GRIEVANCE MAKING IT A GROUP ISSUE.)

__ IT IS UNACCEPTED BECAUSE IT HAS PASSED THE SEVEN (7) DAY TIME FRAME ALLOTTED TO FILE A GRIEVANCE.

__ IT IS A PHOTO COPY, CARBON COPY, WRITTEN IN PENCIL OR RED INK (SUBMIT   ORIGINAL FORMS ONLY, WRITE IN BLACK OR DARK BLUE INK ONLY.)

_X_ OTHER: You were on strip cell for disciplinary reasons.

cc: File

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


SHANE HOPKINS,
                    PLAINTIFF,

          V.

ANTHONY FUENTES, CORPORAL, C. OFFICER,
JOSEPH H. BELANGER, CAPTAIN C. OFFICER,
LARRY FETZER, LIEUTENANT, C. OFFICER,
JAMES GARDELS, C. OFFICER,
RICHARD PRATTS, C. OFFICER,
JOHN MITCHELL, MEDICAL NURSE,
JOHN DOES, 1-10.

               DEFENDANTS.

CIVIL ACTION


COMPLAINT

JURY TRIAL
DEMANDED


No:_____


SHANE HOPKINS #253918
DELAWARE C. CENTER
1181 PADDOCK Rd
SMYRNA, DE. 19977

IN PROPIA PERSONAM

F0006
PG# 74

## I.                JURISDICTION AND VENUE

1. This is a Civil Action alleging Deliberate Indifference, and Cruel and Unusual Punishment, in violation of the 8th and 14th Amendments to the United States Constitution, of Plaintiff's constitutional right, under 42 U.S.C. §1983; Disperate treatment in violation of Equal Protection of the Laws afforded under the 14th Amendment to the United States Constitution.

2. Pursuant to 42 U.S.C. §1983, this Court has subject matter Jurisdiction of Plaintiff's claims for relief for the violations of his rights, privileges or immunities secured by the United States Constitution and laws under the 8th and 14th Amendments and to be afforded Equal Protection of the Laws.

3. Pursuant to 28 U.S.C. §1331, this Court has subject matter Jurisdiction of Plaintiff's 42 U.S.C. §1983 claims because it is a Civil Action arising under the laws of the United States.

4. Venue is proper in this District Pursuant to 28 U.S.C. §1391, in that the District of Wilmington, is a Judicial District in which a substantial part if not as whole the events giving rise to the claims arised.

1

II.                PRESENT CONFINEMENT

Delaware Correctional Center
1181 Paddock Rd. / #253918
Smyrna, DE 19977

III.    Plaintiff:

Shane Hopkins

Defendants:

1.    Defendant Anthony Fuentes, is employed as a Corporal Correctional Officer, at the Delaware Correctional Center.

Defendant as a Corporal Correctional Officer, is in control and supervision of Building 17, Security Housing Unit, as the assigned building officer. Defendant is responsible of the care and treatment of the prisoners. He is being sued in his official and individual capacity.

2.    Defendant Richard Pratts, is employed as a Correctional Officer, at the Delaware Correctional Center.

Defendant as a Correctional Officer is incharge of the units general duties of the day and is responsible for the care and treatment of the prisoners. Defendant receives instructions and orders from Fuentes. He is being sued in his official and individual capacity.

3.    Defendant James Gardels, is employed as a Correctional Officer, at the Delaware Correctional Center.

2

DEFENDANT AS A CORRECTIONAL OFFICER, IS INCHARGE OF THE UNITS' GENERAL DETAILS OF THE DAY AND RECEIVES INSTRUCTIONS AND ORDERS FROM CORPORAL FUENTES. HE IS BEING SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITY.

4.     DEFENDANT JOSEPH H. BELANGER, IS EMPLOYED AS THE CAPTAIN, AT THE DELAWARE CORRECTIONAL CENTER, FOR THE SECURITY HOUSING UNIT.

DEFENDANT AS THE CAPTAIN, IS IN CONTROL AND SUPERVISION OF THE SECURITY HOUSING UNIT. DEFENDANT IS INCHARGE OF THE SPECIAL SEGREGATION UNIT DISCIPLINARY PROCEDURES AND POLICIES. HE IS BEING SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITY.

5.     DEFENDANT L. FETZER, IS EMPLOYED AS THE LIEUTENANT, AT THE DELAWARE CORRECTIONAL CENTER, FOR THE SECURITY HOUSING UNIT.

DEFENDANT AS THE LIEUTENANT, IS IN CONTROL AND SUPERVISION OF THE SECURITY HOUSING UNIT, BUILDING 18. DEFENDANT IS IN-CHARGE OF THE SPECIAL SEGREGATION UNIT, DISCIPLINARY DETEN-TION OPERATIONS OF BUILDING 18. HE IS BEING SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITY.

6.     DEFENDANT JOHN MITCHELL, IS EMPLOYED AS A MEDICAL NURSE, AT THE DELAWARE CORRECTIONAL CENTER, FOR THE MEDICAL DEPARTMENT.

DEFENDANT AS THE MEDICAL NURSE, IS IN CONTROL OF THE GENERAL DETAILS OF THE DAY FOR THE MEDICAL DEPARTMENT

3

F0009

Pr # 77

OPERATIONS AT BUILDINGS 17 AND 18. DEFENDANT IS INCHARGE OF EXAMINING AND TREATING PRISONERS OF WHOM ARE IN NEED OF MEDICAL ATTENTION. HE IS BEING SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITY.

7.    DEFENDANTS, JOHN DOES 1-10, AT ALL RELEVANT TIMES, MENTIONED HEREIN WERE EMPLOYEES OF THE DELAWARE CORRECTIONAL CENTER.

DEFENDANTS UPON BELIEF AND INFORMATION WERE ENGAGED IN THE OPERATIONS AND MANAGEMENT OF SECURITY HOUSING UNIT AND WERE INVOLVE IN OTHER ACTIVITIES RELEVANT TO THIS CASE. BEING SUED IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY.

## IV.              STATEMENT OF FACTS

8.    DEFENDANT ANTHONY FUENTES, AS THE CORPORAL OF BUILDING 17, FOR THE SECURITY HOUSING UNIT, HELD CONTROL AND SUPERVISION OF THE DAILY OPERATIONS AND MANAGEMENT OF TIERS A, B, C AND D. DEFENDANT IS RESPONSIBLE OF THE HUMANE TREATMENT OF PRISONERS UNDER HIS CARE AND OTHER RELATED MATTERS.

9.    DEFENDANT ON, JULY 16, 2001, AT APPROX. 11:30/AM ALONG WITH JAMES GARDELS ("GARDELS") AND RICHARD PRATTS ("PRATTS") DEFEN- DANTS, ESCORTED PLAINTIFF OUT OF A TIER ONTO A "STRIP CELL" LIKE ROOM. AS PLAINTIFF WAS PLACED INSIDE THE ROOM OFFICER GARDELS, PLACED THE LEG IRON AND LEFT HIM THERE. ABOUT A MINUTE LATER FUENTES, CAME INTO THE STRIP CELL AT WHICH TIME HE BROUGHT UP

4

AN INCIDENT THAT HAD TAKEN PLACE APPROX. THREE (3) WEEKS PRIOR TO THIS ENCOUNTERED. FUENTES, BEGIN BY SAYING THAT THE PLAINTIFF WAS MISBEHAVING AND THAN HE BROUGHT UP THE VERBAL DISPUTE THAT HAD TAKEN PLACE A COUPLE OF WEEKS AGO. WHERE HE HAD THREATENED HIM WITH IN PUTTING HIS AUTHORITY, AS HE STATED; "I'LL SHOW YOU, JUST KEEP TALKING."

10.    FUENTES, BEGIN TO TRASH TALK TO INSTIGATE A CONFRONTATION AND AFTER NOT FEEDING INTO IT HE BEGIN TO POINT HIS FINGER AT PLAINTIFF'S FACE. AT WHICH TIME PLAINTIFF TOLD HIM TO GET HIS (F-) FINGER OFF HIS FACE. FUENTES, THAN PUSHED HIS FINGER UPON PLAINTIFF'S NOSE, AND PLAINTIFF ATTEMPTED TO BITE HIS FINGER ON HIS ATTEMPT. FUENTES, IN RESPONSE PLACED A SCHOKE HOLD UPON HIS THROAT AND RAN HIM ONTO THE WALL HITTING THE BACK OF HIS HEAD AND CON-TINUED TO SQUEEZE UP UNTIL THE AIR WAVE GAVE UPON AND HAVING HIM RENDERED SEMI UNCONSCIENCE. AFTER RECEIVING ALERTNESS FUENTES, STOOD BEFORE HIS FACE TRASH TALKING. PLAINTIFF TRASHED TALKED BACK AND CALL HIM A COWARD AND ASKED HIM TO LOOSEN A CUFF AND SHOW THE PLAINTIFF HOW BIG AND BAD HE WAS. FUENTES, THAN PROCEEDED TO TURN THE PLAINTIFF AROUND TO UNCUFF HIM. AS FUENTES BEGIN TO RELEASE SEVERAL CUFF LINKS TO RELEASE THE CUFF, THE PLAINTIFF UPON SENSING THE RELEASE JERKED HIS HAND OUT OFF THE CUFF AND TURNED AROUND TO FACE HIM.

11.    . AS PLAINTIFF TURNED AROUND TO CONFRONT FUENTES; HE MANAGED TO STRIKE AT THE PLAINTIFF (BEFORE HE WAS FULLY FACE TO FACE WITH FUENTES) CONNECTING UPON THE NOSE AND CHEEK AREA

F0011
PG#79

CAUSING THE PLAINTIFF TO BLEED PROFUSELY, AND BLURRING HIS SIGHT AND KNOCKING OFF HIS GLASSES.

12.    AS PLAINTIFF STRUGGLED TO REGAIN BALANCE AND CON-SCIENCENESS THE PLAINTIFF MANAGED TO HOLD THE LOOSEN CUFF INTO HIS HAND. AS PLAINTIFF

F0012

PG#60

STRUGGLED WITH CONSCIENCENESS AND VISIBILITY, FUENTES, PUNCHED ABOUT THE FACE. 2 TO 3 TIMES APPROX.. TO THE BEST OF HIS RE-COLLECTION THE PLAINTIFF HEARD FUENTES CALL FOR OFFICER PRATTS, TO ASSIST HIM. PRATTS, THAN TOOK A HOLD OF THE LEG IRONS' AND PULLED THEM CAUSING THE PLAINTIFF TO FALL ONTO THE FLOOR. FUENTES, THAN MANAGED TO TURN PLAINTIFF ONTO HIS BELLY TO ATTEMPT TO RECUFF HIM. AT WHICH TIME PLAINTIFF HEARD PRATTS MUMBLED SOMETHING NEXT TO HIS FACE AND EAR AREA. THEREAFTER, PRATTS, TOOK HOLD OF PLAINTIFF'S HAIR AND SHOVED HIS FACE ONTO THE FLOOR CAUSING A CUT ONTO HIS LIP AND MOUTH AREA LOOSENING TWO (2) OF HIS TEETH.

13.    FUENTES AT WHICH TIME STRUGGLED TO HAVE PLAINTIFF RE-LEASE HIS HANDS AS, PLAINTIFF HELD THEM TOGETHER UNDERNEATH OF HIM TO PREVENT THEM FROM RECUFFING HIM. PRATTS, THAN WENT TO ASSIST FUENTES, HAVE HIS HAND LOOSEN AND BROUGHT AROUND TO THE BACK AREA. NOT BEING ABLE TO, PLAINTIFF REMEMBERS FUENTES CALL FOR OFFICER GARDELS, WHO WAS OUT THE DOOR OB-SERVING THE ENTIRE INCIDENT.

14.    GARDELS, THAN GRABBED PLAINTIFF INTO A SCHOKING HOLD UPON HIS NECK AREA HAVING THE PLAINTIFF LOOSE SEMI CONSCIENCE. AS GARDELS SCHOKED HIM AT THE SAME TIME JAMMED HIS FACE AND SHOULDER AREA ONTO THE FLOOR SEVERAL TIMES CAUSING SWELLING AND BRUISING ABOUT THE CHEEK AREA. AT WHICH TIME THEY MANAGED TO RECUFF HIM.

7

15. Plaintiff was than left on the floor as they finished. When Plaintiff was able to get enough conscience he stood up and looked around to see what was going on. Plaintiff saw several prison officials staring at him briefly and than walked off.

16. Plaintiff seeing a medical doctor nearby begin to ask them to treat him at which time the nurse, John Mitchels, looked from the outside door area and window onto Plaintiff, turned around said something to the doctor and did not come with any of the officers to look and treat his wounds. Plaintiff continued to shout at them to treat him over and over and instead they walked off without providing the medical care needed.

17. At approx. one and a half (1½) hours in that room Lieutenant, Larry Fetzer, came over to pick him up and take him over to Building 20. At which time the Plaintiff told Fetzer, to look at what Fuentes, Pratts and Gardels, had done to him. Plaintiff than asked him if he was going to provide the Plaintiff any medical treatment, that he had a headache. Fetzer, said later that at that moment he had to be taken to Building 20. Plaintiff than asked him to take photos of the face, he evaded the conversation and when Plaintiff refused to go. Fetzer than said that he'll speak with Captain, Joseph H. Belanger.

8

18.   Plaintiff than went with Fetzer, and on his way to the building one prisoner that locked in cell lower 1, of A tier that knows the Plaintiff knocked on his cell window and called him. At which time after Michael Santiago, said prisoner, saw my conditions he shouted back to the Plaintiff after Plaintiff yelled to him that the police beat him.

