IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHANE K. HOPKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-870-SLR |
| | ) | |
| JOHN PUSEY, JOSEPH SMITH, | ) | Jury Trial Demanded |
| DAVID PIERCE, LISE MERSON, | ) | |
| JUDITH MULLEN, DREWRY FENNELL, | ) | |
| M. JANE BRADY | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THEIR MOTION FOR SUMMARY**

STATEMENT OF FACTS

1.  Shane Hopkins ("Plaintiff" or "Hopkins") initiated this action pursuant to 42 *U.S.C.* § 1983 by filing a Complaint and Motion to Proceed *In Forma Pauperis* with the Court on December 15, 2005. (D.I. 1, 2). Plaintiff named as defendants, Correctional Officers John Pusey and Joseph Smith, Deputy Warden David E. Pierce, Jr., Corporal Lise Merson, Attorney General Jane Brady, and Judith Mullen and Drewry Nash Fennell of the A.C.L.U. ("Defendants"). The Court granted the Plaintiff *in forma pauperis* status on January 4, 2006 (D.I. 5) and issued a service order for all Defendants on March 3, 2006. (D.I. 13).

2.  Defendants Pusey and Smith answered the Complaint on May 26, 2006. (D.I. 28). Defendants Pierce, Merson, and Brady filed a filed a Motion to Dismiss the Complaint on May 26, 2006. (D.I. 26-27)(amended on June 7, 2006 (D.I. 31-32)). Defendants Mullen and Fennell filed a Motion to Dismiss on June 5, 2006. (29-30). The motions were granted by the Court on February 27, 2007 and Defendants Pierce, Merson,

Brady, Mullen, and Fennell were dismissed from the action. (D.I. 73-74).

3.     The allegations in Plaintiff's Complaint stem from an incident which occurred while Plaintiff was incarcerated at the Delaware Correctional Center ("DCC") on November 26, 2004. Plaintiff was transferred to a new cell because the toilet in his cell was clogged. (Complaint, at Exhibit "B", pg. 1). Plaintiff was ordered by Correctional Officer Baker to pack his things and move cells and Plaintiff refused to move. *Id.* Officer Baker left the tier and returned with a Lieutenant and Officers Pusey and Smith. *Id.*, at pg. 2. Officers Pusey and Smith proceeded with the transfer of Plaintiff to an upper cell. (Exhibit "A" – Disciplinary Report of Officer Pusey).

4.     Officer Pusey noticed Plaintiff had more than the allowable number of books in his cell and, thus, proceeded to shakedown Plaintiff's cell while Officer Smith transferred Plaintiff. (Exhibit "A"). Officer Pusey bagged up Plaintiff's allowable property and brought it to Plaintiff in the upper cell. (Complaint, at Exhibit "B", pg. 3). The Plaintiff argued with Officer Pusey about his books and stepped out of his cell. (Exhibit "A" and Complaint, at Exhibit "B", pg. 3).

5.     The parties' facts diverge at this point. Defendants assert and the disciplinary reports indicate that Officer Pusey put his hand up to stop Plaintiff from stepping out of his cell and Plaintiff pushed his hand out of the way and shoved past the Officer. (Exhibit "A"). Plaintiff alleges that Officer Pusey grabbed his shirt and pushed him backwards into the cell. (Complaint, at Exhibit "B", pg. 3). There is no dispute that Plaintiff and Officer Pusey then struggled on the ground while Officer Pusey tried to place Plaintiff in handcuffs. (Exhibit "A" and Complaint, at Exhibit "B"). There is a dispute, however, as to the extent of the altercation and the extent of Plaintiff's

resistance.

6. Officer Smith was the first to report to the incident to assist Officer Pusey. (Exhibit "A"). Plaintiff continued to resist and was not finally subdued until Sergeant Clifton Outen reported to the incident and used capfoam to secure Plaintiff. (Exhibit "A" and Complaint, at Exhibit "B", pg. 5). Plaintiff was then secured and handcuffed. (Exhibit "A").

7. Plaintiff was then transported to a classroom where he was seen by a Nurse. (Exhibit "A") He received a write-up for Assault, Disorderly or Threatening Behavior, Failing to Obey an Order, and Possession of Non-Dangerous Contraband. (Exhibit "A"). He was found guilty following a disciplinary hearing and Plaintiff received 15 days in isolation as a sanction. (Exhibit "B" – Disciplinary Hearing Decision).

