# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2075472 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

H
Pusey v. Belanger
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Melvin PUSEY, Plaintiff,
v.
Joseph H. BELANGER, James Gardels, C/O Holcomb, Lawrence McGuigan, Charles Cunningham, Michael Welcome, Defendants.
**No. Civ.02-351-SLR.**

Sept. 14, 2004.

Melvin Pusey, Smyrna, Delaware, pro se.
Susan D. Mack, Deputy Attorney General, Wilmington, Delaware, for Defendants.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiff Melvin Pusey filed a complaint on May 9, 2002, charging several correctional officers with various constitutional violations arising out of the alleged use of excessive force on October 16, 2001. On May 28, 2002, plaintiff amended his complaint to include another defendant. (D.I.7) On January 7, 2003, this court dismissed as frivolous plaintiff's Fourteenth Amendment retaliation claims. (D .I. 15) The court found that the Eighth Amendment claims of excessive force, denial of medical care and conditions of confinement were not frivolous. (*Id.*) Before this court is defendants' motion for summary judgment.[FN1](D.I.41) For the reasons stated, defendants' motion is granted.

FN1. Plaintiff did not respond to defendants' motion.

II. BACKGROUND

The defendants were all employees of the Delaware Department of Correction at all relevant times. (D.I. 42 at 1) Plaintiff is an inmate at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. (*Id.*) Plaintiff's claims center around defendants' actions on October 16, 2001. Plaintiff did not file a grievance pertaining to defendants' conduct; however, he did appeal the disciplinary decisions made on October 16 to the disciplinary appeals board. (D.I. 1 at 1, 6)

In his complaint, plaintiff alleges that on October 16, 2001, he was refused commissary because defendant Holcomb believed he was on "sanction status." (*Id.* at 4-5) Plaintiff advised defendant Gardel that he was able to receive commissary because he was not on "sanction status." (*Id.*) Officer Gardel asked plaintiff to return to his cell, but plaintiff refused and asked to speak with a lieutenant. (*Id.*) The lieutenant, not a defendant in this case, told plaintiff to return to his cell, despite plaintiff's argument that he was not on "sanction status." (*Id.*) Defendants Holcomb and Gardel escorted him back to his cell.

Upon reaching the cell, plaintiff further alleges that he was "roughly pushed inside." (*Id.* at 6) As the plaintiff fell forward into the cell, Gardel shut the cell door, which caught plaintiff's leg. (*Id.*) Plaintiff turned and reached for his leg and one defendant sprayed mace on him while the other officers pushed him into the cell. (*Id.*) On his way into the cell, plaintiff tripped and fell. (*Id.*) The officers turned him on his stomach grabbing him by the hair and slamming his face into the concrete several times. (*Id.*) At this point, another officer kicked plaintiff in the ribs several times.(*Id.*)

In his complaint, plaintiff alleges that he was escorted from his cell to see defendants Belanger, McGuigan and Cunningham. (*Id.* at 7) Plaintiff informed the escorting officer that he needed medical attention for a broken rib and facial injuries. (*Id.*) Before being placed in a Segregation Behavioral Unit ("SBU"), plaintiff informed defendant Belanger that he needed medical attention. (*Id.*) Once in the SBU, plaintiff was told to strip and was placed in a cell with feces on the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2075472 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

door and window. Plaintiff never received medical attention. (*Id.*) For eight days during his stay in the SBU, he was naked and was refused a clean cell, a mattress to sleep on, sheets, blanket, toilet paper, soap, toothpaste and a toothbrush. In addition, the cell was so cold that he had to jog to stay warm. (*Id.* at 9)

*2 Defendants argue that they are entitled to summary judgment because the plaintiff failed to exhaust his administrative remedies, namely the DCC's grievance procedure, and because they are entitled to 11th Amendment immunity.

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *SeeMatsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986)."Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."*Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *SeeAnderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *SeeCelotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### IV. DISCUSSION

Defendants argue that plaintiff did not exhaust his administrative remedies prior to filing this action pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).[FN2] Before filing a civil action, a plaintiff-inmate must exhaust his administrative remedies, even if the ultimate relief sought is not available through the administrative process. *SeeBooth v. Churner,* 206 F.3d 289, 300 (3d Cir.2000), *cert. granted,*531 U.S. 956 (2000), *aff'd,*121 S.Ct. 1819 (2001).*See alsoAhmed v. Sromovski,* 103 F.Supp.2d 838, 843 (E.D.Pa.2000) (quoting *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (stating that § 1997e(a)"specifically mandates that inmate-plaintiffs exhaust their available administrative remedies").

> FN2. The PLRA provides, in pertinent part:
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
> 42 U.S.C. § 1997e(a).

Recently, the Third Circuit adopted a procedural default interpretation of § 1997e(a). In *Spruill v. Gillis,* 372 F.3d 218 (3d Cir.2004), the court decided that a prisoner's failure to exhaust any administrative remedies could bar a suit in federal court. This includes instances where a prisoner's opportunity to file a grievance has expired. For example, the DCC grievance procedure at issue requires that a prisoner file a grievance within seven days of an event. (D.I. 42 at Ex. 1) If a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2075472 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

prisoner at DCC failed to bring a claim within seven days, he would be precluded from bringing a federal claim because he had failed to exhaust his administrative remedies. See *Spruill,* 372 F.3d at 230.

*3 In his complaint, plaintiff conceded that he did not file a grievance, based on his understanding that the "DCC Grievance Committee does not review 'custody' matters...." (D.I. 1 at 2) The DCC grievance procedure manual provides to the contrary, that the committee can review anything affecting an inmate, except policies that have another appeal process. (D.I. 42 at Ex. 1) There is no evidence that plaintiff filed a grievance with any committee after the alleged incident on October 16, 2001, or thereafter concerning the correctional officers' conduct, his medical treatment, or the conditions of his cell. Consequently, the court cannot entertain plaintiff's action due to plaintiff's failure to exhaust his administrative remedies.

### V. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. An order consistent with this memorandum opinion shall issue.

D.Del.,2004.
Pusey v. Belanger
Not Reported in F.Supp.2d, 2004 WL 2075472 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.