19.   Fetzer, proceeded to place the Plaintiff in a law library holding cage. Plaintiff stood in this cage for an approx. hour and a half (1½) and during this period Fetzer, did not brought a medical staff to look at him and treat his wounds after pleading to him for medical treatment.

20.   Thereafter, Fetzer came over to the cage to have him escorted out of it onto Building 18, Special Segregation Disciplinary Unit. Plaintiff refused to leave and told Fetzer, that he was not going anywhere until he received medical treatment and had photos taken of his face and neck area. Fetzer, than assured him that at Building 18, he would take him to see the doctor once the Plaintiff was brought to his assigned cell.

21.   Plaintiff was placed in a cell lower 4 of L tier and stripped naked and left there with nothing in the cell. The only thing in the cell that it has was a metal frame and a metal toilet. No mattress, sheets, blankets, toilet paper, soap, toothpaste was ever given to him even after his pleas to obtain them. The cell conditions were freezing and the officers that

9

Pg# 63

TOOK CARE OF THE HOUSING UNIT KEPT SAYING THAT IT WAS CAPTAIN. BELANGER'S ORDERS. THE PLAINTIFF STOOD IN THAT CELL UNDER IN-HUMANE CONDITIONS FOR FIFTEEN (15) DAYS. WHILE IN THAT CELL HE WAS PROVIDED A MATTRESS AT APPROX. 10:00 AM AND AT 5:00 AM THE MATTRESS WAS REMOVED.

22.    DURING THE FIFTEEN DAYS THE PLAINTIFF WAS NOT GIVEN ANY MEDICAL ATTENTION; AND/OR THROUGHOUT PLAINTIFF'S HEALING PROCESS.

23.    DEFENDANT FUENTES, AS THE CORPORAL ASSIGNED TO BUILDING 17, HELD COMPLETE CONTROL OF THE OPERATIONS AND CARE OF THE PRISONERS UNDER HIS CONTROL AND SUPERVISION.

24.    DEFENDANT DID WITH MALICE AND DELIBERATE ACT DID INSTIGATE A PHYSICAL ENCOUNTER TOWARDS THE PLAINTIFF IN ORDER TO JUSTIFY HIS ACTIONS OF ASSAULTING HIM.

25.    FUENTES, DID WITH A DELIBERATE ACT ATTEMPTED TO LOOSEN UP A CUFF OF PLAINTIFF'S HAND WITH THE INTEND TO ONLY HAVE AN AVENUE OF JUSTIFICATION AFTER HIS ASSAULT AGAINST THE PLAINTIFF.

26.    FUENTES, DID PUNCH PLAINTIFF SEVERAL TIMES UPON HIS FACE CAUSING BODILY INJURY.

27.    FUENTES' ACTIONS WERE OBDURATE AND WANTON. THUS, CAUSING PLAINTIFF GRIEVOUS HARM AND THE INJURIES SUSTAINED AS THE RESULT OF IT WERE MORE THAN DE MINIMES, AND CONSTITUTED DELIBERATE INDIFFERENCE AND CRUEL AND UNUSUAL PUNISHMENT. IN VIOLATION OF THE 8TH AND 14TH AMENDMENTS TO THE UNITED

10

States Constitution, of Plaintiff's constitutional rights, under 42 U.S.C. §1983; Disperate treatment in violation of Equal Protection of the laws afforded under the 14th Amendment to the United States Constitution.

28.    Defendant Pratts, as a Correctional Officer, was in-charge of the care and control of Plaintiff while assigned to perform his duties at Building 17, on the day in question.

29.    Defendant did with malice and deliberate act take Plaintiff's leg iron and Jerked pull them with the intent to make the Plaintiff fall and cause him bodily injury.

30.    Pratts, did with malice and deliberate act thereafter took hold of Plaintiff's hair and head and shoved his face onto the concrete floor causing Plaintiff's lip to get a cut serious enough to warrant setures and loosening two teeth's.

31.    Pratts' actions were obdurate and wanton, thus, causing Plaintiff grievous harm and the injuries sustained as the result of it were more than de minimes, and constituted Deliberate Indifference and Cruel and Unusual Punishment, in violation of the 8th and 14th Amendments to the United States Constitution, of Plaintiff's constitutional rights, under 42 U.S.C. §1983; Disperate treatment in violation of Equal Protection of the laws afforded under the 14th Amendment to the United States Constitution.

11

32.    Defendant Gardels, as a Correctional Officer, was in-charge of the care and control of Plaintiff while assigned to perform his duties at Building 17, on the day in question.

33.    Defendant did with malice and deliberate act take Plaintiff into a shoke hold and jammed his face and shoulder area onto the concrete floor causing the Plaintiff to pass out into a semi unconscience state and causing bruising upon the neck area.

34.    Gardels' actions were obdurate and wanton, thus, causing Plaintiff grievous harm and the injuries sustained as the result of it were more than de minimes, and constituted Deliberate Indifference and Cruel and Unusual Punishment, in violation of the 8th and 14th Amendments to the United States Constitution, of Plaintiff's constitutional rights, under 42 U.S.C. § 1983; Disperate treatment in violation of Equal Protection of the laws afforded under the 14th Amendment to the United States Constitution.

35.    Defendant Belanger, as the Captain, in charge of the Security Housing Unit, Special Segregation Disciplinary Unit, held supervision, control of the operations and management for said housing unit.

36.    Defendant did with the intent to discipline Plaintiff instituted policies and procedures that constitutes inhumane treatment and disperate treatment causing Plaintiff emotional injuries.

12

37.    Belanger, did order by way of Fetzer, to contain the Plaintiff in a "Strip Cell" (that is used for those of whom are under suicide watch) bare naked with the intent to cause emotional and physical harm, as the cell contains an air vent with freezing temperatures of air at high rate of speed blowing into the cell.

38.    Belanger's actions were obdurate and wanton, thus, causing Plaintiff grievous harm and the injuries sustained as the result of it were more than de minimes, and constituted Deliberate Indifference and Cruel and Unusual Punishment, in violation of the 8th and 14th Amendments to the United States Constitution, of Plaintiff's constitutional rights, under 42 U.S.C. § 1983; Disperate treatment in violation of Equal Protection of the laws afforded under the 14th Amendment to the United States Constitution.

39.    Defendant Fetzer as the Lieutenant, incharge of the Security Housing Unit, Special Segregation Disciplinary Unit, held supervision and control of the day to day basis operations of said unit and other units of the Security Housing Unit.

40.    Defendant did with deliberate act failed to address Plaintiff medical needs in having him attended for his wounds and related treatment.

13

F0019

PG#57

41.    Fetzer, did with malice and deliberate act denied the Plaintiff the treatment to prevent any additional witnesses to the crime and to prevent any medical reports being filed.

42.    Fetzer, did failed to take appropriate action to investigate the assault against the Plaintiff after being informed and seeing the assault wounds and bruises upon the Plaintiff and/or reported it.

43.    Fetzer, did with malice and deliberate act placed the Plaintiff inside a Strip Cell bare naked with the intent to cause emotional and physical injuries, as the cell contains an air vent with freezing temperatures of air at high rate of speed blowing into the cell.

44.    Fetzer's actions were obdurate and wanton, thus, causing Plaintiff grievous harm and the injuries sustained as the result of it were more than de minimes, and constituted Deliberate Indifference and Cruel and Unusual Punishment, in violation of the 8th and 14th Amendments to the United States Constitution, of Plaintiff's constitutional rights, under 42 U.S.C. §1983; Disperate treatment in violation of Equal Protection of the laws afforded under the 14th Amendment to the United States Constitution.

45.    Defendant Mitchell is a Medical Nurse, operating at the Security Housing Unit, medical area at buildings 17 and 18, and was in charge of the care and medical needs of Plaintiff while performing the duties on the day to day basis on the day in question.

14

46.    Defendant did failed to attend the Plaintiff's medical needs knowing that he was in need of and even after seeing the wounds and bruises upon Plaintiff's face and neck area.

47.    Mitchell did with malice and deliberate act denied the Plaintiff any medical treatment as to assist the prison officials to further conceal any reports of any type of treatment. Even after Plaintiff's continuos pleas to attend him.

48.    Mitchells actions were obdurate, thus, causing Plaintiff grievous harm and the injuries sustained as the result of it were more than de minimes, and constituted Deliberate Indifference, in violation of the 14th Amendment to the United States Constitution; of Plaintiff's constitutional right; under 42 U.S.C. §1983; Disperate treatment in violation of Equal Protection of the laws afforded under the 14th Amendment to the United States Constitution.

49.    Defendants John Does 1-10, as employees in their official capacity did perform in accordance to their status at the Delaware Correctional Center.

50.    Defendants John Does 1-10, were incharge of the operations and control of the Security Housing Unit, Special Segregation Disciplinary Unit and other Housing Units. Defendants are in-charge of the Policies, Procedures and General custodial Practices for the Disciplinary actions being introduce to prisoners for disciplinary purposes. They are being sued for their deprivatory practices of corporal and inhumane disparate treatment.

15

51.    Defendants John Does' 1-10, actions were obdurate and wanton, thus, causing Plaintiff irreparable and grievous harm and the injuries sustained as the result of it were more than de minimes, and constituted Deliberate Indifference and Cruel and Unusual Punishment; in violation of the 8th and 14th Amendments to the United States Constitution, of Plaintiff's constitutional rights, under 42 U.S.C. §1983; Disperate Treatment in violation of Equal Protection of the laws afforded under the 14th Amendment to the United States Constitution.

## V.                    RELIEF SOUGHT

Plaintiff filed two (2) grievances addressing the events declared herein and the Grievance Department, officials overseeing the grievances refused the complaint under technicality and did not addressed the problem.

## VI.    Demand Jury Trial

## VII.                    RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following:

A.    Award Compensatory damages jointly and severally against Fuentes, Pratts, Gardels, Belanger, Fetzer, Mitchels and John Does 1-10, for the amounts to be determined at trial.

B.    Award Punitive damages jointly and severally against Fuentes, Pratts, Gardels, Belanger, Fetzer, Mitchels and John Does

16

1-10) FOR THE AMOUNTS TO BE DETERMINED AT TRIAL.

C.    GRANT SUCH OTHER RELIEF IT MAY APPEAR TO THE COURT JUST

THAT THE PLAINTIFF IS ENTITLED TO.

    SIGNED THIS _____ DAY OF _____, 2001.


                                    _____
                                    SHANE          HOPKINS


    PURSUANT TO 28 USC. §1746, I DECLARE UNDER PENALTY OF PERJURY

THAT THE FOREGOING IS TRUE AND CORRECT DONE TO THE BEST OF MY

KNOWLEDGE AND ABILITY.

F0023

IN THE   SUPERIOR  COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

MELVIN PUSEY,

        plaintiff,


        V.


JOSEPH H. BELANGER, ET AL.,

        DEFENDANTS.

CIVIL ACTION

AFFIDAVIT IN
SUPPORT OF
MOTION FOR
CERTIFICATION
OF THE CLASS


No:_____

MELVIN PUSEY, BEING DULY SWORN DEPOSES AND SAYS:

1.    I AM THE PLAINTIFF IN THE ABOVE ENTITLED CASE. I MAKE THIS AFFIDAVIT IN SUPPORT OF MOTION FOR CERTIFICATION OF THE CLASS.

2.    PLAINTIFF ALLEGES IN THE COMPLAINT THAT HE WAS ASSAULTED AND INJURED AND DENIED MEDICAL ATTENTION. THAT HE WAS THERE-AFTER TAKEN AND PLACED IN A STRIP CELL WHICH CONTAINED FECES SPLATTERED THROUGHOUT THE CELL AND OTHER SUBSTANCES VISIBLE UPON THE ENTRANCE HOLDING A STENCH IN IT.

3.    THAT HE WAS STRIPPED OF HIS CLOTHES AND LEFT IN IT WITH ONLY HIS UNDERWEARS AND WITHDRAWN OF A MATTRESS, SHEETS, BLANKETS, ETC..

4.    That the plaintiff plead to be moved to another cell and that despite of his pleas he was kept in the same cell, denied of hygiene items and of all basic essentials.

5.    Plaintiff and similiar situated prisoners once placed in strip cell status and isolation for an alleged offense. The officials have denied them of a Pre-Hearing Detention review within the (72/Hours) as required by law and that throughout the stay in strip cell or isolation and the completion of (15) days in said status they were never sought for the charges which lead to their status quo.

6.    That the plaintiff and similiar situated prisoners after being charged for an alleged offense have been held without a hearing for it for months at a time beyond the (7) days requirement.

7.    Plaintiff and similiar situated prisoners are denied copies of their charges and denied a preliminary review (90%) of the times by the area Sergeant and Lieutenant and to cover their actions they simply write on the Form #121 that the prisoner refused to participate on the proceedings.

8.    That plaintiff when called to appear before the Adjustment Board for the alleged offense he informed the H/O (after being read the charge) that he never was interviewed nor brought a copy of the charge. That upon plaintiff's

2

REQUEST TO BE PROVIDED A COPY OF THE CHARGE AND TO POST-PONE THE HEARING FOR (24/HOURS) SO THAT HE CAN PREPARE HIMSELF FOR THE CHARGES'. THE H/O DENIED HIS REQUEST.

9.    IN ADDITION, THE FORMS USED TO MAINTAIN THE RECORD DOES NOT PROVIDE AN ACCURATE RECORD OF THE INFORMATION SOUGHT IN IT AS THEY ARE [OUTDATED].