8. Plaintiff remained in isolation from November 26, 2004 until December 10, 2004. (Exhibit "C" – Deloy Affidavit). He was transferred to maximum security on December 10, 2004. It is undisputed that Plaintiff did not file a grievance until, at the earliest, December 17, 2004. (Complaint, at Exhibit "A").

9. Plaintiff alleges that Officers Pusey and Smith used excessive force against him on November 26, 2004 in violation of his Eighth Amendment rights. Plaintiff's Complaint also alleges state law causes of action for civil assault, assault and battery, and intentional infliction of emotional distress, a statutory conspiracy claim, and Fourth and Fifth Amendment federal constitutional claims. (Complaint, *passim*).

10. Defendants' motion is not contingent upon any of the disputed facts. Defendants assert that Plaintiff has failed to comply with the Prison Litigation Reform

3

Act ("PLRA") and timely exhaust his administrative remedies and thus his suit is barred in federal court. Defendants further assert that there is no genuine issue of material fact as to Plaintiff's Fourth and Fifth Amendment claims and Defendants are entitled to judgment as a matter of law on these causes of action. There is also no genuine issue of material fact as to the liability of Defendants in their official capacities and, therefore, they are entitled to judgment as a matter of law.

## MEMORANDUM

The Court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of proof is on the moving party to demonstrate the absence of material issues of fact, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. However, once the moving party advances evidence in support of its contentions, the nonmoving party must go beyond the pleadings and introduce affidavits and other evidence that will create a genuine issue of fact in order to avoid summary judgment. *Celotex Corp. v. Carter*, 477 U.S. 317, 324 (1986).

**I.     Plaintiff Cannot Establish a Fourth Amendment Claim Against Officer Pusey or Officer Smith.**

Excessive force claims for those convicted of a crime are analyzed under the Eighth Amendment of the United States Constitution. *Yarnall v. Mendez*, 2007 WL 2601444, at *12 (D.Del.)(citing *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)). Excessive force claims arising from an arrest are analyzed under the Fourth Amendment and claims of a pretrial detainee are analyzed under the Fourteenth Amendment. *Id.*

4

Plaintiff has been convicted of a crime and is an incarcerated inmate. Thus, his excessive force claims are analyzed under the Eighth Amendment. Plaintiff presents no basis for his Fourth Amendment claims against Defendant Pusey or Smith. Plaintiff's claim fails as a matter of law and Defendants are entitled to summary judgment as to any claim brought pursuant to the Fourth Amendment.

II.  **Plaintiff Cannot Establish a Fifth Amendment Claim Against Officer Pusey or Officer Smith.**

In the context of § 1983 litigation, a violation of Fifth Amendment rights is typically alleged in the form of a due process allegation. To state a claim for a deprivation of due process of law, a Plaintiff must establish a deprivation of a liberty or property interest. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). For that claim to be viable against the named Defendants under § 1983, Plaintiff must establish personal involvement of the Defendants in that deprivation. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff must prove that the accused official "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981).

Plaintiff has not articulated a Fifth Amendment "procedural due process" claim, or any other grounds for a Fifth Amendment claim, against Defendant Pusey or Smith. Nor has Plaintiff established personal involvement by Defendants in the deprivation of a constitutionally guaranteed liberty or property interest. Plaintiff has an affirmative duty at this stage of the litigation to come forth with evidence in support of his Fifth Amendment Claim. *Celetox*, 477 at 322. Plaintiff has not met his burden and Defendants are entitled to judgment as a matter of law as to any claim brought pursuant to the Fifth

Amendment.

### III. Plaintiff's Claims are Barred by the Prison Litigation Reform Act, 42 U.S.C 1997(e).

Congress requires a prisoner to exhaust administrative remedies before filing a § 1983 action with respect to prison conditions. 42 *U.S.C*. § 1997e(a). Prison conditions are defined to include the physical environment in which a prisoner lives and the services provided to him. *Booth v. Churner*, 206 F.3d 289, 291 (3d. Cir. 2000), *aff'd*, 531 U.S. 956, (2000). There is no futility exception to exhaustion and prisoners must exhaust administrative remedies even where the process would not provide them with the remedy they are seeking. *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000); *Booth*, 206 at 294-295. The Third Circuit has adopted a procedural default interpretation of §1997e(a) which includes instances where an inmate's time for filing a grievance has expired. *Pusey v. Belanger*, 2004 WL 2075472, at *2 (D.Del.)(Exhibit "D"). An inmate is required to follow the grievance process through every appellate step in order to properly exhaust administrative remedies. *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004).