10.    OFFICIALS OF DIFFERENT RANKS CARRY OUT A PROCEDURE AND METHOD THAT WHEN THEY WRITE A CHARGE ON THE FORM #122 DESIGN TO BE USED FOR THE WRITING OF A [SINGLE] OFFENSE ON IT. THE OFFICERS WRITE MULTIPLE CITATIONS OF OFFENSES ON THE FORM MANY OF WHICH ARE NOT SUPPORTED BY THE EVENTS NOTED AND WHEN THE CHARGE IS BEING ADJUDICATED ~ IS FOUND GUILTY OF ALL OF THE OFFENSES WRITTEN FOR WHICH INCLUDES THE NOT GUILTY ONES.

WHEREFORE, THE PLAINTIFF'S MOTION FOR CERTIFICATION OF THE CLASS, SHOULD BE GRANTED.

PURSUANT TO 28 USC §1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

___9/17/02___
DATE

___MELVIN PUSEY___
MELVIN          PUSEY

3

F0036

PG #94

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

Melvin Pusey,

                    plaintiff,

                v.

Joseph H. Belanger, et al.,

                    DEFENDANTS.

CIVIL ACTION

MOTION FOR
CERTIFICATION
OF THE CLASS

No: _____

Plaintiff, MELVIN PUSEY, ASKS THIS HONORABLE COURT TO CERTIFY THIS COMPLAINT AS A CLASS ACTION, FOR THE FOLLOWING REASONS:

1.    PLAINTIFF AND SIMILIAR SITUATED PRISONERS ARE BEING PLACED UNDER STRIP CELL STATUS FOR MINOR OFFENSES AND STRIPPED OF ALL OF THEIR CLOTHING IN NUMEROUS OCCASIONS AND IN OTHER LEAVING PRISONERS BARED NAKE UNDER INHUMANE CONDITIONS.

2.    PLAINTIFF AND SIMILIAR SITUATED PRISONERS HAVE BEEN PLACED IN STRIP CELL AND WITHDRAWN FROM ALL OF THEIR CLOTHING THE EXCEPTION OF THE UNDERWEARS'. PLACED UNDER INHUMANE CONDITIONS DENYING HIM AND OTHERS: MATTRESS,

F0037

PG#9

SHEETS, BLANKET TO SLEEP ON; DENIAL OF BASIC ESSENTIALS SUCH
AS COSMETICS (IN THE (8) DAYS HELD IN SAID STATUS) AND THE
CELL(S) WERE KEPT UNSANITARY WITH FECES ALL OVER THE CELL,

3.    PLAINTIFF AND SIMILIAR SITUATED PRISONERS HAVE BEEN
DENIED COPIES OF THE DISCIPLINARY CHARGES BY THE AREA
SUPERVISORS ASSIGNED TO DELIVER THE REPORT (SERGEANT OR
LIEUTENANT). THE SUPERVISORS SIMPLY WRITE ON THE FORM #121
THAT THE PRISONER REFUSED TO PARTICIPATE ON THE "PRELIMINARY
HEARING" WHICH IS THE METHOD USED TO COVER THE ACTIONS.

4.    PLAINTIFF AND SIMILIAR SITUATED PRISONERS ONCE PLACED
UNDER [STRIP CELL] AND ISOLATION FOR AN OFFENSE [ALLEGED]
THEY ARE NOT PROVIDED A PRE HEARING DETENTION STATUS
REVIEW WITHIN THE (72/HOUR) PERIOD, (THIS PRACTICE DOES NOT
EXIST AT THE SHU). IN ADDITION, THE PLAINTIFF SERVED (15)
DAYS OF [ISOLATION] AND DURING THAT PERIOD THE CHARGES WERE
NOT HEARD, (BY PASSING THE (7) DAYS PERIOD FOR REVIEW).

5.    PLAINTIFF AND SIMILIAR SITUATED PRISONERS MONTHS LATER
THEY WERE BROUGHT BEFORE THE ADJUSTMENT BOARD, FOR THE
CHARGES.

9/12/02
DATE

*MELVIN PUSEY*
MELVIN PUSEY

MELVIN PUSEY #141523
DCC/1181 PADDOCK RD
SMYRNA, DELAWARE 19977

2

IN THE  SUPERIOR  COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

MELVIN PUSEY,

                    plaintiff,

                    v.

JOSEPH H. BELANGER, ET AL.,

                    DEFENDANTS.

CIVIL ACTION

MOTION FOR
APPOINTMENT
OF COUNSEL

No:_____

PLAINTIFF, MELVIN PUSEY, PURSUANT TO §1915 (e)(1)
REQUESTS THAT THIS COURT APPOINT PRO BONO COUNSEL TO
REPRESENT HIM IN THIS CASE FOR THE FOLLOWING REASONS:

1.    PLAINTIFF IS UNABLE TO AFFORD COUNSEL.

2.    THE ISSUES INVOLVE IN THIS CASE ARE COMPLEX.

3.    THE PLAINTIFF HAS NO IDEA ABOUT THE PROCEDURES AND COURT
RELATED MATTERS AS HIS LIMITED KNOWLEDGE DOES NOT HELP
HIM TO FULLY UNDERSTAND THE LEGALITY.

___9/12/02___
      DATE

___MELVIN PUSEY___
    MELVIN      PUSEY

MELVIN PUSEY #141523
DCC/1181 PADDOCK Rd
SMYRNA, DE 19977

F0039

Pg#97

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

MELVIN PUSEY,

plaintiff,

v.

JOSEPH H. BELANGER, ET AL.,

DEFENDANTS.

CIVIL ACTION

AFFIDAVIT IN SUPPORT FOR APPOINTMENT OF PRO BONO COUNSEL

No: _____

MELVIN PUSEY, BEING DULY SWORN DEPOSES AND SAYS:

1. I AM THE PLAINTIFF IN THE ABOVE ENTITLED CASE. I MAKE THIS AFFIDAVIT IN SUPPORT OF THE MOTION FOR APPOINTMENT OF PRO BONO COUNSEL.

2. PLAINTIFF ALLEGES IN THE COMPLAINT THAT PRISON OFFICIALS SOME OF WHICH ASSAULTED HIM AND A SUPERVISOR OF THE RANK OF LIEUTENANT STOOD BYE AND ALLOWED THE ASSAULT TO GO ON.

3. PLAINTIFF ALLEGES THAT AFTER THE USE OF EXCESSIVE FORCE BY THE LIEUTENANT AND OFFICERS ALONG WITH THE ASSAULT THE PLAINTIFF WAS DENIED MEDICAL ATTENTION FOR THE INJURIES SUSTAINED AT THE REQUEST OF PLAINTIFF.

4.  Plaintiff alleges that after the assault he was placed in a strip cell which had feces and other substances smeared around the cell and stripped of his clothes with the exception of the underwear and deprived of a mattress sheets, blanket and all the basic cosmetics for a period of (8) days.

5.  Plaintiff alleges that while he was being stripped off his clothes before Belanger, McGuigan and Cunningham, he told them about the cell conditions and none of them did anything about it.

6.  Plaintiff alleges that Belanger made it a personal vendetta against him and retaliated when ever the opportunity presented itself. As alleged in the complaint Belanger canceled his visit and sanctioned his love one and when the Plaintiff confronted him about his actions he wrote the Plaintiff.

7.  Plaintiff alleges that officers did not conduct the preliminary review and was not given a copy of the charge and that the supervisors carrying the duty to process them lie to cover for their denial to confront the prisoners with the charges.

8.  Plaintiff alleges that when he appeared before the H/O and the charge was read. The Plaintiff advise the H/O about not being interviewed and provided a copy of the charge

2

AND WENT ON TO ARGUE HIS CASE. THE H/O BECAME SARCASTIC AND DISRUPTIVE. AS THE PLAINTIFF WENT ON TO MAKE HIS PLEA THE H/O TERMINATED THE HEARING AND HAD THE PLAINTIFF TAKEN BACK TO HIS CELL AND ADJUDICATED THE CHARGES WITHOUT HIM.

9.   PLAINTIFF ALLEGES THAT THERE EXISTS A CREDIBILITY ISSUE AND THE FACT THAT THERE ARE SUPERVISORY OFFICIALS MAKING THE ISSUES MORE COMPLEX. PLAINTIFF WILL NEED THE APPOINTMENT OF COUNSEL.

10.   AS SET FORTH HEREIN THESE FACTS ALONG WITH THE LEGAL MERITS ON PLAINTIFF'S CLAIMS SUPPORT THE APPOINTMENT OF PRO BONO COUNSEL TO REPRESENT HIM.

WHEREFORE, THE PLAINTIFF'S MOTION FOR APPOINTMENT OF PRO BONO COUNSEL, SHOULD BE GRANTED.

SIGNED THIS _12_ DAY OF _SEPTEMBER_, 2002.

PURSUANT TO 28 USC § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

MELVIN PUSEY
MELVIN      PUSEY

3

F0042    PG# 100

4

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

MELVIN PUSEY,

        plaintiff,

        V.

JOSEPH H. BELANGER, ET AL.,

        DEFENDANTS.

CIVIL ACTION

No: _____

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR APPOINTMENT OF PRO BONO COUNSEL

---

MELVIN PUSEY
PREPARED BY:

MELVIN PUSEY #YH523
DCC/1181 PADDOCK Rd
SMYRNA, DELAWARE 19977

IN THE  SUPERIOR  COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

Melvin Pusey,

        plaintiff,

v.

Joseph H. Belanger, et al.,

        Defendants.

CIVIL ACTION

MEMORANDUM OF LAW
FOR APPOINTMENT OF
PRO BONO COUNSEL

This is a Civil Rights Action case filed by a State prisoner asserting claims for the unconstitutional misuse of force, the denial of Due Process in subsequent disciplinary proceedings, and the denial of medical care for injuries inflicted during the misuse of force. The plaintiff seeks damages as to all claims.

The complaint alleges that the plaintiff was assaulted by several correctional officers, receiving a number of injuries. When the plaintiff asked for medical attention the officials denied him any treatment or care for his injuries. Officers deliberately confined him into a cell inhumane for habitation and stripped of all his clothes and all basic

F0044 Pg# 102

essentials for the living in said cell. The plaintiff was convicted of two disciplinary charges at a hearing. The hearing officer deliberately refused to provide copies of the disciplinary charges and to provide him a (24/hour) postponement to prepare himself for the charges and to further make things in her favor she deliberately engaged in disruptive behavior to encite a confrontation and expulse the plaintiff from the hearing. In her decision she found him ["guilty as charged"] based on the report with no further explanation. The defendant Rendina denied the plaintiff's disciplinary appeal.

## THE COURT SHOULD APPOINT COUNSEL FOR THE PLAINTIFF

In deciding whether to appoint counsel for an indigent litigant, the court should consider "the factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." Abdullah v. Gunter, 949 F.2d 1032, 1035 (8th Cir. 1991) (citation omitted), cert. denied, 112 S.Ct. 1995 (1992). In addition, courts have suggested that the most important factor is whether the case appears to have merit. Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173 (2d Cir. 1989). Each of those factors weighs in favor of appointing counsel in this case.

2

3

F0045    PG#103

1. The Plaintiff alleges that several correctional officers physically abused him, while others stood by and watched. He challenges the inhumane treatment of confinement in the strip cell, and also the medical care denial after the incident. Finally, he claims denial of procedural due process by a disciplinary hearing officer and a Director. The sheer number of claims and defendants makes this a factually complex case.

2. The Plaintiff is locked up in punitive segregation and has no ability to investigate the facts. For example, he is unable to identify, locate and interview the inmates who were housed in nearby cells and who saw some or all of the misuse of force. He is in the same situation as an inmate who has been transferred to a different institution, a factor that several courts have cited in appointing counsel. Tucker v. Randall, 948 F.2d 388, 391-92 (7th Cir. 1991); Gatson v. Coughlin, 679 F.Supp. 270, 273 (E.D. Wis 1988); Armstrong v. Snyder, 103 F.R.D. 96, 105 (E.D. Wis 1984). In addition, this case will require considerable discovery concerning the identity of witnesses, the officers' reports and statements about the incident, the history of the officers with prior records of misuse of force and the Plaintiff's medical--. See, Tucker v. Dickey, 613 F. Supp. 1124, 1133-34 (W.D. Wis 1985) (need for discovery supported appointment of counsel).

3

4

3.   The Plaintiff's account of his beating by officers is squarely in conflict with the statements of the officers. This aspect of the case will be a credibility contest between the defendants and the plaintiff (and such prisoner witnesses as can be located). The existence of these credibility issues supports the appointment of counsel. Gatson v. Coughlin, 679 F.Supp. 270, 273 (W.D.N.Y. 1988).

4.   The Plaintiff is an indigent prisoner with no legal training, a factor that supports the appointment of counsel. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). In addition, he is confined to segregation. Rayes v. Johnson, 969 F.2d 700, 703-04 (8th Cir. 1992) (citing lack of ready access to a law library as a factor supporting appointment of counsel).

5.   The large number of defendants, some of whom are supervisory officials, presents complex legal issues of determining which defendants were sufficiently personally involved in the constitutional violations to be held liable. In addition, the plaintiff asks for a jury trial which requires much legal skills than the plaintiff has or can develop. See, Abdullah v. Gunter, 949 F.2d 1032, 1036 (8th Cir. 1991) (citing jury demand as a factor supporting appointment of counsel) cert. denied, 112 S.Ct. 1995 (1992).