DCC has a grievance process and procedure and it is codified at Department of Correction ("DOC") Procedure Number 4.4, entitled "Inmate Grievance Procedure." (Exhibit "E" – SOP 4.4). Pursuant to this procedure, an inmate who wishes to grieve a particular issue must express the grievance in writing within 7 calendar days following the incident. The grievance process is separated into three steps. The first step involves review of the grievance by the Institutional Grievance Chair ("IGC"). If unresolved at this initial stage, the grievant is then entitled to a hearing before the Resident Grievance Committee ("RGC"). The RGC then arrives at a conclusion which is forwarded to the Warden or the Warden's designee for their review and concurrence. If the RGC fails to

obtain the concurrence of the Warden, an inmate is entitled to review of the matter by the Bureau Grievance Officer ("BGO"). When all of these steps are completed, an inmate has exhausted all available administrative remedies.

Plaintiff did not comply with the DOC grievance procedure before pursuing his claim in federal court. Plaintiff failed to file his grievance within seven days of the alleged incident. Plaintiff's grievance is hand dated December 17, 2004, but it is not date stamped as received by the grievance chair until December 20, 2004. (Complaint, at Exhibit "A"). Even viewing the facts in favor of Plaintiff and assuming he submitted the grievance on December 17, 2007, this was 21 days after the date of the incident. Further, once Plaintiff's grievance was returned by the IGC, he did not pursue the steps of the grievance process and appeal the IGC's decision that his grievance was not properly brought and untimely. Plaintiff is precluded from bringing his federal claim because he procedurally defaulted on the exhaustion requirement of the PLRA. *Pusey,* 2004 WL 2075472, at *2.

Plaintiff alleges that he was unable to file his grievance while he was in isolation for 15 days because he is not allowed a pen or grievance form in isolation. (Complaint, at Exhibit "A"). There is no support for this claim. The DOC grievance policy, states that "all inmates regardless of physical condition/security status/administrative status, shall be entitled to use the IGP." (Exhibit "E", pg. 2, sec. V., par. 2). However, an inmate can not file a grievance in isolation if they do not ask for one. If Plaintiff had requested a grievance, he would have been given one to file. (Exhibit "F" – Rispoli Affidavit). He also would have been provided with a writing utensil for a limited period of time so that he could write the grievance. (Exhibit "F" – Rispoli Affidavit). The

7

process is the same for inmates who are housed in maximum security, where Plaintiff was transferred after his time in isolation. (Exhibits "C" and "F" – Little and Rispoli Affidavits).

Plaintiff procedurally defaulted on his exhaustion requirement by not filing his grievance until twenty-one days after the incident, significantly beyond the seven day filing requirement. Further, Plaintiff failed to follow the grievance process through every appellate step as required by law. Thus, Plaintiff's claims are barred by the PLRA's exhaustion requirement, and Defendants are entitled to judgment as a matter of law.

### IV. Under the Eleventh Amendment, Defendants Cannot Be Held Liable In Their Official Capacities.

"[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This preclusion extends to state officials when "the state is the real, substantial party in interest." *Id.* at 101 (*quoting Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." *Id.* (*quoting Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). A State may waive its Eleventh Amendment immunity. However, such waiver must constitute an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578 (D. Del. 1990) (*quoting Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).

In this case, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, under the Eleventh Amendment, Defendants cannot be

8

held liable in their official capacities.

**V.    Conclusion**

For the above stated reasons, Defendants respectfully request that this Honorable Court grant their motion for summary judgment and dismiss Plaintiff's claims against them with prejudice.

                                      **DEPARTMENT OF JUSTICE**
                                      **STATE OF DELAWARE**

                                      */s/ Stacey Xarhoulakos*
                                      Stacey Xarhoulakos (#4667)
                                      Deputy Attorney General
                                      Department of Justice
                                      820 N. French Street, 6th Floor
                                      Wilmington, DE  19801
                                      (302) 577-8400
                                      *Attorney for Defendants*

Dated: September 20, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2007, I electronically filed *Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on September 20, 2007, I have mailed by United States Postal Service, the document to the following non-registered party: Shane Hopkins

/s/ Stacey Xarhoulakos
Stacey Xarhoulakos, I.D. No. 4667
Deputy Attorney General
Department of Justice
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
stacey.xarhoulakos@state.de.us
*Attorney for Defendants*