4

6.   The plaintiff's allegations, if proved, clearly would establish a constitutional violation. The unprovoked and injurious beating alleged in the complaint clearly states supporting facts along with the inhumane treatment of confinement to the strip cell containing feces etc., and the withdrawal of all of the basics essential all clearly states an Eight Amendment violation. See, Hudson v. McMillan, ___ US ___, 112 S.Ct. 995, 1000 (1992). The allegations of denial of medical care after the beating as well constitute cruel and unusual punishment in violation of the Eight Amendment. The unjustified denial of a copy of the charge and the postponement and conviction of the disciplinary offense and the failure to give a meaningful statement of reasons for the decision are all plain violations, including the review of the disciplinary offense in appeal are all in violations of due process. Ponte v. Real, 471 US 491, 497, 105 S.Ct. 2192 (1985); Superintendent v. Hill, 472 US 445, 457, 105 S.Ct. 2768 (1985); Dyson v. Kocik, 689 F.2d 466, 467-68 (3rd Cir. 1982). On its face, then, this is a meritorious case.

<u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant the plaintiff's Motion and appoint Pro Bono Counsel in this case.

9/17/02
DATE

MELVIN PUSEY
MELVIN      PUSEY

Melvin Pusey #141523
DCC/1181 Paddock Rd.
Smyrna, Delaware 19977

F0048  Pg # 106

# IN THE  SUPERIOR  COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

MELVIN PUSEY,

        plaintiff,

V.

JOSEPH H. BELANGER, ET AL.,

        DEFENDANTS.

CIVIL ACTION

CERTIFICATION
  OF SERVICE

No: _____

I, MELVIN PUSEY, HEREBY STATES THAT A COPY OF EACH OF THE FOLLOWING DOCUMENTS TO: SUPERIOR COURT/CLERK, 1020 N. KING ST., WILMINGTON, DE 19977; OF COMPLAINT w/ PRAECIPE AND SUMMONS; IFP APPLICATION w/STATEMENT ACCOUNT; MOTION, AFFIDAVIT AND MEMORANDUM OF LAW FOR APPOINTMENT OF COUNSEL; MOTION AND AFFIDAVIT FOR CERTIFICATION OF THE CLASS; BY WAY OF MAIL FIRST CLASS.

PURSUANT TO 28 USC §1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____9/12/02_____
DATE

_____MELVIN PUSEY_____
MELVIN    PUSEY

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

MELVIN PUSEY,

        plaintiff,

      V.

JOSEPH H. BELANGER, CAPTAIN,
GLORIA J. GREEN, CAPTAIN,
ANTHONY J. REDINA, DIRECTOR OF
SPECIAL PROGRAMS B.O.P.,
LT IVAN, LIEUTENANT,
JAMES GARDELS, CORRECTIONAL OFFICER
JOHN DOES 1-10,
        DEFENDANTS.

CIVIL ACTION

COMPLAINT

COMPLAINT / JURY TRIAL DEMANDED

MELVIN PUSEY #141523
DCC/1181 PADDOCK Rd
SMYRNA, DELAWARE 19977

IN PROPIA PERSONAM

## I.                          JURISDICTION

1.  This is a Civil Rights Action alleging Cruel and Unusual Punishment, Equal Protection and Due Process, in violation of the Eight and Fourteenth Amendments to the United States Constitution.

2.  Pursuant to Rule 3 (a) this Court has subject matter jurisdiction of Plaintiff's claims for relief and violations of his rights, privileges or immunities secured by the United States Constitution and laws under the Eight and Fourteenth Amendments and to be afforded Equal Protection of the laws.

## II.                    PLACE OF CONFINEMENT

Delaware Correctional Center, Smyrna, Delaware

## III.                       THE PARTIES

A.  PLAINTIFF:   Melvin Pusey #141,523
                 1181 Paddock Rd
                 Smyrna, Delaware  19977

B.  DEFENDANTS:

1.  Defendant Joseph H. Belanger, ("Belanger") at all relevant times was employed as the Captain, of the Security Housing Unit ("SHU") at the Delaware Correctional Center.

1

F0051 PG # 109

3

Upon information and belief, Belanger, maintains his Principle Place of Duty at said facility. Belanger's conduct towards Plaintiff while acting under color of state law was characterized as Cruel and Unusual Punishment and in a Retaliatory nature which deprived Plaintiff of his rights secured to him by the Eight and Fourteenth Amendments to the United States Constitution.

2.    Defendant Gloria J. Green, ("Green") at all relevant times was employed as the Captain/Hearing Officer, at the Delaware Correctional Center. Upon information and belief, Green, maintains her Principle Place of Duty at said facility. Green's conduct towards Plaintiff while acting under color of state law was characterized in the denial of Plaintiff's procedural due process rights secured to him by the Fourteenth Amendment to the United States Constitution.

3.    Defendant Duan, ("Duan") at all relevant times was employed as the Lieutenant, at the Maximum Housing Unit ("MHU") at the Delaware Correctional Center. Upon information and belief, Duan, maintains his Principle Place of Duty at said facility. Duan's conduct towards Plaintiff while acting under color of state law was characterized as Failure to Act, and stop those under his control and supervision from the assault and for, Excessive use of Force, which deprived the Plaintiff of his rights secured to him by the Eight and Fourteenth Amendments to the United States Constitution.

2

4

4.    Defendant James Gardels, ("Gardels") at all relevant times was employed as a Correctional Officer, at the Maximum Housing Unit, at the Delaware Correctional Center. Upon information and belief, Gardels maintains his principle place of duty at said facility. Gardels' conduct towards plaintiff while acting under color of state law was characterized as Excessive use of Force and Assault which deprived him of his rights secured to him by the Eight and Fourteenth Amendments to the United States Constitution.

5.    Defendant John Doe 1, ("Doe 1") at all relevant times was employed as a Correctional Officer, at the Maximum Housing Unit, at the Delaware Correctional Center. Upon information and belief, Doe 1, maintains his principle place of duty at said facility. Doe's 1, conduct towards plaintiff while acting under color of state law was characterized as Excessive use of Force and Assault which deprived him of his rights secured to him by the Eight and Fourteenth Amendments to the United States Constitution.

6.    Defendants John Does 2 thru 10, at all relevant times were employed as Correctional Officials, at the Delaware Correctional Center, whos exact identities and roles are subject to further investigation and discovery. Plaintiff reserves the right to identify John Does 2 thru 10, and their roles at trial. Defendants' John Does conduct towards plaintiff while acting under color state law was characterized

3

5

WITH DISREGARDS TO PLAINTIFF'S HEALTH AND SAFETY, DEPRIVING HIM OF HIS RIGHTS SECURED TO HIM BY THE EIGHT AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

7.  DEFENDANT ANTHONY J. REDINA, AT ALL RELEVANT TIMES WAS EMPLOYED AS THE DIRECTOR SPECIAL PROGRAMS, FOR THE DEPARTMENT OF CORRECTIONS, BUREA OF PRISONS. UPON INFORMATION AND BELIEF THE DIRECTOR OF SPECIAL PROGRAMS, REDINA'S CONDUCT TOWARDS PLAINTIFF WAS CHARACTERIZED AS A DENIAL AND DEPRIVATION OF DUE PROCESS OF LAW SECURED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

## IV.  STATEMENT OF CLAIM
### POINT 1
EXCESSIVE USE OF FORCE AND INHAME CONDITIONS OF CONFINEMENTS IN VIOLATION OF THE CONSTITUTIONAL RIGHTS UNDER THE EIGHT AND FOURTEENTH AMENDMENTS TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

AGAINST DEFENDANTS BELANGER, DUAN, GARDELS, JOHN DOE 1, AND JOHN DOES 2-10.

8.  ON, OCTOBER 16, 2001, WHILE HOUSING AT THE MAXIMUM HOUSING UNIT ("MHU")[*] AT APPROX. 2:00 PM THE COMMISSARY WAS BEING DELIVERED AT THE UNIT. THE PRISONERS WERE BEING LET OUT OF THEIR CELLS TO PICK UP THEIR ORDERS.

───────────

[*] - SEE FOOTNOTE ON PAGE 5

4

9.    Plaintiff's cell was opened and when he went over to corrections' officer ("c/o") Hollcomb to pick up his purchased order. The c/o informed him that he was still in sanction status.

✳    (Go to next Page 6, for additional report)

_____

1- MHU is a transition housing unit which carries two levels of Quality of Life (Levels 4 and 5). In order for a prisoner to advance on the Levels he must complete a Treatment Plan work package provided by the housing unit Counselor. Review cycles varies from 60 to 90 days period.

5

10. Plaintiff advised the c/o that he had completed his (20) days of sanction that if he looked at the sanction sheet he would see that the plaintiff was off sanction. After the plaintiff noticed that he was not getting any where he went over to speak to unit officer.

11. Plaintiff approach c/o Gardels and explained to him the issue at hand as he did c/o Hollocomb. Gardels refused to assist the plaintiff on the matter and asked him to lock in. The plaintiff than asked to see a Lieutenant ("Lt") and refused to lock in.

12. Lt Duan came over to the Unit to speak with the plaintiff. At which time the plaintiff explained the Lt the situation as mentioned above and asked the Lt to check on the sanction sheet for corroboration.

13. The Lt in responce said that he did not have to check that he was told that he was on sanction, thereby he was still on sanction. To lock in his cell.

14. Plaintiff refuted all of their actions and called them names and begin to walk towards his cell with the Lt, Gardels, Holcomb and Fetiz, escorting him to the cell. Upon reaching the cell the plaintiff turned around to ask the Lt a question. The Lt than shouted: "Lock in I am not

6

TELLING YOU AGAIN."

15.   THE PLAINTIFF THAN TURNED AROUND TO ENTER THE CELL AT WHICH TIME HE WAS ROUGHLY PUSHED INSIDE THE CELL BY THE LT. AS THE PLAINTIFF FELL FORWARD INTO THE CELL OTHER OFFICERS ATTEMPTED TO SHUT THE DOOR AND DURING THE CLOSING OF THE DOOR THE PLAINTIFF'S LEFT LEG GOT CAUGHT ON THE DOOR. THE PLAINTIFF REACTED BY REACHING FOR THE DOOR AND AS HE GRABBED THE DOOR TO GET HIS FOOT OFF FROM THE FRAME AND DOOR TRAPPING.

16.   AS THE PLAINTIFF STRUGGLED TO PULL HIS FOOT OFF THE DOOR. THE LT SPRAY MAZED THE PLAINTIFF AND GARDELS ALONG WITH THE OTHER DEFENDANTS RUSHED THE PLAINTIFF INTO THE CELL. AS THE DEFENDANTS RUSHED HIM THEY TRIPPED THE PLAINTIFF AND HE FELL ONTO THE FLOOR. WHILE ON THE FLOOR THE OFFICERS TURNED THE PLAINTIFF ONTO HIS STOMACH WITH GARDELS OVER HIS HEAD BY THE RIGHT SHOULDER AREA. GARDELS TOOK PLAINTIFF'S HEAD AND SLAMMED IT ONTO THE FLOOR SEVERAL TIMES CAUSING INJURIES TO THE MOUTH AND CHEEK-BONE. TO THE EXTEND OF NEEDING MEDICAL ATTENTION.

17.   DURING GARDELS ACTIONS AS HE HELD PLAINTIFF'S HEAD AGAINST THE FLOOR CONCRETE ANOTHER OFFICER KICKED THE PLAINTIFF AT HIS RIGHT RIBS AREA SEVERAL TIMES KNOCKING HIS BREATH OUT OF HIM. UPON THE COMPLETION OF THE BEATING THE OFFICERS SHOUTED FOR THE PLAINTIFF TO REMAIN ON THE FLOOR FACE DOWN AS THEY ALL WALKED OUT OF THE CELL.

7

18. Shortly thereafter Sgt Powell, came over to Plaintiff's cell and handcuffed him. The Sgt than escorted him to Deputy Warden, Lawrence A. McGuigan, Major, Charles Cunningham and Captain, Joseph H. Belanger.

19. As the Plaintiff was being escorted he told the Sgt that he needed to see the nurse. That he believed that he had broken ribs and needed to have his mouth and face (cheek bone) treated for the injuries. In responce the Sgt said to let them know.

20. Captain Belanger and others mentioned above took hold of him and had the Plaintiff escorted to the SHU Segregation Behavioral Unit ("SBU") at building 18.

21. The Plaintiff at which time asked Belanger to take him to see the nurse and displayed his facial injuries. The Plaintiff went on to inform the officers what took place.

22. Belanger in responce told the Plaintiff: "Later".

23. The Plaintiff was taken to Unit C and cell 1 on the lower area. In a cell that was (is) a strip cell. He was placed inside the cell and asked to strip his clothes off. As the Plaintiff removed his clothes he told Belanger to put him in another cell that the cell have feces on the door's window and about the cell and that the cell held a stench that was unbarable.

8

24.  At one point the plaintiff stopped the process of removing his clothes and once again asked to be moved to another cell.

25.  Belanger in responce threatened the plaintiff by coming into the cell and remove the clothes off from him. The plaintiff gave him all of the clothes and Belanger returned back his underwear.

26.  The plaintiff than told him infront of McGuigan and Cunningham, as the cell door was about to shut if they were going to take him to the nurse. Neither one payed any attention and walked off the Unit.

27.  During the day the plaintiff confronted several officers and asked them to take him to see the nurse and have him moved out of the cell and nothing was done.

28.  In the days to come the plaintiff asked the officers from different shifts (8 to 4 and 4 to 12) for medical attention and to be moved into another cell. In addition, he asked for clothing, to be given a mattress to sleep on, sheets, blanket, toilet paper, soap, toothpaste, toothbrush and it went on without notice in the eight days that he was kept in that stripped cell.

29.  When Lt Michael Welcome, came to the Unit the plaintiff informed him of his situation mentioned above and in responce he said that it was Belanger who had ordered his status quo

9

AND THAT HE COULD NOT DO ANYTHING.

30. DURING THE DAYS IN THE STRIP CELL THE PLAINTIFF ASKED THE TIERMAN [2] TO GET HIM THE CLEANING SUPPLIES. IN RESPONSE HE SAID THAT THE OFFICERS INSTRUCTED HIM NOT TO PASS ANYTHING TO HIM. THAT IF CAUGHT PASSING ANYTHING TO HIM THE TIERMAN WILL BE FIRED.

31. THE PLAINTIFF WAS PLACED AND KEPT IN A CELL FOR A PERIOD OF EIGHT (8) DAYS UNDER STRIP CELL STATUS WITHOUT ALL OF THE ABOVE MENTIONED ITEMS AND CONDITIONS. IN ADDITION, HE WAS DENIED TOILET PAPER TO KEEP HIM FROM USING IT TO COVER THE VENT WHICH RELEASED EXTREMELY COLD AIR AT VERY HIGH SPEED DESIGNED AS A PUNITIVE MEASURE. THE PLAINTIFF HAD TO JOG TO STAY WARM.

32. ON OR ABOUT, OCTOBER 24, 2001, EIGHT DAYS LATER THE PLAIN-TIFF WAS MOVED TO ANOTHER CELL (ISOLATION CELL). ONLY AFTER THE CELL WAS NEEDED TO PUT ANOTHER PRISONER UNDER THE SAME INHUMANE CONDITIONS.

33. LATER ON THE SAME DAY THE PLAINTIFF WAS GIVEN A JUMPER SUIT AND AT 10:00/AM A MATTRESS, SHEETS AND A BLANKET WAS BROUGHT TO HIS CELL. NO SOCKS OR FOOTWEAR WAS EVER PROVIDED AND AS THE RESULT THEREOF, THE PLAINTIFF WAS UNABLE TO PARTICIPATE WITH

---

2- THE TIERMAN IS AN INMATE THAT IS GIVEN THE JOB TO CLEAN THE UNIT

F0060  PG# 116

12

RECREATION AND HAD TO SHOWER BAREFOOTED.[3]

34. On or about, November 13, 2001, approx. (20) days later the Plaintiff was transferred out of SBU and placed in another building of the SHU under segregation status.

35. While housing in said building 19, in Unit D, the counselor Todd Kramer, advised the Plaintiff that he was being downgraded from his Quality of Life Level, from Level 5 to Level 1.[4]

36. Based on the foregoing, at all relevant times Duan, Gardels and Doe 1, while acting under color of state law engaged in conduct constituting Deliberate Indifference to the risk of harm to Plaintiff's life and safety through the use of excessive force and the assault sufficient to deprive plaintiff of the rights secured by the Eight and Fourteenth Amendments to the United States Constitution.

37. Based on the foregoing, at all relevant times Belanger and Does 2-10, while acting under color of state law engaged in conduct constituting Deliberate Indifference to the risk

---

3- The recreation and shower activities were not in effect during the eight days of strip cell status

4- Each housing unit (MHU) and (SHU) contain Quality of Life Levels of Status. SHU has Levels 1-3 and MHU has Levels 4 and
5. The higher the Level the better is the Quality of Life.

13

OF HARM TO PLAINTIFF'S HEALTH AND SAFETY THROUGH THE DENIAL OF A CLEAN AND HUMANE SHELTER AND THE DENIAL OF MEDICAL ATTENTION ALONG WITH THE WITHDRAWAL OF ALL OF PLAINTIFF'S CLOTHING AND BASIC NECESSITIES WHICH INCLUDES THE MATTRESS AND OTHER ESSENTIAL ITEMS, SUFFICIENT TO DEPRIVE PLAINTIFF OF THE RIGHTS SECURED BY THE EIGHT AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

38. AS A PROXIMATE RESULT OF THE DEFENDANTS' VIOLATIONS PLAINTIFF MELVIN PUSEY, HAS SUFFERED PAINFUL BODILY INJURIES.

39. DEFENDANTS BELANGER, DUAN, GARDELS, DOE 1 AND DOES 2-10, ARE JOINTLY AND SEVERALLY LIABLE TO PLAINTIFF FOR DAMAGES TO THE EXTENT ALLOWED BY THE LAW.

## POINT 2
### RETALIATORY ACTIONS

### AGAINST DEFENDANT BELANGER

40. ON, JANUARY 30, 2002, AT APPROX 10:20/AM THE PLAINTIFF WAS HAVING A [WINDOW VISIT]⁵[*] WITH MS MARIE JAMES ("MS JAMES") AT BUILDING 20.

41. DURING THE VISIT MS JAMES, BRIEFLY STOOD UP OFF HER SEAT TO PULL OUT OF HER'S FRONT POCKET THE ASTHMA INHALER.

---

[*] - SEE FOOTNOTE ON PAGE 13

12

14

42.  Shortly thereafter (Belanger was in his office far away from any visual contact of the visit area) Belanger came over to the visit area with Lt Fetzer, to cancel his visit.

43.  The plaintiff confronting both officers asked Belanger for what reason was the visit canceled.

44.  Belanger in a sarcastic manner said that plaintiff's visit was canceled because his visitor was previously warned not to get up from her seat (claiming that she was previously warned on her last visit). Which bares any truth to it since the plaintiff's visitor had not visit him before.

45.  The plaintiff being upset refuted Belanger's actions and told him that it was personal to have another officer instructed to watch him.

46.  Belanger and Lt Fetzer escorted him to the strip room and had plaintiff's cuffs removed from the side waist chain and recuffed him onto the back. Plaintiff complained that the cuffs were placed to tighten to loose them up. Both ignored his plea and rushed him back to his housing unit.

---

5-  The window visits are constructed as booths' paralegal to one another with a box like style with visual areas by way of a large glass between the visitor and prisoners'.

F0063  PG# 121

15

47. On or about, February 04, 2002 Ms James called the Prison visit registration area to schedule a visit for February 06, 2002. During the registration of the visit she was advised that she had been scheduled.

48. On, February 06, 2002, Ms James came over to the prison registration area to have the plaintiff called out for the window visit. After having spent an hour for the visit she was later informed that she was not allowed to visit the plaintiff. She was thereafter further advised that her visits had been suspended for a (90) days period.

49. Later on this same day the officials informed the plaintiff that his visit had been suspended. The plaintiff than grieved the cancelation of the visits and for their failure to advise Ms James that her visits had been suspended.

50. The Grievance Department logged plaintiff's grievance on, February 11, 2002 and in their response the official said: "[A letter was sent]. Once the mail leaves DCC its no longer a DCC issue, its a post office issue."

51. The fact of the matter that Belanger in retaliation did infact instructed his officers to take such an action to have plaintiff's visit canceled than suspended. And to cover their actions they sent a letter after the fact as showned on the letter stamped date.

14

F0064  PG# 122

52. Based on the foregoing, at all relevant times Belanger while acting under color of state law engaged in conduct constituting retaliatory actions with the intent to cause emotional harm, sufficient to deprive the plaintiff of the rights secured by the Fourteenth Amendment to the United States Constitution.

53. As a proximate result of the defendant's violations the plaintiff, Melvin Rusey has suffered emotional injuries.

54. Defendant, Belanger, is jointly and severally liable to plaintiff for damages with costs and attorneys fees and for punitive damages to the extent allowed by the law.

### POINT 3
### DENIAL OF PROCEDURAL DUE PROCESS
### Against Defendant Green

55. On, October 16, 2001, the plaintiff was charged with two disciplinary offenses (Disorderly or Threatening Behavior and Failure to Obey an Order) and placed under strip cell status [Pre Hearing Detention].

56. The plaintiff was not given the [Preliminary] interview and was not brought a copy of the charge.

57. The plaintiff completed eight days under strip cell status and a total of (20) days of isolation without any type of hearing by the Adjustment Board. The plaintiff was

15

17

TRANSFERRED OUT OF ISOLATION THEREAFTER TO A SEGREGA-
TION UNIT.

58. On, January 30, 2002, THE PLAINTIFF WAS WRITTEN
ANOTHER DISCIPLINARY OFFENSES (DISORDERLY OR
THREATENING BEHAVIOR AND, FAILURE TO OBEY AN ORDER).

59. THE PLAINTIFF WAS NEITHER GIVEN A [PRELIMINARY
HEARING] INTERVIEW OR BROUGHT A COPY OF THE CHARGE.

60. On, MARCH 21, 2002, THE ADJUSTMENT BOARD CONVENED
TO HEAR THE CHARGES FOR, OCTOBER 16, 2001, AND
JANUARY 30, 2002.

61. THE HEARING OFFICER ("H/O") CAPTAIN, GLORIA J. GREEN,
WAS THE PRESIDING OFFICER OVER THE HEARINGS.

62. THE H/O BEGIN THE HEARING BY READING THE CHARGE AND
THEREAFTER ASKED THE PLAINTIFF FOR HIS STATEMENT. THE
PLAINTIFF INFORMED THE H/O THAT HE DID NOT EVEN KNOW THAT
THE CHARGE READ EVEN EXISTED. THAT NO ONE EVER SERVED
HIM THE CHARGE OF, JANUARY 30, 2002.

63. THE H/O IN RESPONCE NOTED THAT THE FORM #121 STATED
OTHER WISE. THAT THE PLAINTIFF HAD BEEN INTERVIEWED AND HAD
REFUSED TO COOPERATE AS NOTED BY BELANGER ON THE FORM.

64. THE PLAINTIFF IN RESPONCE TOLD THE H/O THAT BELANGER WAS
LIEING THAT HE NEVER CAME TO BRING HIM THE CHARGE.

16

65. The H/O became upset after the plaintiff having said that. Words were exchange and as the plaintiff made his remarks about his legal rights the H/O responded by threatening him of being removed from the hearing.

66. The plaintiff asked to have the hearing postpone and to give him a copy of the charge, so that he can prepare for the hearing thereafter.

67. The H/O in response said that she had enough and walked out of the conference room and returned with two officers to have the plaintiff taken back to his cell. At which time the H/O terminated the hearing.

68. The H/O went on to adjudicate the charge finding the plaintiff guilty on both of the charges. On the October 16, 2001, the H/O found him guilty and noted on the form #121[6] section 8: "Based on 122[7] and 404[8] this H/O finds I'm guilty as charged" I/m[9]

69. On the January 30, 2002, charge the H/O found him

---

6- Form #121 is the form known as the "DCC Record of Disciplinary Hearing" where the rationale is recorded.

7- Form #122 is the form used to put the offense committed.

8- Form #404 is the form used to write the incident with more details of the account.

9- I/M stands for inmate

17

F0067 PG #125

19

GUILTY AND NOTED ON THE FORM #121 SECTION 8: "BASED ON 122 REPORT WHICH CLEARLY SUPPORTS OFFENSES WRITTEN-- THIS H/O FINDS I/M GUILTY AS CHARGED."

70. THE H/O SANCTIONED THE PLAINTIFF (15) DAYS ISOLATION FOR BOTH OF THE DISCIPLINARY CHARGES FOR A TOTAL OF (30) DAYS.

71. BASED ON THE FOREGOING: AT ALL RELEVANT TIMES GREEN WHILE ACTING UNDER COLOR OF STATE LAW ENGAGED IN CONDUCT CONSTITUTING DENIAL OF PROCEDURAL DUE PROCESS, SUFFICIENT TO DEPRIVE THE PLAINTIFF OF THE RIGHTS SECURED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

72. AS A PROXIMATE RESULT OF THE DEFENDANT'S VIOLATIONS THE PLAINTIFF, MELVIN PUSEY, HAS SUFFERED INJURIES.

73. DEFENDANT GREEN, IS JOINTLY AND SEVERALLY LIABLE TO PLAINTIFF FOR DAMAGES WITH COSTS AND ATTORNEYS' FEES AND FOR PUNITIVE DAMAGES TO THE EXTENT ALLOWED BY THE LAW.

## POINT 4
### DENIAL OF PROCEDURAL DUE PROCESS

## AGAINST DEFENDANT RENDINA

74. ON OR ABOUT, MARCH 22, 2002, THE PLAINTIFF FILED AN APPEAL TO DEFENDANT RENDINA. ASKING HIM TO REVIEW GREEN'S ACTIONS

18

20

AND SANCTIONS IMPOSED FOR TWO DISCIPLINARY REPORTS BEING ADJUDICATED. WHERE THE PLAINTIFF CLAIMED PROCEDURAL DUE PROCESS VIOLATIONS. IN ADDITION, ASKED RENDINA TO INVESTIGATE THE CURRENT PRACTICE BY THE PRISON OFFICIALS THAT HAS BEEN USED IN HIS CASE ALLEGEDLY TO HAVE FAIL TO CONDUCT THE PRELIMINARY HEARING REVIEW AND THAN TO HAVE HAD REPORTED ON THE FORM #121 THAT THE PLAINTIFF [ HAD REFUSED TO SIGN THE FORM AND COOPERATE WITH THE PROCEEDINGS ]. IN WHICH WAS A FALSE ACCOUNT OF EVENTS LEADING THE MATTER IN QUESTION.

75.   RENDINA AS THE REVIEWING OFFICER PRESIDING OVER THE APPEAL FOR THE BUREA OF PRISON, FAILED TO CONSIDER AND INVESTIGATE THE ALLEGATIONS PRESENTED ON APPEAL. WHICH INCLUDED THE ACTIONS CARRIED OUT BY THE HEARING OFFICER GREEN THAT WERE DONE DELIBERATELY AND MALICIOUS TO JUSTIFY HER [EXPULSION] OF PLAINTIFF FROM THE HEARING.

76.   AT ALL RELEVANT TIMES, RENDINA WHILE ACTING UNDER COLOR OF STATE LAW CONSCIOUSLY DISREGARDED THE CLAIMS WHICH GAVE RISE TO THE PROCEDURAL DUE PROCESS SAFEGUARDS VIOLATIONS, SUFFICIENT TO DEPRIVE THE PLAINTIFF OF THE RIGHTS SECURED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

77.   AS A PROXIMATE RESULT OF THE DEFENDANT'S VIOLATIONS THE PLAINTIFF, MELVIN PUSEY, HAS SUFFERED INJURIES.

F0069   PG#127

78. DEFENDANT RENDINA, IS JOINTLY AND SEVERALLY LIABLE TO PLAINTIFF FOR DAMAGES WITH COSTS AND ATTORNEYS' FEES AND FOR PUNITIVE DAMAGES, TO THE EXTENT ALLOWED BY THE LAW.

## V.                    RELIEF

WHEREFORE, PLAINTIFF PRAYS FOR JUDGMENT:

(a)    ON THE FIRST COUNT AGAINST DEFENDANT BELANGER, DUAN, GARDELS, DOE 1 AND DOES 2-10, JOINTLY AND SEVERALLY, FOR COMPENSATORY AND PUNITIVE DAMAGES IN AMOUNTS TO BE DETERMINED AT TRIAL; AND

(b)    ON THE SECOND COUNT AGAINST BELANGER, JOINTLY AND SEVERALLY, FOR COMPENSATORY AND PUNITIVE DAMAGES IN AMOUNTS TO BE DETERMINED AT TRIAL; AND

(c)    ON THE THIRD COUNT AGAINST GREEN, JOINTLY AND SEVERALLY, FOR COMPENSATORY AND PUNITIVE DAMAGES IN AMOUNTS TO BE DETERMINED AT TRIAL; AND

(d)    ON THE FOURTH COUNT AGAINST RENDINA, JOINTLY AND SEVERALLY, FOR COMPENSATORY AND PUNITIVE DAMAGES IN AMOUNTS TO BE DETERMINED AT TRIAL.

(e)    GRANT SUCH OTHER RELIEF, AS MAY BE JUST AND PROPER THAT THE PLAINTIFF IS ENTITLED TO.

20

22

VI.         PURSUANT TO SUPER. CT. R.C.P. 38 JURY TRIAL

PLAINTIFF HEREBY DEMANDS A TRIAL BY A JURY OF ALL OF
THE ISSUES SO TRIABLE.


SIGNED THIS 17th DAY OF SEPTEMBER , 2002.

PURSUANT TO 28 USC § 1746, I DECLARE UNDER PENALTY
OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


MELVIN PUSEY
MELVIN         PUSEY


21

F0071   PG# 129

23

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

MELVIN PUSEY,

        plaintiff,

        v.

JOSEPH H. BELANGER, ET AL.,

        DEFENDANTS.

CIVIL ACTION

No: _____

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR APPOINTMENT OF PRO BONO COUNSEL

MELVIN PUSEY
PREPARED BY:

MELVIN PUSEY #145523
DCC /1181 PADDOCK Rd
SMYRNA, DELAWARE 19977

F0072  PG # 130

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

MELVIN PUSEY,

plaintiff,

v.

JOSEPH H. BELANGER, ET AL.

DEFENDANTS.

CIVIL ACTION

MEMORANDUM OF LAW
FOR APPOINTMENT OF
PRO BONO COUNSEL

THIS IS A CIVIL RIGHTS ACTION CASE FILED BY A STATE PRISONER ASSERTING CLAIMS FOR THE UNCONSTITUTIONAL MISUSE OF FORCE, THE DENIAL OF DUE PROCESS IN SUBSEQUENT DISCIPLINARY PROCEEDINGS, AND THE DENIAL OF MEDICAL CARE FOR INJURIES INFLICTED DURING THE MISUSE OF FORCE. THE PLAINTIFF SEEKS DAMAGES AS TO ALL CLAIMS.

THE COMPLAINT ALLEGES THAT THE PLAINTIFF WAS ASSAULTED BY SEVERAL CORRECTIONAL OFFICERS, RECEIVING A NUMBER OF INJURIES. WHEN THE PLAINTIFF ASKED FOR MEDICAL ATTENTION THE OFFICIALS DENIED HIM ANY TREATMENT OR CARE FOR HIS INJURIES. OFFICERS DELIBERATELY CONFINED HIM INTO A CELL INHUMANE FOR HABITATION AND STRIPPED OF ALL HIS CLOTHES AND ALL BASIC

2

ESSENTIALS FOR THE LIVING IN SAID CELL. THE PLAINTIFF WAS CONVICTED OF TWO DISCIPLINARY CHARGES AT A HEARING. THE HEARING OFFICER DELIBERATELY REFUSED TO PROVIDE COPIES OF THE DISCIPLINARY CHARGES AND TO PROVIDE HIM A (24/HOUR) POSTPONEMENT TO PREPARE HIMSELF FOR THE CHARGES AND TO FURTHER MAKE THINGS IN HER FAVOR SHE DELIBERATELY ENGAGED IN DISRUPTIVE BEHAVIOR TO ENCITE A CONFRONTATION AND EXPULSE THE PLAINTIFF FROM THE HEARING. IN HER DECISION SHE FOUND HIM ["GUILTY AS CHARGED"] BASED ON THE REPORT WITH NO FURTHER EXPLANATION. THE DEFENDANT RENDINA DENIED THE PLAINTIFF'S DISCIPLINARY APPEAL.


## THE COURT SHOULD APPOINT COUNSEL FOR THE PLAINTIFF

IN DECIDING WHETHER TO APPOINT COUNSEL FOR AN INDIGENT LITIGANT, THE COURT SHOULD CONSIDER "THE FACTUAL COMPLEXITY OF THE CASE, THE ABILITY OF THE INDIGENT TO INVESTIGATE THE FACTS, THE EXISTENCE OF CONFLICTING TESTIMONY, THE ABILITY OF THE INDIGENT TO PRESENT HIS CLAIM AND THE COMPLEXITY OF THE LEGAL ISSUES." ABDULLAH V. GUNTER, 949 F.2d 1032, 1035 (8TH CIR. 1991) (CITATION OMITTED), CERT. DENIED, 112 S.CT. 1995 (1992). IN ADDITION, COURTS HAVE SUGGESTED THAT THE MOST IMPORTANT FACTOR IS WHETHER THE CASE APPEARS TO HAVE MERIT. COOPER V. A. SARGENTI CO., INC., 877 F.2d 170, 173 (2D CIR. 1989). EACH OF THOSE FACTORS WEIGHS IN FAVOR OF APPOINTING COUNSEL IN THIS CASE.

F0074  PG# 132

1.    The plaintiff alleges that several correctional officers physically abused him, while others stood by and watched. He challenges the inhumane treatment of confinement in the strip cell, and also the medical care denial after the incident. Finally, he claims denial of procedural due process by a disciplinary hearing officer and a Director. The sheer number of claims and defendants makes this a factually complex case.

2.    The plaintiff is locked up in punitive segregation and has no ability to investigate the facts. For example, he is unable to identify, locate and interview the inmates who were housed in nearby cells and who saw some or all of the misuse of force. He is in the same situation as an inmate who has been transferred to a different institution, a factor that several courts have cited in appointing counsel. Tucker v. Randall, 948 F.2d 388, 391-92 (7th Cir. 1991); Gatson v. Coughlin, 679 F.Supp. 270, 273 (E.D. Wis 1988); Armstrong v. Snyder, 103 F.R.D. 96, 105 (E.D. Wis 1984). In addition, this case will require considerable discovery concerning the identity of witnesses, the officers' reports and statements about the incident, the history of the officers with prior records of misuse of force and the plaintiff's medical--. See, Tucker v. Dickey, 613 F. Supp. 1124, 1133-34 (W.D. Wis 1985) (need for discovery supported appointment of counsel).

3

4

3.   THE PLAINTIFF'S ACCOUNT OF HIS BEATING BY OFFICERS IS SQUARELY IN CONFLICT WITH THE STATEMENTS OF THE OFFICERS. THIS ASPECT OF THE CASE WILL BE A CREDIBILITY CONTEST BETWEEN THE DEFENDANTS AND THE PLAINTIFF (AND SUCH PRISONER WITNESSES AS CAN BE LOCATED). THE EXISTENCE OF THESE CREDIBILITY ISSUES SUPPORTS THE APPOINTMENT OF COUNSEL. GATSON V. COUGHLIN, 679 F.SUPP. 270, 273 (W.D.N.Y. 1988).

4.   THE PLAINTIFF IS AN INDIGENT PRISONER WITH NO LEGAL TRAINING, A FACTOR THAT SUPPORTS THE APPOINTMENT OF COUNSEL. WHISENANT V. YUAM, 739 F.2d 160, 163 (4TH CIR. 1984). IN ADDITION, HE IS CONFINED TO SEGREGATION. RAYES V. JOHNSON, 969 F.2d 700, 703-04 (8TH CIR. 1992) (CITING LACK OF READY ACCESS TO A LAW LIBRARY AS A FACTOR SUPPORTING APPOINTMENT OF COUNSEL).

5.   THE LARGE NUMBER OF DEFENDANTS, SOME OF WHOM ARE SUPERVISORY OFFICIALS, PRESENTS COMPLEX LEGAL ISSUES OF DETERMINING WHICH DEFENDANTS WERE SUFFICIENTLY PERSONALLY INVOLVED IN THE CONSTITUTIONAL VIOLATIONS TO BE HELD LIABLE. IN ADDITION, THE PLAINTIFF ASKS FOR A JURY TRIAL WHICH REQUIRES MUCH LEGAL SKILLS THAN THE PLAINTIFF HAS OR CAN DEVELOP. SEE ABDULLAH V. GUNTER, 949 F.2d 1032, 1036 (8TH CIR. 1991) (CITING JURY DEMAND AS A FACTOR SUPPORTING APPOINTMENT OF COUNSEL) CERT. DENIED, 112 S.CT. 1995 (1992).

4

6.   The Plaintiff's allegations, if proved, clearly would establish a constitutional violation. The unprovoked and injurious beating alleged in the complaint clearly states supporting facts along with the inhumane treatment of confinement to the strip cell containing feces etc., and the withdrawal of all of the basics essential all clearly states an Eight Amendment violation. See, Hudson v. McMillan, ___ US ___, 112 S.Ct. 995, 1000 (1992). The allegations of denial of medical care after the beating as well constitute cruel and unusual punishment in violation of the Eight Amendment. The unjustified denial of a copy of the charge and the postponement and conviction of the disciplinary offense and the failure to give a meaningful statement of reasons for the decision are all plain violations, including the review of the disciplinary offense in appeal are all in violations of due process. Ponte v. Real, 471 US 491, 497, 105 S.Ct. 2192 (1985); Superintendent v. Hill, 472 US 445, 457, 105 S.Ct. 2768 (1985); Dyson v. Kocik, 689 F.2d 466, 467-68 (3rd Cir. 1982). On its face, then, this is a meritorious case.

<u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant the Plaintiff's Motion and appoint Pro Bono Counsel in this case.

9/17/02
DATE

MELVIN PUSEY
MELVIN     PUSEY

Melvin Pusey #141523
DCC /1181 Paddock Rd.
Smyrna, Delaware 19977

5

F0077 PG# 135

Lawrence Callanan Jr. Inmate # 143430 Have Always been in Medium
Security Population Even in E-Bldg.
11/1/2001

I was arrested in 1987 Charged with a Robbery and weapons charges 1½ years after
the crime, I was cleared by Attorney General Jane Braly due to No Evidence
no weapons to Support Weapons Charges, Nothing but Statements these other people
got together to falsify on the to clear another guy who was originally
Charged, his family his Mother fabricated Statements and she gave 5 different
Statements to police all I got indicted on No weapons Robbery and my attorney
failed to file Pretrial Motions to Suppress the Confessions of A Codefendant
and failed to file Motions to Suppress the Conflicting Statement as Each of
the State's witnesses all gave two to 3 different Accounts of their Statements,
to all Confirm their Statement against Me, and Violated, 11 Del C.3507(A)
Due to this I was sent to Virginia Greenville Cor. Center and was seeking
interstate Compact due to How I was Set up in this State, prior to getting
this granted I was Returned to Delaware and Resuming being here this Had
Problems, with other inmates trying to set Me up on inassociating/gang Charges
and Staff Members as Retaliation for my filing a Petition for writ of
Habeas Corpus 2254 (State) attacking My illegal detention, and for no other
reason but Retaliation I was Moved from Medium Security General
Population without Any "Classification" hearing to "SHU" Super Max which is
a Segregation Unit. I was Moved here Dec. 11th, 2000, this whole Classification
I've grieved it to no Avail or Responses. in Aprox Jan 10th I was approached
by this Counselor Jack Stephenson told him I was Classified by the IBCC
Stephenson to go to Sossex Cor. Center, and I went to Know "why" I'm in SHU
and who put Me Here and He said your life deal with it and Handled Me
Some Paper telling Me I'm on Some Quality of life level 1 and I Cont
go to Comisary or get Hygene Products or Nothing that I got to Complete these
life level Programs to Earn back Privileges already granted Me
and I always Had Comy in Here, I was in Bldg # 17 on B-tier lower 1
when I was Put in a that Cell with the Shower Water Slowly running in
this Cell, aprox in Febuary aprox the 14th I held my food Tray again Requesting
to See Some one about my improper Segregation I Requested to See
Deputy Warden Larry Megurgor, instead I was Approached by 2 Clos Jouenlez
and another John Doe officer and Cuffed behind my Back and Shackled by my
legs and took into an interview Room and Lt. Lieutenant Darren Stevenson
Comes in this Room Sup what the Hells your Problem. I said I was
found in this State, my legal Documents are got in the Possession of a
lawyer who don't Respond to my letters I'm being deprived of my Equal Privilages
and I want Classified Here I want to Speak to Deputy Warden Larry Megurgor
at which time He pushed Me Backwards and I was Knocked down Hitting my
Head on the floor. I filed an initial Complaint under 1983 Civil Complaint
against Warden Snyder, Leo Boyle Head of Classification, Ron Hosteman freelner Adm.
Counselors Jack Stephenson, and Jennifer Wanitch for Violatng My Due Process
and Having Me illegally and improperly Segregated in Super Max when I Have No
Assaults on Staff or inmates to Justify big in Super Max I
Shit out a Pen to towards the Lawsuit and the Court Never got it. and
my Complaint was dismissed with out Prejudice. aprox between the
Dates of Jan of 2001 to April 2001 I did these life level Programs for level 1
2 times and Aprox April 25th I was Approached by Counselor and He
Todd Kramer who is a former C/o turned Counselor and He

F0024

Pg # 136

tells Me elim on level 9 I'll be reviewed in since
Being treated having been people in a week, Months a Month why Single, He out
he says thats How it is, So we exchanged words, Next they elim took to
an office with the Captain Joe Ballyer and Lt. Hewrin and Ballyer and
Counselor Kramer tells the Capt. Ballyer I Cussed him out and Said elim
gonna Sue the Dept. Capt Ballyer Calls Me a faggot and Says I get
a Bodin tier to Pod you on and How Me took to Bldg #18 on the
C-tier, I was pod in this Cell lower 3 with Nothing but a Mattress
and My undershorts from May 7th all the way to June 15th, I Requested
Numerous times to See Dept. Warden Larry Meguyen with No Reply I
informed them Disciplinary action is only implicated for 15 days that elim to
Be Moved at that Step Status is uncert. and 8th Amend Violation
of Cruel unusual Punshment, Major Charles Cunningham Came aprox my 8th or
9th and I told him my situation He Says youre in here tied between
and we ain't going to let you go No where, So I under all this Mental tot
Emotional Abuse and Stress Shut off the water Sprinkler in the Cell,
Capt Ballyer Had Me Stand Naked for 5 days in the wet Cell with
No Clothes on Blankets Cold Air Blowing from the 14th of May to
the 19th I got Anemia and Medical Had to give Me a Shot of
Penacilin, I Refused and asked for Pillo but was denyed so I took
the shot. I am in C-Lower-6 Presently and I Have been on this
tier Since April 25th I am being told I Cannot Move til I Complete
these Program by Counselor Junk Stephenson and this Mental Health
Worker Jim Simms they took Me in an office with Captain Ballyer and
Lt. Ben feiger tells Me I ain't Never leaving the 5th and Never going Home
and will Not Pod Me in a cell with a T.V. to even do my
Program. elim being denyed Access to the Phone to Call my family on make
legal Calls, being denyed my Conseg/and Hygene Products when I got
May to Purchase my Conseg and elim being denyed Care of my
Habeas Corpus due been like this since Dec 11th and More worse
Conditions since April 25th on this C-tier in Bldg #18. I'd No
T.V. Radio Nothing but trying to get a lawyer to file my 1983 and get
an injunction to Have Me transfered from this institution
and get Me a Hearing on my writ of Habeas Corpus. I'm asked to
Be Moved to Gen. Population on Protective Costody and elim being denyed
Help and in Here Solely on Rumors and false Statements. elim asking you
to take My Case and if so my fathers # is 736-1374 Larry Callgood
and he will give you a Retainer, I got three People who did
this and the Prothonotary office is all Refusing Me the
Statments and transcripts to Show I was illegaly incarcerd
and I seriously need Help, they are Ral Realty
Me, other inmates on this tier know the Abuses Capt. Ballyer
and Dept. Warden Meguyen and these Sabon divides are

F0025

PG#137

Clergy to God over Here all Depends totter twelve to corrupt the Situation. Mr. Marvel I need a lawyer to get all the Documents and transcripts Back in my Core to Prove what they did to me, and help me on my Habeus Corpus and on my 1983 and get me transfued from this Prison Permenitly On Move Back to Gen. Populaton from this SHU. I will go to cout thjis denying me all din tells you I get lied on I Need Serious legal Help imedialy!

your Reply is Appreciated,

Also Had Some one sending out letters in my Name I didnt write too to Cout Ect, false Confessions Ect.

Mr. Marvel my father will Pay you Men get Me time Served on My Conviction and Move Me to PA Pennsylvania where il got family and of state and my father will Pay you. Also get Cases to Support my situation, thak you il Hope you will talk my Core and Call to My father Cause His tryn to get me a lawyer.

Sincerly
James Culljple Jr.
#193950
SHU Bldg #18
C-L-6

8-2-01

They (as in the C/O's) and captain Belanger duct tape me my whole face they sometimes refuse to give me my meals I'm fear of my life by the hands of correctional officer the beat me up the handcuff me for my rec everyti, I come out for recreation they also hog tied me to an cage on 4-26-01

Louis D. Dickerson

Louis Darnell Dickerson

# aclu delaware

Mr. Shane Hopkins
SBI# 00253918
Delaware Correctional Center
P.O. Box 500
Smyrna, DE 19977

Dear Mr. Hopkins,

We very much appreciate your sending us the information you did regarding your treatment at D.C.C.    We also appreciate the information you provided from Mr. Collingwood and Mr. Dickerson. We will see to it that all the information is included in our investigation.

At the present time while working with prison officials we are also encouraging an interested reporter to investigate the conditions in Delaware prisons. Unfortunately your recent letter to us did not provide us permission to release your name and SBI number to the reporter in hopes you would be contacted to provide information. If this was an oversight on your part simply provide us written authorization otherwise we will not release your name to the reporter or anyone else. Even if you choose not to have your name given to the reporter we appreciate the information you provided and will make use of it in our ongoing attempt to improve conditions within the prison system.

Again, we thank you for assisting us in our efforts to improve the conditions at D.C.C. Thank you for considering our request and we look forward to receiving your permission.

Sincerely,

Diane Winters
Intake Representative

PG # 140

ATTACHMENTS
SECTION "J"

MEMO

TO: I/M Shane Hopkins #253918

FROM: Brian Engrem, SHU Law Library Paralegal

DATE: March 15, 2006

RE: Marshal Forms

Marshal forms are given out to inmates only upon the court granting an order for such action to take place. The reason I am asking for a copy of the court order is so I have some reference as to why I gave you the forms. The court order will be sent back to you. In addition, no marshal forms are given out unless there is an order as evidence to show the court requested the forms. You can read this in the instructions for filing a civil complaint in the U.S. District Court.

Cc: File

Pg # 141

| Inmate Name | SBI # | Date In | Date Out | Request Type | Staff |
|---|---|---|---|---|---|
| Shane Hopkins | 253918 | 12/15/2005 | 12/15/2005 | Response (See File) | B.E. |
| Shane Hopkins | 253918 | 12/19/2005 | 12/20/2005 | SB159 140th GA | B.E. |
| Shane Hopkins | 253918 | 12/19/2005 | 12/20/2005 | Photocopies 144pgs. | B.E. |
| Shane Hopkins | 253918 | 12/28/2005 | 1/5/2006 | Photocopies 13pgs | B.E. |
| Shane Hopkins | 253918 | 12/28/2005 | 1/5/2006 | Photocopies (20pgs)(1)2254Form | B.E. |
| Shane Hopkins | 253918 | 12/28/2005 | 1/5/2006 | (1)WaiverForm;Request for Notary | B.E. |
| Shane Hopkins | 253918 | 1/10/2006 | 1/12/2006 | Photocopies 10pgs; 1ea.2254,IFP,StoMoReq,F | B.E. |
| Shane Hopkins | 253918 | 1/10/2006 | 1/12/2006 | 1ea. CIS, 1983,IFP Forms; USCA 42 s.1983 | B.E. |
| Shane Hopkins | 253918 | 1/10/2006 | 1/12/2006 | USCA 28 s.636,1915; FRCP 73 & Sheps. | B.E. |
| Shane Hopkins | 253918 | 1/13/2006 | 1/13/2006 | Photocopies 9pgs; 15b Mot. | B.E. |
| Shane Hopkins | 253918 | 1/17/2006 | 1/18/2006 | Photocopies 12pgs:(1)ea.SuperCtCvPkt,IFP | B.E. |
| Shane Hopkins | 253918 | 1/17/2006 | 1/18/2006 | StxMoReqForm | B.E. |
| Shane Hopkins | 253918 | 1/26/2006 | 1/27/2006 | Photocopies 67pgs; ShepUSCA18s636,1915 | B.E. |
| Shane Hopkins | 253918 | 1/31/2006 | 2/2/2006 | Request for Notary; West FedFormsAppt,Couns | B.E. |
| Shane Hopkins | 253918 | 1/31/2006 | 2/2/2006 | US Dist Ct Appt. Counsel Form | B.E. |
| Shane Hopkins | 253918 | 2/13/2006 | 2/14/2006 | 3FedFormsSec.3051,3053,40,3052,40,3080-81 | B.E. |
| Shane Hopkins | 253918 | 2/13/2006 | 2/14/2006 | 3FedFormsSec.3083-86; Ct Case (1) 4 pgs. | B.E. |
| Shane Hopkins | 253918 | 2/13/2006 | 2/14/2006 | Photocopies 24 pgs. | B.E. |
| Shane Hopkins | 253918 | 3/6/2006 | 3/7/2006 | Six Mo Req Forms; DE S Ct 15b Mot. | B.E. |
| Shane Hopkins | 253918 | 3/6/2006 | 3/10/2006 | Return CC Penal Discipline | B.E. |
| Shane Hopkins | 253918 | 3/6/2006 | 3/6/2006 | CC Penal Discipline return by 3/10/06 | B.E. |
| Shane Hopkins | 253918 | 3/14/2006 | 3/16/2006 | Ct. Case (1) 17 pgs; KeyIndex-Const.&Cr.Law | B.E. |
| Shane Hopkins | 253918 | 3/14/2006 | 3/16/2006 | Response (See File) | B.E. |
| Shane Hopkins | 253918 | 3/14/2006 | 3/14/2006 | Return Ct. Cases (2) | B.E. |

PG # 142



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
DELAWARE CORRECTIONAL CENTER
Legal Services Administrator
Smyrna Landing Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6687

## Law Library Access Inmate Shane Hopkins #00253918

The following is a breakdown of legal activities for Inmate **Shane Hopkins #00253918**
for the time period of May 1, 2006 – present:

Requests for Services MHU Law Library = 3

| Date Request Rec'd | Item Requested | Date Items Mailed |
|---|---|---|
| May 2, 2006 | Penal Code of Conduct, Court Forms, PSHLM pgs. 85-128 | 5/2/06 |
| May 24, 2006 | Cases (+5), PSHLM pgs. 367-396 | 5/24/06 |
| June 13, 2006 | Photocopies | 6/13/06 |

Number of Photocopy Requests = 1
Number of pages copied = 42

| Date of Request | Item Copied | Date Retd. |
|---|---|---|
| 6/13/06 | Motion Appt Counsel U.S. District Court | 6/13/06 |

\*\* No Requests for Notary were received from I/M Shane Hopkins for the time period
listed.

PG# 143

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHANE K. HOPKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 05-870-SLR |
| | ) |
| JOHN PUSEY, JOSEPH SMITH, | ) |
| DAVID PIERCE, LISE MERSON, | ) |
| JUDITH MULLEN, DREWRY FENNELL, | ) |
| M. JANE BRADY | ) |
| | ) |
| Defendants. | ) |

### AFFIDAVIT OF BRIAN ENGREM

I, Brian Engrem, having been duly sworn according to the law, do hereby depose and state the following:

1. I am employed by the State of Delaware, Department of Correction at the Delaware Correctional Center ("DCC") near Smyrna, Delaware as a Paralegal. I have been employed by the Department of Correction for 5 years. My duties include providing legal materials to inmates as requested in the SHU (Security Housing Unit). This information is accessed through Westlaw or from existing files of the SHU Law Library. Also, 1 provide photocopies and notary service to inmates. I assist with managing and maintaining a file for each inmate regarding their legal requests while housed in the SHU. I have held this position since April 1, 2001.

2. In response to a request from the State of Delaware Department of Justice, I have obtained documentation relating to the frequency of inmate Shane Hopkins's law library usage, the number of uses of the prison's notary, and the frequency and volume of copied pages of legal material provided to Mr. Hopkins by the Delaware Correctional Center.

PG#144

3.   On March 6, 2006, I went to see inmate Hopkins regarding his request for Marshal forms. It is the policy of the law libraries of the Delaware Correctional Center to see the court order for marshal forms prior to giving them to an inmate. I asked for the court order.

4.   I wanted to take the court order back to the office and copy it in order to check with the clerk of court on the number of forms inmate Hopkins required. I told Mr. Hopkins that I would return the court order to him, but I need a copy of the order so that I have a record of the order and the number of forms given to the inmate.

5.   Inmate Hopkins refused to give the order to me, and I explained that he would then have to send the order to me via the in-house mail, in order to get the forms. Inmate Hopkins then yelled to me that he would file a grievance.

6.   I have reviewed inmate Hopkins's law library use logs. He used the services of the SHU and MHU libraries a total of twenty eight times since December 15, 2005. The law libraries have made 341 pages of photocopies for him since that date. He has used the notary services twice.

7.   Inmates do not pay for copies made by the law library. The 341 pages of copies do not include copies of case law and statutes made for inmate Hopkins. When compiling a total of the photocopies made for any inmate, the case law, statutes, regulations etc., are not included in the total.

8.   On the law library log attached to Defendants' answer to this motion, the heading "date in" mean that the request was received from the inmate on that date. The heading "date out" means that the requested materials were sent to the inmate on that date.

9.   Inmate Hopkins continues to have access to the above-listed legal resources.

10.   I have made these statements based upon my personal knowledge, specialized

PG # 145

training, and experience as an employee of the Department of Correction.

Brian Engrem

SWORN TO AND SUBSCRIBED BEFORE ME THIS 20 nd DAY OF June , 2006.

NOTARY

PG # 146

Smyrna Landing Road
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

**Offender Name :** HOPKINS, SHANE K          **SBI#**          :  00253918          **Institution**     : DCC

**Grievance #**     : 13918          **Grievance Date**   :  05/15/2005          **Category**     : Individual

**Status**          : Resolved          **Resolution Status :** Level 1          **Resol. Date**   : 05/27/2005

**Grievance Type:** Law Library          **Incident Date**      :  05/15/2005          **Incident Time :**

**IGC**          : Merson, Lise M          **Housing Location :** Bldg 17, Lower, Tier A, Cell 4, Single

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** On 5-10-05 I sent a letter to the law library for copies. Attached to this request for copies was a pair of grievances. Brian Engram sent me a memo on 5-10-05 telling me that he would not copy grievances.

**Remedy Requested**     :  I want an investigation conducted as to why Brian Engrem refused to provide me with legal copies.

| INDIVIDUALS INVOLVED | | |
|---|---|---|
| **Type** | **SBI #** | **Name** |

Inmate Copy

## ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** NO          **Date Received by Medical Unit :**

**Investigation Sent :**          **Investigation Sent To**          : Little, Michael

**Grievance Amount :**

Page 1 of 3

PG#147

Smyrna Landing Road
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** HOPKINS, SHANE K | **SBI#** : 00253918 | **Institution** : DCC |
| **Grievance #** : 13917 | **Grievance Date** : 05/15/2005 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status :** Level 1 | **Resol. Date** : 05/27/2005 |
| **Grievance Type:** Law Library | **Incident Date** : 05/15/2005 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg 17, Lower, Tier A, Cell 4, Single | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** On 5-10-05 Brian Engram refused to noterize a 11 Del C written request for final disposition of any criminal cases I may have pending. He said he would not noterize anything going to a staff member.

**Remedy Requested** : Investigate refusal to noterize a legal request.

*Inmate Copy*

## INDIVIDUALS INVOLVED

| Type | SBI# | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** NO            **Date Received by Medical Unit :**

**Investigation Sent :**            **Investigation Sent To** : Little, Michael

**Grievance Amount :**

PG#148

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 06/17/2005

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** HOPKINS, SHANE K | **SBI#** : 00253918 | **Institution** : DCC |
| **Grievance #** : 14471 | **Grievance Date** : 05/26/2005 | **Category** : Individual |
| **Status** : Unresolved | **Resolution Status :** | **Resol. Date** : |
| **Grievance Type:** Staff Issues | **Incident Date** : 05/26/2005 | **Incident Time :** 10:00 |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg 17, Lower, Tier A, Cell 4, Single | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** On 5-15-2005 I filed a grievance against Brian Engrem regarding his denial to make copies of legal attachments for US Attorney Connolly.

On 5-20-2005, Brian Engrem came to my cell to do Notary. Briam Engram questioned me and sought a resolution about the grievances I filed against him. No one else was present. Mike little was not here and it is my understanding that it is his job to investigate these grievances.

How is it that Brian Engrem obtained copies of this grievance and how is it that he came to resolve grievances filed against him.

Throughout this incident Brian Engrem seemed unwilling to notarized my material without first resolving the grievances I filed against him.

I felt pressured to resolve the grievances so that I could get my material notarized. So I agreed to except Brian Engrams solutions despite the fact that his offered excuses for why he did not copy my material where without substance.

Brian Engram was fully aware that the copies I needed where to be sent to Attorney Connolly.

**Remedy Requested** : Under what rule of authority did Brian Engrem have the right to question or seek resolution about grievances that I filed against him. And why didn't Mr. Little investigate them. How did Brian Engrem get the grievances I filed against Him!

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** NO | **Date Received by Medical Unit :** |
| **Investigation Sent :** | **Investigation Sent To** : Pierce, David E Jr. |
| **Grievance Amount :** | |

PG #149

W/C/W
9-29-05

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C SmyRNA     DATE: JUNE 20th 2005

GRIEVANT'S NAME: SHANE Hopkins     SBI#: 00253918

CASE#: 18070     TIME OF INCIDENT: N/A

HOUSING UNIT: S.H.U #17-A-L14

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

ON 6-13-05 I SENT A LAW LibRARY SLip ASKiNG foR 50 COPiES of A
LETTER TO THE ACLU of DELAWARE. PRiViOUS TO THiS BRiAN ENGREM did RefUSE
TO Copy THE SAME LETTER SAYiNG DREWERY NASH FENNEll WAS NOT AN ATTORNEY.
NoW hE iS DENYiNG ME COPiES TO SEND TO OThER STATE OfFiCiAls WHO ARE CC:
AS getTiNG A Copy Of THiS LEGAl LETTER.
    BRiAN ENGREM hAS CoNSISTANTLY HARRASSED, PREVENTED OR OUT
Right dENIED ME MATERiAls, COPiES ECT. I hAVE NOTIFiED DEPUTY WARDEN
PiERCE BECAUSE All REQUESTED MATERiAls iS BASED APON AN ASSAULT ON
ME By GUARDS.

ACTION REQUESTED BY GRIEVANT: PROViDE ME WiTh COPiES TO CC: SERVE All
PARTiES LiSTED iN LEGAl CoRRiSPONDANCE/LETTERS. STOP BRiAN ENGREM'S
RETAliATORY ACTS THAT dENY ME ACCESS TO THE COURTS.

GRIEVANT'S SIGNATURE:_____     DATE:_____

WAS AN INFORMAL RESOLUTION ACCEPTED?     _____(YES) _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____     DATE:_____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

**RECEIVED**

JUL 0 5 2005

April '97 REV

Inmate Grievance Office

PG# 150

Smyrna Landing Road
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

**Offender Name :** HOPKINS, SHANE K     **SBI#**    : 00253918     **Institution**    : DCC

**Grievance #**   : 15021      **Grievance Date**   : 07/01/2005     **Category**    : Individual

**Status**     : Unresolved      **Resolution Status :**      **Resol. Date**   :

**Grievance Type: Law** Library      **Incident Date**     : 07/01/2005     **Incident Time :**

**IGC**      : Vargas, Rosalie      **Housing Location :** Bldg 17, Lower, Tier A, Cell 4, Single

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate states: Sent Brian Engram a letter for ACLU of Del. Prior to this Brian Engram refused to copy a letter to the same to Drewery Nash Fennell Esq saying she was not an attorney. Then after I month of delays I found that that she is·an attorney. I resubmitted the letter and clearly on 6-13-05 law library slip I asked for 5 copies. On 6-6-05·he sent only 1 copy. 6-20-05 I requested 4 more copies. 6-30 4 copies where sent. This was intended as a continued pattern of acts towards my aserting my vested rights violated to public officials. Also during this 2 months BE aserted he did not receive my 2nd letter. I was forced to rewrite same letter 4 times.

**Remedy Requested**    : Investigate and institute a 24 to 48 hour turn around for all copies sent to law library.

### INDIVIDUALS INVOLVED

| Type | SBI# | Name |
|------|------|------|
|      |      |      |

### ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** NO          **Date Received by Medical Unit :**

**Investigation Sent :**          **Investigation Sent To**     : Little, Michael

**Grievance Amount :**

Inmate Copy

PG# 151

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C. Smyrna                DATE: January 16th 2006

GRIEVANT'S NAME: Shane Hopkins        SBI#: 253918

CASE#: 23325                          TIME OF INCIDENT: N/A

HOUSING UNIT: S.H.U. 17-A-L#4

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

Brian Engrem Paralegal For S.H.U. Law Library Since 1-8-06
Law Library Slip has denied me access to the following Bills and
has kept and Not Returned my Law Library Slip P#2 of 2 of my
1-8-06 Order form up to 1-16-06 where I requested that he review
my copy. Brian Engrem has 3 times now refused to provide me access
to materials needed to complete my court order# in Appeal No:
364, 2005. These denials are done with the precursory and direct
knowledge of the out come of his actions denying me access
to materials needed to respond to a court order# Has forced
me to petition the courts for an deadline extention.

ACTION REQUESTED BY GRIEVANT: Provide Access To:
      A) 62 Del Law C. 317 S2-130th G.A.- H.B#394- 4 Pages
      B) 70 Del Law C. 186 S1-138th G.A.- S.B.#211- 8 Pages
By 2-20-05 The Due Date To my Opening Brief on Appeal
No: 364, 2005

GRIEVANT'S SIGNATURE: Shane Hopkins       DATE: 1-16-06

WAS AN INFORMAL RESOLUTION ACCEPTED?        ____(YES)  ____(NO)
*Exhibit A
**Exhibit B              (COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____        DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

RECEIVED

FEB 0 1 2006

Inmate Grievance Office

ATTACHMENTS
SECTION "K"

# Offender Status Sheet

**Date:** 08/29/2006

| | | |
|---|---|---|
| **SBI #:** 00253918 | **Name:** SHANE K HOPKINS | |
| **Location(s):** DCC | **Level(s):** 5 | **Race:** WHITE |
| **AKA:** SHANE K HOPKINS | | **DOB:** 10/05/1973 |
| **Offender Type:** Sentenced | **Officer(s):** | |

### Level: 5

Start Date: 03/07/1995    MED: 02/27/2011    STRD: 08/12/2009    ADJ: 07/24/2009    PED:    Statutory Days Earned: 564.00

| CASE#/ Court/ Type | CRA#/ Judge | Charge Desc/ Sen. Type/ Sentence Date | Status/ Eff. Date | Y | M | D | Start Dt | MED | STRD | Adj Date | CR | Wk |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9503004598 U7 | IN95060608 Richard R Cooch | BURGLARY 2ND STANDARD 05/24/1996 | Current 03/07/1995 | 2 | 0 | 0 | 03/07/1995 | 03/06/1997 | 01/05/1997 | 01/05/1997 | | |
| 9503004598 U7 | IN95030874 Richard R Cooch | BURGLARY 2ND STANDARD 05/24/1996 | Current 03/07/1995 | 2 | 0 | 0 | 03/06/1997 | 03/05/1999 | 10/24/1998 | 10/24/1998 | | |
| 9503004598 U7 | IN95030883 Richard R Cooch | BURGLARY 2ND STANDARD 05/24/1996 | Current 03/07/1995 | 2 | 0 | 0 | 03/05/1999 | 03/04/2001 | 08/12/2000 | 08/12/2000 | | |
| 9503004598 U7 | IN95030901 Richard R Cooch | BURGLARY 2ND STANDARD 05/24/1996 | Current 03/07/1995 | 2 | 0 | 0 | 03/04/2001 | 03/03/2003 | 05/31/2002 | 05/31/2002 | | |
| 9503004598 U7 | IN95030892 Richard R Cooch | BURGLARY 2ND STANDARD 05/24/1996 | Current 03/07/1995 | 2 | 0 | 0 | 03/03/2003 | 03/02/2005 | 03/19/2004 | 03/19/2004 | | |
| 9503004598 U7 | IN95030903 Richard R Cooch | BURGLARY 2ND STANDARD 05/24/1996 | Current 03/07/1995 | 2 | 0 | 0 | 03/02/2005 | 03/01/2007 | 01/05/2006 | 01/05/2006 | | |
| 9503004598 U7 | IN95030906 Richard R Cooch | BURGLARY 2ND STANDARD 05/24/1996 | Current 03/07/1995 | 2 | 0 | 0 | 03/01/2007 | 02/28/2009 | 10/25/2007 | 10/25/2007 | | |
| 9503004598 U7 | IN95030959 Richard R Cooch | BURGLARY 2ND STANDARD 05/24/1996 | Current 03/07/1995 | 2 | 0 | 0 | 02/28/2009 | 02/27/2011 | 08/12/2009 | 07/24/2009 | | |

### Special Conditions:

| CRA# | Level | Code | Condition Description | Condition Comments |
|---|---|---|---|---|
| IN95060608 | 5 | CRT1 | Other Conditions: | AS TO IN95-06-0608; SENTENCED TO 2 YEARS LEVEL 5. |
| IN95030874 | 5 | CRT1 | Other Conditions: | AS TO IN95-03-0874; SENTENCED TO 2 YEARS LEVEL 5. |
| IN95030883 | 5 | CRT1 | Other Conditions: | AS TO IN95-03-0883; SENTENCED TO 2 YEARS LEVEL 5. |
| IN95030901 | 5 | CRT1 | Other Conditions: | AS TO IN95-03-0901; SENTENCED TO 2 YEARS LEVEL 5. |
| IN95030892 | 5 | CRT1 | Other Conditions: | AS TO IN95-03-0892; SENTENCED TO 2 YEARS LEVEL 5. |
| IN95030903 | 5 | CRT1 | Other Conditions: | AS TO IN95-03-0903; SENTENCED TO 2 YEARS LEVEL 5. |
| IN95030906 | 5 | CRT1 | Other Conditions: | AS TO IN95-03-0906; SENTENCED TO 8 YEARS LEVEL 5, SUSPENDED AFTER SERVING 2 YEARS FOR 1 YEAR LEVEL 4 HALFWAY HOUSE. FOLLOWED BY 3 YEARS LEVEL 3. FOLLOWED BY 2 YEARS LEVEL 2. LEVEL 4 HOLD AT 5. |
| IN95030959 | 5 | CRT1 | Other Conditions: | AS TO IN95-03-0959; SENTENCED TO 2 YEARS LEVEL 5. FOLLOWED BY 6 YEARS LEVEL 2. |